UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSE PANORA, *on his own behalf and on behalf of*
*others similarly situated*,

                                        Case No.: 19-cv-07267(BMC)

                     Plaintiff,

           -against-

DEENORA CORP d/b/a Dee's; DEE'S BRICK OVEN
PIZZA, INC d/b/a Dee's, and DEERAN ARABIAN a/k/a
Dee Arabian,

                         Defendants.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR <u>SUMMARY JUDGMENT</u>

AARON N. SOLOMON, ESQ.
KEITH GUTSTEIN, ESQ.
TAYLOR M. FERRIS, ESQ.
KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Tel.: (516) 681-1100

4843-4119-3654, v. 1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND AND STATEMENT OF UNDISPUTED FACTS.........................3

ARGUMENT..........................................................................................................3

  A.  SUMMARY JUDGMENT STANDARD ........................................................ 3

  B.  PLAINTIFF'S OVERTIME CLAIMS FAIL AS A MATTER OF LAW BECAUSE HE WAS EXEMPT UNDER FEDERAL AND NEW YORK LAW ...................................... 4

      1.  AT ALL TIMES, PLAINTIFF WAS COMPENSATED ON A SALARY BASIS IN EXCESS OF THE WEEKLY SALARY THRESHOLD REQUIREMENTS UNDER FEDERAL AND NEW YORK LAW ....................................................... 6

      2.  PLAINTIFF MANAGED THE KITCHEN STAFF................................................ 7

      3.  PLAINTIFF'S PRIMARY DUTY WAS MANAGEMENT.................................. 9

          a.  RELATIVE IMPORTANCE OF PLAINTIFF'S MANAGEMENT DUTIES MILITATES TOWARDS A FINDING THAT IT WAS PLAINTIFF'S PRIMARY DUTY ......................................................... 10

          b.  PLAINTIFF'S TIME SPENT PERFORMING EXEMPT WORK.......... 11

          c.  PLAINTIFF WORKED WITH FREEDOM FROM DIRECT SUPERVISION AND CUSTOMARILY AND REGULARLY EXPERCISED HIS DISCRETION AS CHEF ...................................... 13

          d.  PLAINTIFF'S COMPENSATION STRUCTURE DIFFERED FROM OTHER KITCHEN STAFF ................................................................. 14

      4.  PLAINTIFF'S POSITION AS CHEF REQUIRED HIM TO REGULARY AND CUSTOMARILY DIRECT THE WORK OF KITCHEN STAFF ...................... 15

      5.  PLAINTIFF'S SUGGESTIONS AND RECOMMENDATIONS AS TO THE HIRING AND FIRING OF KITCHEN STAFF WERE HEEDED BY DEFENDENTS.................................................................................... 15

  C.  PLAINTIFF'S "SPREAD OF HOURS" CLAIM MUST BE DISMISSED .............. 16

D.     PLAINTIFF'S CLAIM UNDER THE NYLL FOR WAGE STATEMENT VIOLATIONS MUST BE DISMISSED ...................................................................17

CONCLUSION.........................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

**Page**

*Binder & Binder PC v. Barnhart,*
481 F.3d 141 (2d Cir. 2007) ................................................................................. 4

*Callari v. Blackman Plumbing Supply, Inc.,*
988 F.Supp.2d 261 (E.D.N.Y. 2013) ...................................................................12

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...................................................................................... 3, 14

*D'Amico v. City of N.Y.,*
132 F.3d 145 (2d Cir. 1998) ................................................................................. 4

*Donovan v. Burger King Corp.,*
675 F.2d 516 (2d Cir. 1982) .......................................................................... 10, 12

*Encino Motorcars, LLC v. Navarro,*
138 S. Ct. 1134 (2018) ......................................................................................... 5

*Hick v. Baines,*
593 F.3d 159 (2d Cir. 2010 .................................................................................. 4

*Krumholz v. Vill. of Northport,*
873 F. Supp. 2d 481 (E.D.N.Y. 2012) ................................................................. 6

*Martinez v. Hilton Hotels Corp.,*
930 F. Supp. 2d 508 (S.D.N.Y. 2013) ........................................................ 1, 5, 13

*Paganas v. Total Maint. Sol, LLC,*
726. F. App'x 851 (2d Cir. 2018) .........................................................................12

*Pippins v. KPMG, LLP,*
759 F.3d 235 (2d Cir. 2014) ................................................................................. 6

*Ramos v. Baldor Specialty Foods, Inc.,*
687 F.3d 554 (2d Cir. 2012) ............................................................................ 1, 5

