UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSE PANORA, *on his own behalf and on behalf of
others similarly situated*,                                    Case No.: 19-cv-07267(BMC)

                           Plaintiff,

      -against-

DEENORA CORP d/b/a Dee's; DEE'S BRICK OVEN
PIZZA, INC d/b/a Dee's, and DEERAN ARABIAN a/k/a
Dee Arabian,

                          Defendants.
------------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

AARON N. SOLOMON, ESQ.
KEITH GUTSTEIN, ESQ.
TAYLOR M. FERRIS, ESQ.
KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Tel.: (516) 681-1100

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ..............................................................................................1
SUMMARY JUDGMENT SHOULD BE GRANTED ...............................................................2

   A.   PLAINTIFF WAS PROPERLY CLASSIFIED AS AN EXEMPT EXECUTIVE EMPLOYEE .................................................................................................................2

       1. PLAINTIFF'S MOST IMPORTANT DUTIES WERE MANAGERIAL ............. 2

       2. REGARDLESS OF THE AMOUNT OF TIME HE SPENT ON VARIOUS TASKS, PLAINTIFF WAS RESPONSIBLE FOR KITCHEN MANAGEMENT ................................................................................................................ 6

       3. PLAINTIFF REGULARLY SUPERVISED TWO OR MORE FULL-TIME EMPLOYEES ..................................................................................................... 7

       4. PLAINTIFF MADE RECOMMENDATIONS TO HIRE, FIRE, AND PROMOTE EMPLOYEES ..................................................................................................8

       5. PLAINTIFF'S SUGGESTIONS AND RECOMMENDATIONS AS TO THE HIRING AND FIRING OF KITCHEN STAFF WERE HEEDED BY DEFENDENTS .................................................................................................15

   B.   PLAINTIFF FAILS TO OPPOSE DEFENDANTS' REMAINING ARGUMENTS .................................................................................................................10

CONCLUSION ............................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

Page

*Baldwin v. Trailer Inns, Inc.*,
266 F.3d 1104 (9th Cir. 2001) ................................................................................................. 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................................. 8

*Donovan v. Burger King Corp.*,
675 F.2d 516 (2d Cir. 1982)..................................................................................................... 6

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018)............................................................................................................. 2

*Guinup v. Petr-All Petroleum Corp.*,
2010 U.S. Dist. LEXIS 86280 (N.D.N.Y. Aug. 23, 2010) …………………………………….. 10

*Lobban v. Cromwell Towers Apartments, Ltd. P'ship*,
345 F. Supp. 3d 334 (S.D.N.Y. 2018) …………………………………………………………..10

*McCray v. County of Suffolk,*
2013 U.S. Dist. LEXIS 128373 (E.D.N.Y. Sept. 9, 2013)....................................................... 2, 9

*Moore v. Tractor Supply Co.,*
352 F. Supp. 2d 1268 (S.D. Fl. 2004) .................................................................................... 7

*Plahutnik v. Daikin Am., Inc.,*
2014 U.S. Dist. LEXIS 140562 (S.D.N.Y. Sept. 30, 2014)..................................................... 6

*Philip v. Deutsche Bank Nat'l Trust Co,*
912 F. Supp. 2d 96 (S.D.N.Y. 2012)...................................................................................... 2

*Ramos v. Baldor Specialty Foods, Inc.,*
687 F.3d 554 (2d Cir. 2012).................................................................................................... 9

*Robles v. Argonaut Rest. & Diner, Inc.,*
2009 U.S. Dist. LEXIS 96949 (S.D.N.Y. Oct. 8, 2009) ............................................................... 10

*Scott v. SSP Am., Inc.,*
2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011) .......................................................................... 6

*United Magazine Co. v. Murdoch Magazines Distrib., Inc.,*
393 F. Supp. 2d 199 (S.D.N.Y, 2005).......................................................................................2

*United Magazine Co., v. Murdoch Magazines Distrib. Inc.,*
279 Fed. Appx. 14 (2d Cir. 2008) .................................................................................................. 2

*Yeh v. Han Dynasty, Inc.,*
2020 WL 883501 (S.D.N.Y. Feb. 24, 2020) ................................................................................... 7

Defendants Deenora Corp. ("Deenora"), Dee's Brick Oven Pizza, Inc. ("Dee's"), and Deeran Arabian ("Arabian") (collectively "Defendants"), respectfully submit this Reply Memorandum of Law in Further Support of their Motion for Summary Judgment.

