```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------  X
JOSE PANORA, on his own behalf and on behalf      :
of others similarly situated,                                          :
                                                                                  :
                                         Plaintiff,                        :    **MEMORANDUM DECISION**
                                                                                  :    **AND ORDER**
                    - against -                                             :
                                                                                  :    19-cv-7267 (BMC)
DEENORA CORP d/b/a Dees *et al*.,                         :
                                                                                  :
                                         Defendants.                   :
----------------------------------------------------------------  X
```

**COGAN**, District Judge.

Plaintiff brings this case under the Fair Labor Standards Act ("FLSA"), alleging that defendants failed to pay him proper overtime wages. Plaintiff also asserts several state law claims under the New York Labor Law ("NYLL"), including for failure to pay the state minimum wage, state overtime wages, and the spread of hours premium.

Defendants move (1) for summary judgment on all claims pursuant to the FLSA and NYLL executive exemption, and (2) to dismiss plaintiff's state law minimum wage claim for failure to state a claim upon which relief can be granted. Because there are material disputes of fact as to whether plaintiff was an "executive" in defendants' restaurant, summary judgment is denied. However, plaintiff's state law minimum wage allegations fail to make out a legally cognizable claim, and so that claim is dismissed.

## BACKGROUND

The parties agree on the following facts: Dee's Brick Oven Pizza employs eleven or more people at any given time, including waiters, bartenders, bussers, and kitchen staff. Plaintiff worked as a chef at Dee's from December 29, 2013 to July 13, 2019, and was paid a flat salary on a weekly basis. From December 29, 2013 to December 31, 2017, plaintiff was paid $1,310

per week.  From April 10, 2018 (at the latest) until the end of his employment on July 13, 2019, plaintiff was paid $1,400 per week.  Plaintiff was the only member of Dee's kitchen staff paid on a salary basis; the others were paid on an hourly basis.

Other than the above items, the parties' understanding of the facts significantly diverge.  Of particular relevance, defendants maintain that plaintiff was responsible for the "management and operation of Dee's kitchen" and its staff, including supervision of kitchen staff, directing their day-to-day work assignments, training them, overseeing their work schedules (including approving and rejecting their time-off requests), and ensuring their compliance with kitchen sanitation and food safety standards.  He was also involved in hiring and firing personnel, disciplining kitchen staff, handling customer complaints about food, ordering kitchen inventory, and maintaining the kitchen's equipment.  Although plaintiff would cook for about three hours per day, his main role was in managing the kitchen and its staff.

Plaintiff generally denies all of this.  He says that he was *not* responsible for managing or overseeing Dee's kitchen; did *not* direct work assignments or train the kitchen staff; was *not* an integral part of hiring, firing, or promoting personnel; did *not* spend only three hours per day cooking the food; and was *not* in charge of ordering food or maintaining the kitchen equipment.  Although plaintiff would sometimes "guide a less experienced employee," plaintiff denies that he either "oversaw" or "supervised" any of the other employees.

Because plaintiff was paid by flat salary regardless of the number of hours he worked while employed at Dee's,[1] he avers that he was deprived of proper overtime compensation under both federal and state law.  He also argues that, despite receiving a salary that mathematically exceeded the state minimum hourly wage, he should be "considered to have been paid nothing

---

[1] In his complaint, plaintiff alleges that he generally worked around 67.5 in a week during the relevant time period.

for the hours worked in excess of 40" under state law, and thus was not paid a minimum wage for those excess hours. Defendants disagree on both counts, contending, first, that plaintiff's role as an "executive" exempts him from coverage under the FLSA and NYLL; and second, that because plaintiff was paid an effective hourly rate higher than the state minimum wage, his state minimum wage claim must necessarily fail.