*Scott v. SSP Am., Inc.,*
2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011) ............................................ 10, 11, 12

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
659 F.3d 234 (2d Cir. 2011) ................................................................................16

*Tamayo v. DHR Rest. Co., LLC,*
2017 WL 532460 (S.D.N.Y. Feb. 3, 2017)...................................................................... 1, 10

*Vasto v. Credico (USA) LLC,*
767 F. App'x 54 (2d Cir. 2019) ...................................................................................... 5

*Yeh v. Han Dynasty, Inc.,*
2020 WL 883501 (S.D.N.Y. Feb. 24, 2020)...................................................... 5, 12, 14

*Yesmin v. Rite Aid of N.Y. Inc.,*
2012 WL 3871735 (E.D.N.Y. Sept. 6, 2012) ................................................................. 8

## Rules & Statutes

12 NYCRR § 146-3.2(c)(1)(i)(e)(1)(i) ...................................................................... 7

12 NYCRR § 146-1.6 ............................................................................................ 16

29 U.S.C. § 201........................................................................................................ 5

29 U.S.C. 213(a)(1) ................................................................................................ 4

29 C.F.R. § 541.100(a) .......................................................................................... 6

29 C.F.R. § 541.102 ............................................................................................... 7

Fed. R. Civ. P. 56(a) (c) ......................................................................................... 3

NYLL § 195(3)....................................................................................................1,17

NYLL § 198(1-b)................................................................................................... 4

NYLL § 198 (1-d)...............................................................................................3,17

Defendants Deenora Corp. ("Dee Corp."), Dee's Brick Oven Pizza, Inc. ("Dee's"), and Deeran Arabian ("Arabian") (Dee Corp., Dee's, and Arabian are collectively referred to herein as "Defendants"), respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment on the issue of Plaintiff Jose Panora's (hereinafter "Plaintiff") status as an exempt employee, and dismissing Plaintiff's Complaint (the "Complaint") in its entirety, and seeking dismissal of the remainder of Plaintiff's Complaint. As set forth below, the record evidence demonstrates that no issues of material fact exist, and Defendants are entitled to summary judgment as a matter of law on Plaintiff's two overtime claims and dismissal of the Complaint and the termination of this action.

## I.    PRELIMINARY STATEMENT[1]

Plaintiff, a former chef at Dee's, filed this action alleging that he is entitled to unpaid overtime wages and other relief under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  In addition, Plaintiff alleges that Defendant violated NYLL § 195(3) *et. seq.* by failing to provide him with wage statements and further violated the NYLL by failing to pay "spread of hours" compensation.[2]

Defendants now move for summary judgment on the issue of Plaintiff's status as an exempt employee and therefore seeking dismissal of Plaintiff's Third and Fourth Causes of Action for unpaid overtime wages under the FLSA and the NYLL as a matter of law.

---

[1] Unless otherwise indicated, all exhibits referred to herein are annexed to the Declaration of Aaron N. Solomon ("Solomon Decl.") in support of Defendants' Motion for Summary Judgment dated February 26, 2020.

[2] In addition to Plaintiff's overtime and wage statement claims, Plaintiff also asserted causes of action for: (i) unpaid minimum wages under the FLSA; (ii) unpaid minimum wages under the NYLL; (iii) failure to provide lunch breaks in violation of the NYLL; (iv) failure to keep employment records in violation of the NYLL; and (v) failure to provide wage notices in violation of NYLL § 195(1). On January 30, 2020, Defendants filed a pre-motion letter in anticipation of their motion to dismiss the foregoing claims. *See* Dkt. No. 11. At the initial conference on February 12, 2020, Plaintiff voluntarily withdrew his claims for: (i) unpaid minimum wages under the FLSA; (ii) failure to provide lunch breaks; (iii) failure to maintain records; and (iv) failure to provide wage notices pursuant to NYLL § 195(1). *See* Minute Entry and Order dated February 12, 2020. On February 18, 2020, Defendants filed a separate motion pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal Plaintiff's NYLL minimum wage claim. *See* Dkt. Nos. 19, 20.

Based on the evidence submitted herewith, Defendants have established that Plaintiff satisfies the executive exemption under the federal and applicable state law. Specifically, Plaintiff was paid a salary above the applicable threshold set by the FLSA and NYLL for exempt status, his primary duty was management of Dee's kitchen operations, he customarily directed the work of two or more full-time employees, he made hiring decisions, and his suggestions as to the firing, and promoting of employees were given particular weight.