## I. PRELIMINARY STATEMENT

This is not a difficult case. Deenora employed Plaintiff as a chef to lead its kitchen. Plaintiff admits he was paid on a salary basis, and that his salary always met the applicable thresholds under the FLSA and NYLL for an exempt employee.[1] Plaintiff concedes that he was the only employee in the kitchen paid on a salary basis. *See* Counter 56.1 at ¶ 26. Defendants' moving papers established that Plaintiff's "duties" met the standard for an exempt "executive" employee. Though Plaintiff styled this case as a putative collective action, the briefing on this motion reveals that this case is really only about Plaintiff and his individual overtime classification. And, with respect to Plaintiff's claims, Defendants are entitled to summary judgment.

Initially, Plaintiff does not dispute that Defendants have met their evidentiary burden for summary judgment. As Plaintiff concedes the "salary basis" requirement for exempt status, he focuses the entirety of his opposition on a vain crusade to demonstrate that "issues of fact" exist with respect to the duties he performed. *See* Plaintiff's Memorandum of Law in Opposition ("Opp"), at pp. 5-10. Plaintiff contends that (1) management was not his primary duty; (2) he did not supervise two or more employees; and (3) he did not have authority to hire or fire other employees. Simply put, the only issue left to decide is whether the undisputed evidence demonstrates that Plaintiff performed the duties of an exempt employee.

---

[1] Plaintiff admits that he was paid a week salary of $1,310 from December 29, 2013 until December 31, 2017, and $1,400 from January 1, 2018 until the end of his employment. *See* Plaintiff's Counter 56.1 Statement ("Counter 56.1"), ¶¶ 12- 27; *see also* Opp., p 8.

Contrary to Plaintiff's argument, exemptions are not "narrowly construed."  As Defendants pointed out, the Supreme Court made this clear in *Encino Motorcars, LLC v. Navarro,* 138 S. Ct. 1134, 1142 (2018) when it noted that Courts need only give exemptions "a fair reading."

Regardless of whether this Court construes the executive exemption narrowly, or gives it a "fair reading," Plaintiff cannot demonstrate the existence of an issue of fact.  In fact, Plaintiff's Rule 56.1 statement either admits to critical facts demonstrating that Plaintiff was exempt outright, *see* Counter 56.1 at ¶¶ 12-27, 29, 30, 33, 46, 64, 66, 68, 75-77, 80, or by providing responses that are unsupported by evidence, thereby rendering Plaintiff's response an admission. *See McCray v. County of Suffolk*, 2013 U.S. Dist. LEXIS 128373, *11-12 (E.D.N.Y. Sept. 9, 2013) ("If the opposing party then fails to controvert a fact so set forth, that fact will be deemed admitted.").  *See* Counter 56.1 at ¶¶ 5-8, 31-37, 39-57, 59-65, 67, 69-81.  Plaintiff's opposition is buttressed principally by his insufficient "self-serving" affidavit in which Plaintiff baldly proclaims that he "never supervised anyone" and "never hired or fired anyone." Aside from the fact that such denials are wholly insufficient to demonstrate an issue of fact,[2] Plaintiff's affidavit is not significant for what it says, but rather for what it does not say. For example, in his affidavit Plaintiff does not deny that he dictated the day-to-day work assignments of kitchen employees, adjusted employee schedules, managed employee performance and discipline, controlled the ordering of food and supplies, trained employees, and made employee promotion recommendations that were given particular weight.  Thus, Plaintiff does not deny that he performed duties that qualify him as exempt.  Therefore, Defendants are entitled to summary judgment and dismissal of the Complaint.

---

[2] Plaintiff's self-serving affidavit is insufficient to preclude summary judgment. *Philip v. Deutsche Bank Nat'l Trust Co.*, 2014 U.S. Dist. LEXIS 140562, *2 (S.D.N.Y. Sept. 30, 2014) ("[A] self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment.") citing *United Magazine Co. v. Murdoch Magazines Distrib., Inc.*, 393 F. Supp. 2d 199, 211 (S.D.N.Y, 2005), aff'd sub nom. *United Magazine Co., v. Murdoch Magazines Distrib. Inc.*, 279 Fed. Appx. 14 (2d Cir. 2008).