## DISCUSSION

### I. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant successfully does this, the burden shifts to the opposing party to "offer some hard evidence showing that its version of the events is not wholly fanciful." See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

3

those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). When deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

Defendants argue that this case should be dismissed in its entirety because plaintiff's position at Dee's qualified him as an "executive," which precludes him from enforcing the provisions at issue in this case. Plaintiff disagrees, arguing that "there are genuine issues of fact[] as to whether defendants employed plaintiff in a 'bona fide executive capacity.'"

Both federal and state labor law exempt from overtime requirements employees who, *inter alia*, hold "bona fide executive" positions. 29 U.S.C. § 213(a)(1); NYLL § 651(5). Moreover, "federal courts evaluate New York's executive exemption by reference to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, and its attendant regulations." Clougher v. Home Depot U.S.A., Inc., 696 F. Supp. 2d 285, 289 n.5 (E.D.N.Y. 2010) (citing Zheng v. Liberty Apparel Co., 355 F.3d 61, 78 (2d Cir. 2003)).

Although the lower courts had long instructed that the FLSA's exemptions are to be narrowly construed, see, e.g., Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012), the Supreme Court has recently rejected that view as "rel[ying] on the flawed premise that the FLSA 'pursues its remedial purpose at all costs.'" Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018) (*colatus*[2]). Accordingly, "[b]ecause the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a "narrow") interpretation.'" Id. (alteration in original) (quoting Antonin Scalia & Bryan A. Garner, Reading Law 363 (2012)).

---

[2] I.e., edited citation.

4

For the relevant time period, the Department of Labor regulations defined an employee as "employed in a bona fide executive capacity" when all of the following had been met:

(1) the employee is compensated on a "salary basis" of at least $455 per week;[3]

(2) the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof";

(3) the employee regularly directs the work of two or more other employees; and

(4) the employee has the authority to hire or fire other employees or the employee's recommendations with respect to hiring, firing, or promotion are given "particular weight."

29 C.F.R. § 541.100(a). "[A]ll of the four factors must be satisfied for [defendants] to prevail on their executive exemption defense." Karropoulos v. Soup du Jour, Ltd., 128 F. Supp. 3d 518, 535 (E.D.N.Y. 2015).

In this case, the only wholly-uncontested factor in the executive analysis is that plaintiff was paid in excess of the required weekly salary threshold for both the FLSA and NYLL. For the remaining factors, plaintiff has at the very least denied the relevant statements of fact undergirding those factors in his responsive Rule 56.1 Statement by reference to his own affidavit, if not to one of the other three exhibits he filed along with his opposition papers. Defendants argue, however, that plaintiff's responsive statements and affidavit are self-serving and conclusory, and cannot therefore be used to demonstrate an issue of fact. But after reviewing the relevant materials, it is evident that genuine disputes of fact exist as to plaintiff's role at Dee's.

---

[3] The current threshold is $684 per week, but the parties agree that "[d]uring the period of December 29, 2016 until the end of Plaintiffs employment, the Fair Labor Stands Act salary threshold for the executive exemption was $455.00."

As to the factor requiring that the employee's primary duty be the "management of the enterprise . . . or subdivision thereof," plaintiff swears in his affidavit that:

- "Deeran Arabian is the boss as well as the owner of Dee's";
- "Armen is the general manager";
- "Boss Deeran would give direct orders to everyone in the pizzeria. However, when he was not at the pizzeria, he would pass his orders through Armen";
- "Armen arranged the schedules of all employees and assigned different roles to each of them";
- "The reason that he would pass his orders through me [was] because I could speak both English and Spanish. Boss Deeran and Armen do not speak Spanish, while most workers speak Spanish but [not] English";
- "There was also a surveillance camera in the kitchen where Boss Deeran and Armen can closely watch the kitchen and would give direct order[s] to each person in each station";
- "Customers' complaints would go directly to Armen – the general manager – and Armen would come to the kitchen and direct whoever at the station at issue what to do";
- "Boss Deeran decided which providers to order the supplies for the kitchen";
- "In the event Metro Meat Market did not have an item, I would have to first contact Boss Deeran whether or not to order a replacement";
- "When Metro Meat Market delivered the order, I would have to check if all items were delivered because I would be in trouble if any item was missing."