Moreover, the record evidence overwhelmingly demonstrates that Plaintiff was responsible for the overseeing the restaurant's "back-of-the-house" operations. Plaintiff supervised and directed the work of salad cooks, grillmen, fryer cooks, prep cooks, and dishwashers, to ensure that all kitchen staff were performing their respective duties. Plaintiff regularly performed managerial functions such as overseeing food quality to meet restaurant standards; handling customer complaints; ordering food and supplies for the restaurant; hiring candidates for vacant kitchen positions; firing certain employees; and recommending employees to be promoted. At all times, Plaintiff's primary role was that of a manager, and thus, he was exempt from the overtime provisions of the FLSA and the NYLL. Because there are no genuine issues of material fact with respect to Plaintiff's exempt status, Defendants request that the Court grant summary judgment in favor of Defendants and dismiss Plaintiff's Third and Fourth Causes of Action.

In addition, because Plaintiff was properly classified as an exempt employee, he was not entitled to receive "spread of hours" compensation.  As such, dismissal of Plaintiff's Fifth Cause of Action, alleging that Defendants failed to pay "spread of hours" pay, is warranted.

Finally, even if Plaintiff could show that Defendants failed to provide him with wage statements as required by NYLL, there is no dispute that, as an exempt employee, Plaintiff was

2

timely paid all of the wages he was due. Accordingly, Defendants are entitled to the affirmative

defense set forth in NYLL § 198(1-d), and dismissal of Plaintiff's Ninth Cause of Action.

Because no claims will remain in this action if the above relief is granted Plaintiff's

Complaint should be dismissed in its entirety.[3]

## II.   FACTUAL BACKGROUND AND STATEMENT OF UNDISPUTED FACTS

For narrative factual background and a full statement of the material facts as to which

there is no genuine issue to be tried, the Court is respectfully referred to Defendants' Statement

of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("56.1"), dated February 26,

2020, which has been filed contemporaneously herewith.

## III.   ARGUMENT

### A. Summary Judgment Standard

Summary judgment should be granted when "the movement shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). Summary judgment should be awarded "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). The moving party bears the initial burden of identifying "the absence of a

genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The opposing party then must

cite specific parts of the record to demonstrate the existence of a genuine issue for trial. Fed. R.

Civ. P. 56(c); *see also Celotex*, 477 U.S., at 324. In opposing a motion for summary judgment, a

party "may not rely on mere speculation or conjecture as to the true nature of the facts," as

---

[3] As noted above, Plaintiff's lunch break, record keeping, wage notice, and FLSA minimum wage claims have all been withdrawn. As well, although Defendants moved to dismiss Plaintiff's NYLL minimum wage claim on the grounds that Plaintiff failed to state a claim for unpaid minimum wages under the NYLL even if he were improperly classified as exempt, *see* Dkt. No. 20, at pgs. 5-6, dismissal of Plaintiff's NYLL minimum wage claim is warranted if this Court grants Defendants summary judgment on the issue of Plaintiff's status as an exempt employee.

"conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hick v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). To defeat a motion for summary judgment, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

### B. Plaintiff's Overtime Claims Fail as a Matter of Law Because He Was Exempt Under Federal and New York Law

In Plaintiff's Complaint, Plaintiff makes perfunctory, unsupported allegations that he was subject to the overtime provisions of the FLSA and the NYLL. *See* Compl., Dkt. No. 1, at ¶ 26. However, the undisputed evidence in this action demonstrates that Plaintiff was exempt from the overtime provisions of those statutes, pursuant to the executive exemption authorized under federal law and New York law. As such, there is no genuine issue of material fact that would preclude summary judgment in favor of Defendants as to Plaintiff's claims for overtime under federal and state law.

Federal and New York law each expressly provide a categorical exemption from mandatory overtime requirements for employees who, *inter alia*, work in bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. 213(a)(1); N.Y. Lab. Law § 198(1-b)[4]. New York has adopted regulations which mirror the FLSA and, as such, overtime claims made

---

[4] As courts typically address exemptions to overtime violations under the FLSA and the NYLL together, and because the executive exemptions under the FLSA and NYLL are largely identical, for brevity, Defendants will analyze the executive exemption as applied to Plaintiff under the rubric of the FLSA and incorporates by reference this analysis for application to Plaintiff's unpaid wage claims under New York law. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554,556 n.1 (2d Cir. 2012) (declining to engage in a separate analysis of New York state law claims because "like the FLSA, the NYLL 'mandates overtime pay and applies the same exemptions of the FLSA.'") (citations omitted); *Ramos* 687 F.3d at 555-56, 559-60 (treating FLSA and NYLL executive exemptions as functionally equivalent); *Tamayo v. DHR Rest. Co.,* No. 14 CV 9633 (GBD), 2017 WL 532460, at *5 & n.5 (S.D.N.Y. Feb. 3, 2017) ("The NYLL has a substantially similar overtime provision with an analogous exception for executives."); *Martinez v. Hilton Hotels Corp.*, 930 F.Supp.2d 508, 519 (S.D.N.Y. 2013) (same).