## II. SUMMARY JUDGMENT SHOULD BE GRANTED

### A. Plaintiff Was Properly Classified as an Exempt Executive Employee

#### 1. Plaintiff's Most Important Duties Were Managerial

Plaintiff argues that he did not perform certain managerial duties and instead contends that his primary duty was to cook. This argument ignores the plethora of management responsibilities to which Plaintiff admits. *See* Counter 56.1, ¶¶5-9, 36-37, 39-51, 55-57, 63-64, 66-69, 74-78, 80-81. Here, Plaintiff oversaw the kitchen staff by, *inter alia*, managing the daily cooking and cleaning duties, overseeing food quality, managing employee performance and discipline, managing employee scheduling, and addressing customer complaints. *See* 56.1, ¶¶36-37, 39-51, 55-57, 63-64, 66-69, 74-78, 80-81. Plaintiff's evidence does not dispute any of this.

Plaintiff's affidavit does not deny that he trained employees and controlled the day-to-day work assignments of employees in the kitchen and adjusted these assignments on an as needed basis. Instead Plaintiff incredulously alleges that "a more experienced employee in each station would show a less experienced employee how to do the job," and that Arabian and the general manager, Armen, "managed and oversaw the whole operation of Dee's" by providing directives through "Dee's Team Group Chat." *See* Counter 56.1, ¶¶32, 33, 47. However, this "Dee's Team Group Chat" contains texts from the last week of August, 2019 and October 2019, *after* Plaintiff's employment with Defendants ended.[3] *See* Counter 56.1, ¶ 47, Plaintiff's Exhibit 3, Dkt. # 30-3. It is simply disingenuous, and quite telling, that Plaintiff elects to reply upon text messages from a period of time after his employment ended to establish that he did not supervise employees during

---

[3] Plaintiff claims his employment ended on July 13, 2019. *See* Counter 56.1 at ¶ 9. Page one of Plaintiff's Exhibit 3 is not dated, but contains a surveillance screen shot with a date stamp ending in "9" (for 2019). *See* Dkt. # 30-3, pg 1. The page also contains a screenshot of a work schedule for the dates of August 27th – September 1st. Plaintiff's name, "Jose P.", is "blacked out" on this schedule indicating that Plaintiff was not scheduled to work. *Id.* As such, page one contains post-employment texts. Pages two and four contain a text message chain with date stamps from October, 2019. *Id.* At pgs 2, 4. The third page, though undated, is immaterial as Plaintiff does not cite it for any purpose or claim that its texts involved employees (i.e. "Amanda" or "Melanie") that worked in the kitchen.

3

his employment. As a result, Plaintiff does not dispute that he supervised employees. *See* Counter 56.1, ¶¶ 47, 50, 51. Likewise, Plaintiff cannot use these post-employment text messages to dispute that he adjusted employee schedules, approved requests for time off, and was involved in managing performance and imposing discipline. *See* Counter 56.1, ¶¶ 40, 41, 43.[4] Similarly, a text message chain about food ordering (Plaintiff's Exhibit 5) does not dispute that Plaintiff was responsible for overseeing the kitchen schedule. *See* Counter 56.1, ¶¶ 39, Exhibit 5, Dkt. # 30-5.

Plaintiff also asserts that Defendant Arabian and Armen installed a surveillance camera to "closely watch the kitchen employees." *See* Counter 56.1, ¶21; Opp., p 6. Even if this statement is credited on this motion, it does nothing to suggest that Arabian and Armen directly supervised the day-to-day work of the kitchen staff. The suggestion that the owner and general manager of all staff members in a busy restaurant provided kitchen employees directives via text while watching a surveillance camera does not comport with the basic realties of a workplace, particularly, a restaurant with designated departments ("front-of-the-house" vs. "back-of-the-house") that had different duties. It is also illogical that an owner or manager would provide employees work directives through text messages assuming that when the kitchen was busy, employees would not be able to use their phones. Additionally, Plaintiff does not contend that there was another kitchen worker responsible for overall management of the kitchen. Rather, Plaintiff merely states that Arabian was the owner and Armen was the general manager. *See* Panora Aff., ¶¶13, 14. Even assuming *arguendo* that Arabian and/or Armen oversaw Defendants' overall operations, this still does not definitely refute that fact that Plaintiff directed the day-to-day duties of the kitchen staff.