As to the factor requiring that the employee regularly direct the work of two or more other employees, plaintiff swears in his affidavit that:

- "I was not responsible for training the kitchen staff. Rather, in each station, an employee with more experience would show other employees with less experience how to do the job";
- "Throughout my employment, I neither arranged the schedule nor supervised any employee."

And as to the factor requiring that the employee has the authority to hire or fire other employees or at least have particular influence over such decisions, plaintiff swears in his affidavit that:

- "Throughout my employment, I never hired or fired anyone. It was never my call";

6

- "Throughout my employment, I have never recommended . . . the hiring of anyone";
- "I would only help Boss Deeran or Armen to translate between English and Spanish. For example, they would ask me to join interviews of candidates or tell a chosen candidate to go to work the day after";
- "Similarly, after Boss Deeran or Armen decided to fire anyone, they would ask me to tell the employee and ask the employee to come the next day to pick up the final paycheck";
- "Throughout my employment, I never promoted any employee."

Most of these are not "self-serving [statements] that merely reiterate[] conclusory allegations in affidavit form," as defendants suggest. Rather, they are substantive averments of fact that contradict many of those in defendants' Rule 56.1 Statement, which, as it happens, are likewise principally based on the sworn statements of an interested party and people who answer to him. But as discussed above, a court cannot make credibility determinations between competing testimony on summary judgment, see Raskin, 125 F.3d at 66, and it must draw "all reasonable inferences . . . in the non-movant's favor," see Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003). Under these strictures of summary judgment, it is clear that plaintiff's evidence prevents me from concluding that he was a bona fide executive at Dee's, even if that would not be the result at trial.

Not to be overlooked, the lone non-affidavit exhibit upon which defendants rely – two pages from Dee's "Employee Manual" – is certainly probative of plaintiff's role at Dee's. In particular, the second page shows that plaintiff's name and home telephone number are listed under the "Management Phone Numbers" heading, along with those of three other people. Farther down on that page is a company organizational chart with "Chef," plaintiff's job, occupying a prominent – if mid-level – position:



There is little question that these two items evidence that plaintiff was important to Dee's operations and perhaps even held power over the salad person, dishwasher, line cook, and pizza chef. But to be a member of management does not necessarily make one a "bona fide executive" under the FLSA, which requires that the position satisfy each of the factors listed in 29 C.F.R. § 541.100(a). At this point, given the record before me, that is a matter for a jury.

II.     **Motion to Dismiss State Minimum Wage Claim**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The court must accept as true all of the well-pleaded allegations contained in the complaint. Iqbal, 556 U.S. at 678. But this tenet "is inapplicable to legal conclusions." Id. "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and

8

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

Count II of the complaint alleges that defendants failed to pay plaintiff the minimum wage required under NYLL § 652. Defendants respond that "simple arithmetic" proves plaintiff was paid "a regular rate well in excess of the minimum wage." The latter appears to be inescapably true.

At all relevant times,[4] the applicable minimum wage was $15 or below. During most of the period at issue, defendants paid plaintiff $1,310 per week; later on, defendants paid plaintiff $1,400 per week.[5] Because plaintiff alleges that he generally worked 67.5 hours per week as the chef at Dee's, plaintiff was paid an effectively hourly wage of either $19.40 or $20.74. Alternatively, if plaintiff's salary goes only toward the first 40 hours that he worked every week, plaintiff was paid an hourly wage of either $32.75 or $35. Under either scenario, defendants paid plaintiff well above the minimum wage.

But plaintiff contends that "an employee paid a flat weekly rate is considered to have been paid nothing for the hours worked in excess of 40." He arrives at this conclusion by reference to Section 146-3.5(b), Title 12, of the New York Codes, Rules and Regulations, which states that

> [i]f an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.