under the NYLL are to be analyzed under the rubric applicable to claims under the FLSA. *See*, e.g., *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013) ("Because New York's overtime provisions mirror and/or expressly adopt federal wage law, federal courts evaluate New York's executive exemption by reference to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., and its attendant regulations, set forth in the Code of Federal Regulations."). Notably, while in years past, the federal courts have narrowly construed FLSA exemptions against employers, the Supreme Court recently held that the exemptions "are as much a part of the FLSA's purpose as the overtime-pay requirement" and has suggested courts have "no license to give the exemption anything but a fair reading." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018); *see also Vasto v. Credico (USA) LLC*, 767 F. App'x 54, 56 (2d Cir. 2019) ("The FLSA is a remedial law, and its exemptions were previously narrowly construed to that end . . . But no longer."); *Yeh v. Han Dynasty, Inc.*, 2020 WL 883501, at *6 (S.D.N.Y. Feb. 24, 2020) (same).

The FLSA does not define "bona fide executive, administrative, or professional" employment, and instead directs the Secretary of Labor to "define[] and delimit[]" those terms "from time to time by regulations." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559 (2d Cir. 2012). The applicable federal regulation in this matter provides that the executive exemption applies to employees who satisfy the following four criteria:

> (1) Compensated on a salary basis at a rate of not less than $455[5] per week; (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department of subdivision thereof; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing,

---

[5] As of January 1, 2020, the minimum salary threshold was increased to $684. *See* 29 C.F.R. § 541.100(a). However, during Plaintiff's employment, the minimum salary threshold was $455.

advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).[6] The determination as to whether an employee is exempt under the FLSA is "a mixed question of law and fact." *Pippins v. KPMG, LLP*, 759 F.3d 235, 239 (2d Cir. 2014) (citations omitted). "The question of how the employees spent their working time is a question of fact," whereas "[t]he question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Id.*; *see also Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481, 487 (E.D.N.Y. 2012) ("[I]t is a strict question of law whether the activities and responsibilities of the employee, once established, exempt him or her from the FLSA's overtime requirements") (internal quotations omitted).

In the instant case, the undisputed facts clearly establish that Plaintiff qualified for the executive exemption under federal and New York law.

### 1. At All Times, Plaintiff Was Compensated on a Salary Basis in Excess of the Weekly Salary Threshold Requirements Under Federal and New York Law

It is undisputed that Plaintiff was compensated on a salary basis. *See* 56.1, ¶ 12. The salary requirement for exemption status under the FLSA was $455 per week during Plaintiff's employment, as set forth in 29 C.F.R. § 541.100(a); and under the NYLL, the salary threshold was $543.75 per week from December 29, 2013 until December 30, 2013; $600 per week from December 31, 2013 until December 30, 2014; $656.25 per week from December 31, 2014 until December 30, 2015; $675 per week from December 31, 2015 until December 30, 2016 for large employers in New York City ("NYC"); $825 per week from December 31, 2016 until December 30, 2017 for large employers in NYC; $975 per week from December 31, 2017 until December

---

[6] New York's executive employee exemption is interpreted similarly to the FLSA exemption, except that: (1) the minimum salary required to qualify for the exemption at the latest date in Plaintiff's employment was $1,125 per week; and (2) the employee must also customarily and regularly exercise discretionary powers. 12 NYCRR § 146-3.2(c)(1)(i)(e)(1)(i). Plaintiff regularly exercises such discretionary powers. *See* 56.1 ¶¶ 32, 34-37, 44, 46-81.

30, 2018 for large employers in NYC; and $1,125 per week from December 31, 2018 until the

end of Plaintiff's employment on August 24, 2019 for large employers in NYC, as set forth in 12

NYCRR § 146-3.2(c)(1)(i)(e)(1)(i). *See* 56.1, ¶¶ 14-21.   Here, throughout the entirety of

Plaintiff's employment with Defendants, his salary was in excess of the applicable FLSA/New

York minimum weekly salary requirement. From in or around December 29, 2013 until

December 31, 2017, Plaintiff, as chef, received $1,130 each week. *See* 56.1, ¶ 22. From in or

around January 1, 2018 until the end of his employment, Plaintiff, as chef, received $1,400 each

week. *See* 56.1, ¶ 25. Thus, Plaintiff's salary has at all times met and far surpassed the weekly

threshold requirement under federal and state laws.