---

[4] Plaintiff's submission of employee schedules with station assignments (Plaintiff's Exhibit 4) does not serve to dispute the fact that Plaintiff had authority to move employees from station to station as needed. *See* Dkt. # 30-4. Similarly, post-employment text messages in which Armen allegedly states "do not modify the schedule" do not create an issue of fact either. *See* Dkt. # 30-3. Nor does Plaintiff specifically deny in his affidavit that he had authority to change station assignments during the workday as needed. *See* Panora Aff. ¶¶ 19-21.

4

Moreover, simply because there is a general manager, it does not follow well-settled case law that there is no requirement that an employer demonstrates that there is "complete freedom from supervision." *Guinup v. Petr-All Petroleum Corp.*, 2010 U.S. Dist. LEXIS 86280, *28 (N.D.N.Y. Aug. 23, 2010).

In any busy kitchen in New York City, someone must be responsible for telling the kitchen staff what to cook (and how to cook it), ensuring that the kitchen is adequately staffed, and running the kitchen's day-to-day operations. Defendants' evidence establishes that at Deenora this person was Plaintiff. Tellingly, Plaintiff's self-serving affidavit does not even bother to deny it. Notably, Plaintiff's affidavit is devoid of any assertions that he was not a member of management, that he did not adjust schedules and station assignments as needed or control the day-to-day work assignments of the kitchen employees. *See* Panora Aff., *generally*. Instead, Plaintiff declares:

- "Throughout my employment, I neither arranged the schedule nor supervised any employee." Panora Aff., ¶ 16.
- "Boss Deeran would give direct orders to everyone in the pizzeria. However when he was not at the pizzeria, he would pass his orders through Armen." Panora Aff., ¶ 17.
- "Armen arranged the schedules of all employees and assigned different roles to each of them." Panora Aff., ¶ 19.
- "An employee did not necessarily work at the one station for the entire employment." Panora Aff., ¶ 20.

None of these statements adequately refute Plaintiff's exempt responsibilities. Plaintiff does not dispute that he changed schedules or station assignments as needed, or that he controlled the day-to-day work assignments of the kitchen staff. Moreover, Plaintiff admitted that, "given [his] two-decade experience with the pizzeria, he would train less experienced kitchen employees. *See* Panora Aff., ¶22.

Courts routinely find that the performance of core managerial duties like "scheduling employees, keeping track of inventory, and assigning employees to particular jobs" are essential

5

activities "in the sense of the being the most important or critical success" of a retail enterprise. *See Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982); *Scott v. SSP Am. Inc.*, 2011 WL 1204406, at *9 (E.D.N.Y. Mar. 29, 2011) ("Even when all reasonable inferences are drawn in [p]laintiff's favor," it is clear from [plaintiff's] admissions that the success of [d]efendant's business was more dependent on Plaintiff's management duties than her other duties, the performance of which did not prevent her from continuing to manage her [department]."). Here, Plaintiff determined what food and other supplies were needed, ordered those supplies on a regular basis and ensured proper delivery of same, managed worked schedules, directed kitchen staff in the speed and quality of their work, among Plaintiff's many job responsibilities in the kitchen. See 56.1 ¶¶74-81; *see also* Panora Aff., ¶¶32, 34-36 (Plaintiff does not deny ordering supplies for Defendants, determining what food and other supplies were needed, or ensuring proper delivery). Indeed, if there is no food or sufficiently supervised employees to prepare and serve it, there can be no restaurant sales and, in turn, no revenue being generated. Thus, the management duties that Plaintiff performed in the kitchen were essential to the successful operation of the restaurant.

### 2. Regardless of the Amount of Time He Spent on Various Tasks, Plaintiff was Responsible for Kitchen Management

Plaintiff asserts that his primary duty was cooking because he purportedly spent the majority of his time performing non-exempt tasks. However, Plaintiff does not actually dispute that he only spent three hours of his day cooking. *See* Counter 56.1, ¶ 45, Exhibit 4. Simply pointing to a schedule showing Plaintiff's general work hours (Plaintiff's Exhibit 4), a document that does not speak to what Plaintiff did during those hours, does not support the existence of an issue of fact. *Id. Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96, 101 (S.D.N.Y. 2012) (granting summary judgment in favor of the moving party where the non-moving party failed to provide

6

adequate support to the non-moving party's denials and the statements were thus deemed admitted).