---

[4] Claims under the NYLL are subject to a six-year statute of limitations. See NYLL § 663(3).

[5] Plaintiff admits to these figures in his responsive 56.1 Statement, although they differ slightly from those listed in his complaint.

9

Plaintiff creatively extrapolates from this provision a rule that a salaried – rather than hourly – employee cannot have been paid any money after 40 hours because the regulation only accounts for 40 hours. Taken to its extreme, this theory would hold that a non-exempt employee paid $1 million dollars per week would still have a viable minimum wage claim upon working his 41st hour.

Plaintiff has not cited any cases that agree with or apply his theory and, as I told plaintiff at oral argument, his claim is properly characterized as one for overtime, not minimum wage. The fact that the relevant statute caps the divisor at 40 hours reflects only that the legislature, in enacting this statute, was concerned with an employee's first 40 hours worked. There is no basis to infer from this that all additional hours worked have automatically gone wholly uncompensated or that the legislature sought to impose automatic liability in the manner proposed.

This conclusion is further supported by comparing the state's policy statement for the minimum wage law with the legislative history of the federal overtime law.[6] Whereas the state minimum wage's purpose was to "provide adequate maintenance for [workers] and their families," NYLL § 650, the FLSA's overtime provision was meant

> (1) to prevent workers who, perhaps out of desperation, are willing to work abnormally long hours from taking jobs away from workers who prefer shorter hours, including union members; (2) to spread available work among a larger number of workers and thereby reduce unemployment; and (3) to compensate overtime workers for the increased risk of workplace accidents they might face from exhaustion or overexertion.

Parker v. NutriSystem, Inc., 620 F.3d 274, 279 (3d Cir. 2010); Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1175-76 (7th Cir. 1987) (citing H.R. Rep. No. 1452, 75th Cong., 1st Sess.

---

[6] The connection between state and federal overtime provisions is expressly acknowledged in New York's labor regulations. See 12 NYCRR 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate *in the manner and methods provided in and subject to the exemptions of . . . the Fair Labor Standards Act of 1938*[.]" (emphasis added)).

(1937); S. Rep. No. 884, 75th Cong., 1st Sess. (1937)). The laws' respective purposes are certainly not congruent with each other, and even appear to be in conflict. Thus, there is little basis to believe that New York's minimum wage laws were meant to police wages earned after 40 hours of work in the alternative to overtime laws. Payment after 40 hours, then, is ineluctably the province of overtime provisions, which are supported by unique policies and conspicuously avoided by the state's minimum wage laws.

In any event, courts in this district have routinely dismissed state minimum wage claims in this exact situation. See, e.g., Pichardo v. El Mismo Rincon Latino Corp., No. 17-cv-7439, 2018 WL 4101844, at *6 (E.D.N.Y. Aug. 7, 2018) (*colatus*); Romero v. Rung Charoen Sub, Inc., No. 16-cv-1239, 2017 WL 448075, at *7-8, 10 (E.D.N.Y. Sept. 30, 2017) (*colatus*); Martinez v. Alimentos Saludables Corp., No. 16-cv-1997, 2017 WL 5033650, at *14 (E.D.N.Y. Sept. 22, 2017) (*colatus*) ("The Court divided Martinez's weekly pay of $475.00 and $525.00 by 40 hours, the lesser of 40 hours and the actual number of hours Martinez worked each week [(46-62)]. Since the minimum wage rate under the NYLL never exceeded the rate of $11.88 per hour during these periods, the Court concludes that Martinez was paid above the minimum wage while employed by defendants.").

## CONCLUSION

Defendants' [22] motion for summary judgment is denied and defendants' [19] motion to dismiss Count II is granted.

**SO ORDERED.**

                                                 U.S.D.J.

Dated: Brooklyn, New York
       June 14, 2020