### 2.   Plaintiff Managed the Kitchen Staff

To meet the second prong of the executive exemption, an employee's primary duty must

be in managing other employees. The term "managing" in the context of the executive

exemption encompasses a broad range of activities, including but not limited to:

> interviewing, selecting, and training of employees; setting and
> adjusting their rates of pay and hours of work; directing the work
> of employees; maintaining production or sales records for use in
> supervision or control; appraising employees' productivity and
> efficiency for the purpose of recommending promotions or other
> changes in status; handling employee complaints and grievances;
> disciplining employees; planning the work; determining the
> techniques to be used; apportioning the work among the
> employees; determining the types of materials, supplies,
> machinery, equipment or tools to be used or merchandise to be
> bought, stocked and sold: controlling the flow and distribution of
> materials or merchandise and supplies; providing for the safety and
> security of the employees or the property; planning and controlling
> the budget; and monitoring or implementing legal compliance
> measures.

29 C.F.R. § 541.102. Importantly, to qualify for the exemption an employee need only perform

*some* of these types of managerial duties, as the character of an employee's job is considered as a

whole. *See e.g.*, *Yesmin v. Rite Aid of N.Y. Inc.*, 2012 WL 3871735, at *1 (E.D.N.Y. Sept. 6, 2012). Moreover, the regulation itself recognizes that these are merely examples of "management," and are not exhaustive of the types of duties that may be considered. 29 C.F.R. § 541.102.

Here, the record evidence overwhelmingly demonstrates that Plaintiff managed Defendants' kitchen staff. While Plaintiff may also have performed some non-exempt tasks in conjunction with his managerial responsibilities, it was Plaintiff, not another supervisor, who ultimately decided when and whether he would perform these non-exempt tasks. Looking at the declarations, the undisputed evidence established that Plaintiff performed a number of duties that are wholly indicative of "management," including:

- managing and overseeing Dee's' kitchen and its operations, including the direct supervision of at least five to six kitchen employees at any given time including Salad Cooks, Grillmen, Fryer cooks, Prep cooks and dishwashers, *see* 56.1, ¶ 32;

- setting and adjusting the kitchen station assignments of individual kitchen employees in accordance with his own judgment, *see* 56.1, ¶¶ 34, 35;

- training Dee's' kitchen staff to ensure that they properly prepared meals in accordance with Dee's standards, *see* 56.1, ¶ 36;

- ensuring that kitchen employees maintained appropriate sanitation and food safety standards in the kitchen area, *see* 56.1, ¶ 37;

- overseeing the kitchen schedule to ensure that there was enough coverage to meet the demand of the restaurant during busy times (lunch, dinner, and weekends), *see* 56.1, ¶¶ 39-42;

- conducting interviews (to determine if candidates were qualified and available to work), sourcing candidates, and making hiring recommendations and decisions, as well as recommending kitchen employees for promotions and terminating employees, *see* 56.1, ¶¶ 54-59;

- handling customer complaints about the food and ensuring the issue is corrected to the restaurant's standards, *see* 56.1, ¶ 72; and

- determining the type of supplies, equipment, tools, or merchandise to be brought, stocked, and sold, including ordering food and supplies for the restaurant, *see* 56.1, ¶¶ 73-80.

Moreover, Plaintiff was ultimately responsible for the overall success of the kitchen and resolved customer complaints to ensure the customer was happy and that the customer received the correct dish that met the restaurant's standards. *See* 56.1, ¶¶ 36, 72. Thus, Plaintiff cannot genuinely dispute that he overwhelmingly engaged in numerous management functions recognized by 29 C.F.R. § 541.102.

### 3. Plaintiff's Primary Duty was Management

The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In determining an employee's primary duty, a court must consider all the facts in the case, "with the major emphasis on the character of the employee's job as a whole." *Id*. The Code of Federal Regulations identifies a list of non-exhaustive factors that a court should consider in determining the employee's primary duty, including: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the

wages paid to other employees for the kind of nonexempt work performed by the employee. *Id*. Because "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption," 29 C.F.R. § 541.106(a), federal regulations provide some illustrative examples of exempt executives who perform nonexempt work while discharging their duties. For example, an assistant manager in a retail establishment is not precluded from the exemption even if he performs nonexempt tasks, "such as serving customers, cooking food, stocking shelves and cleaning the establishment." 29 C.F.R. § 541.106(b). The nonexempt tasks, such as serving customers and stocking shelves, can occur contemporaneously with supervising employees and directing their work. *Id*.