Even if there was any evidence that would lead a trier of fact to conclude that Plaintiff spent more than three hours cooking, it does not alter the fact that Plaintiff's primary duty was management. The pertinent case law on the issue is replete with decisions holding managers to be exempt even where they spent the vast majority (75% to 95%) of their time performing manual tasks that might arguably considered non-exempt work. *See Yeh v. Han Dynasty Upper West Side Corp.*, 2020 U.S. Dist. LEXIS 31175, *22 (S.D.N.Y. Feb. 24, 2020) (finding that, even assuming plaintiff spent 5 hours of his day cooking, it would not outweigh the "broad-range" of managerial tasks plaintiff completed); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113 (9th Cir. 2001) (finding exempt managers who claimed they spent 90% of their time performing non-exempt work); *Moore v. Tractor Supply Co.,* 352 F. Supp. 2d 1268, 1273 (S.D. Fl. 2004) (exempt manager spent 95% of his time doing non-exempt work). Thus, even if Plaintiff was cooking for a majority of his workday (which he was not), the performance of such duties does not negate a conclusion that his primary duty as Chef was kitchen management. Indeed, after all, it was Plaintiff, not some other manager, who determined when and which tasks needed to be performed and these tasks could also be performed concurrently with his managerial duties.

### 3. Plaintiff Regularly Supervised Two or More Full-Time Employees

Opposing counsel's contention that Plaintiff "was not responsibility [*sic*] for any supervision of any employees, and Plaintiff and other Dee's employees were under the direct supervision of Boss Deeran and Manager Armen," *see* Opp., at 9, is fully without merit and unsupported by Plaintiff's proffered affidavit. Here, Defendants submitted declarations from Arabian (owner), as well as the declarations of Robert Denes and Daniel Perez, two of Defendants'

7

kitchen employees, to establish that Plaintiff regularly supervised the kitchen employees. Despite Plaintiff's counsel's efforts to deny that Plaintiff had any management duties, *see* Opp., p. 7, Plaintiff simply cannot manufacture a material issue of fact with conclusory statements that Plaintiff did not "supervise any employee." *See* Panora Aff., ¶16; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff's affidavit does not even attempt to specify another individual who managed the kitchen staff. Rather, Plaintiff simply testified that "Boss Deeran would give direct orders to everyone in the pizzeria. However, when he was not at the pizzeria, he would pass his orders through Armen." *See* Panora Aff., ¶17. This statement in no way supports Plaintiff's assertion that he did not supervise kitchen employees and direct their day-to-day tasks.

Plaintiff also fails to dispute specific facts showing that he supervised kitchen employees. For example, Plaintiff does not deny that he supervised the prep chef or that he "directed this individual to cut and/or prepare meats, vegetables, and ingredients based on the restaurant's standards." *See* Counter 56.1, ¶47. Plaintiff instead asserts that Arabian and Armen supervised all employees, citing to post employment text messages between Armen and Defendants' employees. *Id.* Thus, it is undisputed that Plaintiff supervised more than two-full time employees.[5]

### 4. Plaintiff Made Recommendations to Hire, Fire, and Promote Employees

Plaintiff keenly seeks to minimize the personnel decisions he made or recommended by stating, he "never hired or fired anyone. It was never [his] call," and that he "never recommended to the hiring of anyone." *See* Panora Aff., ¶¶24-25. Importantly, where Plaintiff attempts to baldly and self-servingly deny that he hired or fired employees, *see* Counter 56.1, ¶¶52-71, Plaintiff fails to provide any factual support of these categorical denials. Defendants identified three employees that Plaintiff hired; "Jose," "Joffere," and "Daniel Perez." Notably, Plaintiff could have

---

[5] Plaintiff does not dispute that at least five to six employees worked in the kitchen at any given time during his employment. *See* Counter 56.1 ¶ 32.