The undisputed evidence in this case clearly establishes that the aforementioned management functions were Plaintiff's "primary duty," as defined by 29 C.F.R. § 541.700(a).

### a. Relative Importance of Plaintiff's Management Duties Militates Towards a Finding That it was Plaintiff's Primary Duty

Looking first at the relative importance of Plaintiff's duties, the Court in the Second Circuit has stated when analyzing cases under the FLSA and the NYLL that the relative importance inquiry evaluates whether the restaurant could not operate successfully unless the purported managerial functions assigned to Plaintiff were performed. *See, e.g.*, *Tamayo v. DHR Rest. Co., LLC*, 2017 WL 532460, at *6 (S.D.N.Y. Feb. 3, 2017) (citing *Donovan v. Burger King Corp.*. 675 F.2d 516, 521 (2d Cir. 1982); *Scott v. SSP Am., Inc.*, 2011 WL 1204406, at *9 (E.D.N.Y. Mar. 29, 2011) ("Even when all reasonable inferences are drawn in [p]laintiff's favor, it is clear from her deposition admissions that the success of the [d]efendant's business was more dependent on Plaintiff's management duties than her other duties, the performance of which did not prevent her from continuing to manage her [department].").

10

The standard is easily satisfied here. Plaintiff determined what food and other supplies were needed, ordered those supplies on a regular basis, ensured proper delivery of same and resolved delivery issues, managed work schedules, directed kitchen staff in the speed, organization and quality of their work, among Plaintiff's many job responsibilities in the kitchen. *See* 56.1, ¶¶ 32, 34, 38, 40-42, 73, 76. The restaurant would have come to a grinding halt and the central business of Dee's would have failed without a functioning kitchen and kitchen staff. Simply put, if there is no food or sufficiently supervised employees to prepare and serve it, there can be no restaurant sales and, in turn, no revenue being generated. Clearly, Plaintiff's managerial duties as the chef for Dee's were of the utmost romance to the continued operation of the kitchen.

### b. Plaintiff's Time Spent Performing Exempt Work

With respect to the second factor, the undisputed evidence demonstrates that Plaintiff's exempt duties were regular and re-occurring management functions that Plaintiff performed on a regular basis in the kitchen. *See* 56.1 ¶¶ 32, 34-39, 54, 72, 73, 76.

Plaintiff will likely attempt to create the appearance of a dispute on this point by perhaps arguing that he was actually engaged in non-exempt duties when he cooked. *See* 56.1 ¶¶ 44, 45. However, such an effort would prove unsuccessful as the law is well-established that performance of such non-exempt duties is not inconsistent with the executive exemption, as managers often are required to multi-task and/or "jump in" to perform whatever needs to be done to ensure the overall profitability and success of their department while still overall managing the larger working group. *See, e.g., Scott*, 2011 WL 1204406, at *10 ("[i]t is clear from the undisputed facts in the record, as well as [p]laintiff's deposition testimony, that her principal

value to [d]efendant's business was the management of her units, even though she engaged concurrently in a substantial amount of nonexempt work.").

Moreover, courts have roundly recognized that the exact amount of time that a plaintiff spent on nonexempt work is not dispositive of whether his "primary duty" was management." *See* 29 C.F.R. § 541.700 ("[t]ime alone . . . is not the sole test"); *Donovan*, 672 F.2d at 226 ("one can still be 'managing' if one is in charge, even while physically doing something else . . . [A]n employee can manage while performing other work, and . . . this other work does not negate the conclusion that his primary duty is management."); *Scott*, 20177 WL 1204406, at \*8, \*11 (although the court credited plaintiff's testimony that she spent ninety percent of her time performing nonexempt tasks, the court found that her "management duties were more than important to the success of [d]efendant's business than her other duties" where she "continued to supervise her subordinates by 'multi-task[ing]'"); *Paganas v. Total Maint. Sol, LLC*, 726. F. App'x 851, 853-54 (2d Cir. 2018) ("An employee's 'primary duty' is the 'principal, main, major or most important duty the employee performs'…Merely performing some nonexempt duties, however, does not mean that an employee's primary duty was not management."); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F.Supp.2d 261, 277 (E.D.N.Y. 2013) ("With respect to time spent performing exempt work, while 'employees who spend 50 percent of their time performing exempt work will generally satisfy the primary duty requirement[,][t]ime alone…is no the sole test' and 'exempt employees need not spend more than 50 percent of their time performing exempt work.'" (quoting 29 C.F.R. § 541.700(b))); *see also Yeh*, 2020 WL 833501, at \*12 (granting summary judgment and dismissing a chef's FLSA and NYLL overtime claims by finding that the chef's primary duty was management of a kitchen even though he also spent significant time cooking). Rather, the critical focus is on whether the employee "remain[s]