8

specifically denied hiring these employees. It is telling that Plaintiff does not do so. *See* Counter 56.1, ¶¶ 60-62 (Plaintiff's Counter 56.1 ¶¶ 60-62 did not include any sort of denial and only stated, "*See* Panora Aff. ¶24."). Nor does Plaintiff specifically deny that he fired at least six dishwashers over the past several years. *See* Counter 56.1 ¶ 71. As Plaintiff insufficiently responded to the 56.1 statements regarding Plaintiff's role in hiring and firing Defendants' employees, these facts should thus be deemed admitted. *McCray*, 2013 U.S. Dist. LEXIS 128373 at *11-12 ("If the opposing party then fails to controvert a fact so set forth, that fact will be deemed admitted."). Even if Plaintiff's conclusory statements create an issue of fact as to whether Plaintiff made hiring or firing decisions himself, Defendants are entitled to summary judgment because Plaintiff does not dispute that he made personnel recommendations that were given particular weight.

Importantly, even if Plaintiff denies firing anyone, he does not deny recommending employees for termination. *See* Counter 56.1 at ¶ 52; *see* Panora Aff. ¶¶ 24-27. Likewise, even though Plaintiff blanketly denies that he "promot[ed] any employee," *see* Panora Aff. ¶ 31, Plaintiff does not deny that he made promotion recommendations that were given particular weight. Indeed, Defendants identified specific kitchen employees that were promoted as a result of Plaintiff's recommendations. *See* 56.1 ¶¶ 63-68. Conspicuously, Plaintiff does not dispute this. *See* Counter 56.1 ¶¶ 63-68.[6] Plaintiff concedes that these employees were promoted. *See Id.*

Plaintiff asserts that even if his recommendations were given considerable weight, this is insufficient to satisfy the fourth factor. *See* Opp., p 10. However, this simply isn't true. Courts have determined that the authority to make recommendations regarding the employment status of other employees is sufficient. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 560 (2d

---

[6] Naturally, Plaintiff cannot dispute making promotion recommendations by pointing to paragraphs in his affidavit in which he denies making hiring or promotion decisions himself. *See* Counter 56.1 ¶¶ 63-68; *see* Panora Aff. ¶¶ 25, 31; *see McCray*, 2013 U.S. Dist. LEXIS 128373 at *11-12.

9

Cir. 2012) (noting that the fourth requirement in the executive exemption was satisfied as plaintiffs' suggestions and recommendations concerning the hiring, firing, and promotion of lower level employees were given particular weight); *Guinup*, 2010 U.S. Dist. LEXIS 86280, at *28 (granting summary judgment in favor of defendants and dismissing plaintiff's claims for overtime as plaintiff's duties were managerial as plaintiff's ability to make recommendations regarding hiring, firing promoting was sufficient); *Robles v. Argonaut Rest. & Diner, Inc.*, 2009 U.S. Dist. LEXIS 96949, at *12 (S.D.N.Y. Oct. 8, 2009) ("Plaintiff's managerial capacity with authority to make recommendations" potentially exempts plaintiff from overtime coverage.).

Accordingly, summary judgment is warranted as Plaintiff does not adequately dispute that he could fire and hire employees and also because he does not deny that he made personnel recommendations that were given considerable weight and deference.

### B. Plaintiff Fails to Oppose Defendants' Remaining Arguments

As Defendants are entitled to dismissal of Plaintiff's overtime claims, they are also entitled to dismissal of Plaintiff's "spread of hours" and wage statement claims. Plaintiff does not dispute this. Accordingly, Defendants are entitled to dismissal of all remaining claims in the complaint. *Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 343 (S.D.N.Y. 2018), (dismissing wage statement claim because plaintiff did not oppose defendants' arguments.).

### III. CONCLUSION

Defendants respectfully request that their motion for summary judgment be granted, and that the Complaint be dismissed in its entirety, that judgment be entered for the Defendants, together with such other and further relief as the Court deems just and proper.

Dated: Woodbury, New York
April 8, 2020

                                                Respectfully submitted,

                                                KAUFMAN DOLOWICH & VOLUCK, LLP

                                                By: _____
                                                     Aaron N. Solomon, Esq.
                                                     Keith Gutstein, Esq.
                                                     Taylor M. Ferris, Esq.
                                                     *Attorneys for Defendants*
                                                     135 Crossways Park Drive, Suite 201
                                                     Woodbury, New York 11797
                                                     (516) 681-1100

4832-5988-9337, v. 1