responsible for the success or failure of business operations under their management while performing the nonexempt work." 29 C.F.R. § 541.106(a); *see also Martinez,* 930 F.Supp.2d at 524 ("Exempt executives generally make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing non-exempt work, whereas a nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined periods."). Accordingly, even if Plaintiff cooked food, performance of such duties does not negate a conclusion that his primary duty as chef was management of the kitchen staff, as it was Plaintiff, not some other supervisor, who determined which such tasks needed to be performed and when. Moreover, Plaintiff, at most, spent three hours of his day cooking, and spent the remaining time engaging in managerial duties. *See* 56.1 ¶ 45.  Indeed, Plaintiff oversaw that the kitchen staff was producing quality dishes for the customers and in situations where there was a customer complaint about a dish, Plaintiff would make sure the dish was appropriately corrected by the kitchen staff. *See* 56.1 ¶ 72. While preparing food or engaging in other nonexempt tasks, Plaintiff, as chef, remained, at all times, ultimately responsible for the success of his kitchen and maintaining its standards. *See* 56.1 ¶¶ 35-37, 39, 44,46, 48, 72.

### c. Plaintiff Worked with Freedom from Direct Supervision and Customarily and Regularly Exercised His Discretion as Chef

Plaintiff oversaw all "back of the house" operations for Dee's. *See* 56.1 ¶ 10. As noted, *supra*, this included directing the workflow of how meals are to be cooked and how kitchen staff should be spending their time, assessing the quality of cooked meals, handling customer complaints, and hiring, firing, and promoting kitchen staff. *See* 56.1 ¶¶ 32, 34, 52-72. Plaintiff was given free reign and discretion over how to direct the kitchen staff in their duties, overseeing the work schedules of kitchen staff, and how to respond to problems, and adjusting the work

13

assignments of the kitchen employees in accordance with their skills and the volume of work in the kitchen. *See* 56.1 ¶¶ 35, 46, 48, 50, 51, 75. In sum, there was no one who supervised Plaintiff's daily work in the manner that he managed the kitchen staff's day-to-day work. Rather, at all times, Plaintiff performed his duties relatively free from supervision.

### d. Plaintiff's Compensation Structure Differed from Other Kitchen Staff

Here, with deference owed to Plaintiff as chef and his importance in the kitchen, Plaintiff was compensated at a substantially higher rate than that paid to any subordinate kitchen staff who reported to him. *See* 56.1 ¶¶ 22, 25, 30, 31. Moreover, Plaintiff was paid on a salary basis while other kitchen staff were compensated on an hourly basis. *See* 56.1 ¶ 29. As well, Plaintiff's compensation greatly exceeded that which was paid to other kitchen workers. *See* 56.1 ¶¶ 22, 25, 30, 31.

That Plaintiff was the only member of the kitchen staff compensated on a salary basis, and earned remuneration significantly in excess of other kitchen staff, further demonstrates that Plaintiff was properly classified as exempt. *See Yeh,* 2020 WL 883501, at *11 ("Yeh's predominantly managerial duties are, finally, corroborated by testimony indicating that Yeh's compensation (initially $55,000/year; later $60,000/year) significantly exceeded that of the other kitchen staff.").

Upon consideration of the record in this matter, a reasonable jury could not find that Plaintiff's primary duty was anything other than management. As such, there is no genuine issue of material fact in dispute and Defendants are entitled to summary judgment as to this prong of the executive exemption analysis. *See Celotex Corp.*, 477 U.S. at 323.

### 4. Plaintiff's Position as Chef Required Him to Regularly and Customarily Direct the Work of Kitchen Staff

The third prong of the executive exemption analysis requires that the employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent. 29 C.F.R. § 541.100(a)(3). In the instant case, Plaintiff regularly and customarily directed the work of the entire kitchen staff consisting of at least five or six full-time kitchen workers, at any given time, during the entirety of Plaintiff's employment as chef. *See* 56.1 ¶ 32. Specifically, during Plaintiff's tenure with Dee's, the following full-time positions were those Plaintiff at all times supervised: salad cooks, grillmen, fryer cooks, prep cooks, and dishwashers. *Id.* As such, this element of the executive exemption standard is also satisfied.

### 5. Plaintiff's Suggestions and Recommendations as to the Hiring and Firing of Kitchen Staff were Heeded by Defendants

A bona fide executive must have authority to hire or fire other employees or the executive's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight. 29 C.F.R. § 541.100(a)(4). "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105. Further, the "hiring or firing or making recommendations" prong is read in the disjunctive, so plaintiff need not have authority to provide guidance in all areas. *See* Preamble to the August 2004 U.S. Department of Labor Regulations ("An employee who provides guidance on any one of the specified changes in employment status may meet the section 541.100(a)(4) requirement.").

Here, Plaintiff was responsible for conducting interviews (to determine if candidates were qualified and available to work), sourcing candidates, and making hiring decisions and recommendations. *See* 56.1 ¶¶ 54-71. Notably, during his employment, Plaintiff hired several employees, including Daniel Perez as a cook, "Jose" and "Joffere" as dishwashers, "Carlos" as a salad cook, and "Leonel" as a pizza man. *See* 56.1 ¶ 61. Moreover, Plaintiff made recommendations regarding promotions and terminations for Dee's kitchen staff, based on the employee's work performance. *See* 56.1 ¶¶ 63, 70. For example, Plaintiff recommended "Alvaro," a kitchen employee, for a promotion because Plaintiff felt that Alvaro was a good candidate for a position as cook. *See* 56.1 ¶ 65. Based on Plaintiff's recommendation, Dee's promoted Alvaro. *See* 56.1 ¶ 66. As well, over the past six years, Plaintiff terminated several dishwashers. *See* 56.1 ¶ 71.

As established above, Plaintiff each and every statutory and regulatory requirement for the exemption from receiving overtime pay requirements compensation. Plaintiff cannot offer evidence to the contrary, thus Defendants are entitled to summary judgment on Plaintiff's claims for unpaid overtime wages as set forth in Plaintiff's Complaint.

### C. Plaintiff's "Spread of Hours" Claim Must Be Dismissed

Plaintiff alleges that Defendants also violated New York's "spread of hours" premium for shifts that last longer than ten hours. *See* Compl., Dkt. No. 1, at 53. Under the NYLL, an employee is entitled to receive an additional hour of compensation at the state minimum wage for any day in which his "spread of hours" that is, the period of time between when he first begins and then finally completes work, regardless of any breaks, exceeds ten hours. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 241-242, n.4 (2d Cir. 2011) (citing 12 NYCRR § 146-1.6).

However, the term "employee" "does not include any individual permitted to work in, or as . . . an executive." 12 NYCRR 146.-3.2(c). Here, because Plaintiff fits within the executive exemption, he does not fall within the category of "employee" that would be entitled to receive the "spread of hours" premium. Therefore, the Court should grant Defendants' Motion for Summary Judgment on Plaintiff's "spread of hours" claim and dismiss Plaintiff's Fifth Cause of Action.

### D. Plaintiff's Claims under the NYLL for Wage Statement Violations Must be Dismissed

NYLL § 195(3) requires that an employer "furnish each employee with a statement with every payment of wages" listing certain enumerated information. Plaintiff alleges, in true boilerplate fashion, that Defendants did not provide him wage statements as required by NYLL 195(3), *See* Compl., Dkt. No 1, at 51.

Even if Defendants failed to provide wage statements to Plaintiff, the NYLL provides for no liability where an employee has timely received all of the compensation owed to him:

> In any action or administrative proceeding to recover damages for violation of subdivision three of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided statements as required by subdivision three of section one hundred ninety-five of this article […]

*See* NYLL § 198(1-d).

Plaintiff's only claim of unpaid compensation relates to the alleged unpaid overtime and "spread of hours" pay that he claims to be owed. *See* Compl. Dkt. No. 1, at 51. However, because Plaintiff was properly classified as exempt, he was not entitled to overtime or spread of hours pay. Plaintiff asserts no other claim of unpaid wages. Accordingly, regardless of whether

17

Plaintiff was provided with statutorily-required wage statements, any such technical violation of the statute is wholly immaterial since Plaintiff received timely payment of all his wages, and these payments were always in the correct amount owed to him. Thus, Plaintiff's claim for violation of the NYLL's wage notice obligations must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment on the issue of Plaintiff's status as an exempt employee and dismiss Plaintiff's complaint in its entirety and grant Defendants such other and further relief as the Court deems appropriate.

Dated: Woodbury, New York
      February 26, 2020

Respectfully submitted,

KAUFMAN DOLOWICH & VOLUCK, LLP

By: _____

Aaron N. Solomon, Esq.
Keith Gutstein, Esq.
Taylor M. Ferris, Esq.
*Attorneys for Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100

4842-7862-1877, v. 1