UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

JOSE PANORA,
*on his own behalf and on behalf of others similarly situated*

Case No.: 19-CV-7267(BMC)

Plaintiff,

-against-

DEENORA CORP
    d/b/a Dee's;
DEE'S BRICK OVEN PIZZA, INC
    d/b/a Dee's; and
DEERAN ARABIAN a/k/a Dee Arabian,

Defendants.

-------------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
Aaron N. Solomon, Esq.
Taimur Alamgir, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................iv

RELEVANT BACKGROUND AND PROCEDURAL HISTORY ...........................................2

   I.  PLAINTIFF'S PRIOR CONCESSIONS.........................................................................2

   II. PLAINTIFF'S AFFIDAVIT IS INADEQUATE ...........................................................4

      A. PLAINTIFF'S STATEMENTS ABOUT HIS PAY AND DUTIES SUPPORT HIS EXEMPT STATUS ...........................................................................................4

      B. THE AFFIDAVIT FAILS TO PROVIDE SUFFICIENT INFORMATION .................5

      C. PLAINTIFF FAILS TO ALLEGE THAT OTHER EMPLOYEES WERE DEPRIVED OF OVERTIME.....................................................................................7

      D. ALLEGATIONS REGARDING FRONT-OF-THE-HOUSE/TIPPED EMPLOYEES ARE DEFICIENT...............................................................................8

FLSA COLLECTIVE CERTIFICATION STANDARS.........................................................9

   I.  THE "MODEST FACTUAL SHOWING" STANDARD ...........................................10

   II. THE "MODEST-PLUS" STANDARD...........................................................................10

ARGUMENT.............................................................................................................................12

POINT I .....................................................................................................................................12

PLAINTIFF'S MOTION MUST BE DENIED AS HIS CLAIM ARISES FROM HIS ALLEGED MISCLASSICATION, WHILE ALL PROPOSED COLLECTIVE MEMBERS ARE NON-EXEMPT .......................................................................................12

POINT II....................................................................................................................................16

PLAINTIFF'S PRIOR CONCESSION AND "LAW OF THE CASE" ARE BINDING..............16

      A. PLAINTIFF'S PRIOR CONCESSIONS BAR HIM FROM MAKING CONTRARY ARGUMENTS .......................................................................................16

      B. LAW OF THE CASE BARS PLAINTIFF FROM MAKING ARGUMENTS CONTRARY TO HIS PRIOR CONCESSIONS .......................................................17

      C. THE COURT SHOULD STRIKE PLAINTIFF'S ENTIRE AFFIDAVIT.....................18

POINT III........................................................................................................19

CONDITIONAL COLLECTIVE CERTIFICATION MUST BE DENIED AS PLAINTIFF'S
AFFIDAVIT IS INSUFFICIENT TO SUPPORT SAME.........................................19

    A. PLAINTIFF FAILS TO ALLEGE A COMMON POLICY OR PLAN THAT HE,
       TOGETHER WITH PROPOSED COLLECTIVE MEMBERS, WAS A VICTIM OF...19

    B. PLAINTIFF FAILS TO EVINCE THAT HE IS SIMILARLY SITUATED TO THE
       PROPOSED COLLECTIVE ........................................................................22

POINT IV .........................................................................................................24

THE COLLECTIVE NOTICE AND DISTRIBUTION PLAN ARE INAPPROPRIATE .........24

CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Page</u>

*Aguilo v. Vails Gate Cleaners Inc.,*
No. 18 CIV 8850, 2020 WL 3545558 (S.D.N.Y. June 30, 2020) ............... ..................... ......... 25

*Arizona v. California,*
460 U.S. 605 (1983) .................................................................................. ........................ ........17

*Berbick v. Precinct 42,*
977 F. Supp. 2d 268 (S.D.N.Y. 2013) ..................................................... ..................................18

*Bowe v. Enviropro Basement Sys.,*
No. 12-2099, 2013 WL 6280873 (D.N.J. Dec. 4, 2013) ...................... .................................20

*Brown v. Barnes & Noble, Inc.,*
No. 16 CV 07333, 2018 WL 3105068 (S.D.N.Y. June 25, 2018) .............. .........................9, 11

*Camara v. Kenner,*
No. 16-CV-7078 (JGK), 2018 WL 1596195 (S.D.N.Y. Mar. 29, 2018)........ ........................20, 21

*Cohan v. Movtady,*
751 F.Supp.2d 436 (E.D.N.Y.2010) ................................................................ ......................16

*Colon v. Major Perry St. Corp.,*
No. 12 CIV. 3788 JPO, 2013 WL 3328223 (S.D.N.Y. July 2, 2013) ...........................................14

*Dalton v. Gem Fin. Servs., Inc.,*
No. 15 CIV. 5636 (BMC), 2016 WL 3676428 (E.D.N.Y. July 7, 2016) ............................*Passim*

*Devilla v. Schriver,*
245 F.3d 192 (2d Cir. 2001) ..................................................................................... ..............17

*Diaz v. Elecs. Boutique of Am., Inc.,*
No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ........ _......................13, 14

*Dilonez v. Fox Linen Serv. Inc.,*
35 F. Supp. 3d 247 (E.D.N.Y. 2014) ........................................................... _.........................24

*Eng-Hatcher v. Sprint Nextel Corp.,*
No. 07 Civ 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ................................................22

*Errickson v. Paychex, Inc.,*
447 F. Supp. 3d 14 (W.D.N.Y. 2020) .........................................................................................9

*Fraticelli v. MSG Holdings, L.P.*,
No. 13 CIV. 6518 JMF, 2014 WL 1807105 (S.D.N.Y. May 7, 2014) .................................... 15

*Gao v. A Canaan Sushi Inc.*,
No. 18 Civ. 6442, ECF 29 (S.D.N.Y. July 18, 2019) ...................................................... 18

*Gayle v. Harry's Nurses Registry, Inc.*,
No. CV 07-4672 NGG MDG, 2013 WL 5502951 (E.D.N.Y. Aug. 26, 2013) ...................... 17

*Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*,
440 F.3d 571 (2d Cir. 2006) ................................................................................ 16

*Gillian v. Starjem Rest. Corp.*,
No. 10 Civ. 6056, 2011 WL 4639842 (S.D.N.Y. Oct. 4, 2011) ............................................ 5

*Granite Ridge Energy LLC v. Allianz Global Risk U.S. Ins. Co.*,
979 F. Supp. 2d 385 (S.D.N.Y. 2013) ................................................................... 16

*Guangqing Lin v. Teng Fei Rest. Grp. Inc.*,
No. 17CV1774 (DF), 2020 WL 264407 (S.D.N.Y. Jan. 17, 2020) ...................................... 2

*Hallissey v. Am. Online, Inc.*,
No. 99-CIV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) .............................. 25

*Hawkins v. Medapproach Holdings, Inc.*,
No. 13 CV 5434, 2020 WL 4349813 (S.D.N.Y. July 29, 2020) ..................................... 18

*Hoffman v. Sbarro, Inc.*,
982 F. Supp. 249 (S.D.N.Y. 1997) ...................................................................... 10

*Hoodho v. Holder*,
558 F.3d 184 (2d Cir.2009) ............................................................................... 16

*Jacob v. Duane Reade, Inc.*,
No. 11-CV-0160 (JPO), 2016 WL 3221148 (S.D.N.Y. June 9, 2016)............................... 17

*Ji Li v. New Ichiro Sushi, Inc.*,
No. 14-CV-10242 (AJN), 2020 WL 2094095 (S.D.N.Y. Apr. 30, 2020) .............................. 2

*Ji v. Jling Inc.*,
No. 15 CV 4194, 2016 WL 2939154 (E.D.N.Y. May 19, 2016)................................... 23

*Jian Guo Yang v. Zhou's Yummy Rest., Inc.*,
No. 19-CV-5203, 2020 WL 2738403 (E.D.N.Y. Apr. 28, 2020)................................... 23

*Jianjun Chen v. 2425 Broadway Chao Restaurant, LLC,*
331 F.R.D. 568 (S.D.N.Y. 2019) .................................................................................................18

*Jianjun Chen v. WMK 89th St. LLC,*
No. 1:16-CV-5735-GHW, 2020 WL 2571010 (S.D.N.Y. May 20, 2020) .....................................2

*Jianman Jin v. Shanghai Original, Inc.,*
No. 16 Civ. 5633, 2018 WL 1597389 (E.D.N.Y. April 2, 2018) ...............................................18

*Jing Fang Luo v. Panarium Kissena Inc.,*
No. 15 CV 3642, 2016 WL 11263668 (E.D.N.Y. Nov. 23, 2016) ..............................................25

*Johnson v. Carlo Lizza & Sons Paving, Inc.,*
160 F. Supp. 3d 605 (S.D.N.Y. 2016) ..........................................................................................9

*Joshi v. Flagship S B Amsterdam NY, LLC,*
No. 17-CV-5785, 2018 WL 1135566 (S.D.N.Y. Mar. 1, 2018)..................................................22

*Korenblum v. Citigroup, Inc.,*
195 F. Supp. 3d 475 (S.D.N.Y. 2016) ..................................................................................*Passim*

*Lijun Geng v. Shu Han Ju Rest. II Corp.,*
No. 18 CV 12220, 2019 WL 4493429 (S.D.N.Y. Sept. 9, 2019) ...........................................24, 25

*Lynch v. Cassavetes,*
No. CV 13-4317 DSF (JCX), 2014 WL 12603200 (C.D. Cal. Mar. 17, 2014)............................5

*Mark v. Gawker Media LLC,*
No. 13-cv-4347, 2014 WL 5557489 (S.D.N.Y. Nov. 3, 2014) ..................................................25

*Mata v. Foodbridge LLC,*
No. 14-8754, 2015 WL 3457293 (S.D.N.Y. 2015) ....................................................................23

*McDermott v. Fed. Savings Bank,*
No. 14-cv-6657 (JMA) (GRB), 2018 WL 1865916 (E.D.N.Y. Apr. 18, 2018) ..........................11

*Mendoza v. Casa de Cambio Delgado, Inc.,*
No. 07CV2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008).............................................19

*Myers v. Hertz Corp.,*
624 F.3d 537 (2d Cir. 2010) ...............................................................................................*Passim*

*Panora v. Deenora Corp,*
No. 19-CV-7267 (BMC), 2020 WL 3165183 (E.D.N.Y. June 15, 2020) ................................3, 17

*Qing Gu v. T.C. Chikurin, Inc.*,
No. 13-CV-2322, 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014) ................................22

*Raniere v. Citigroup Inc.*,
827 F. Supp. 2d 294 (S.D.N.Y. 2011) ................................................................21

*Reyes v. Nidaja, LLC,*
No. 14-CV-9812, 2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015) .........................22

*Romero v. H.B. Auto. Grp., Inc.*,
No. 11 CIV. 386 CM, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ............ .................. .. *Passim*

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*,
No. 12 CIV. 75 KBF, 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013)............. ...........................21

*Schaefer v. M & T Bank Corp.*,
122 F. Supp. 3d 189 (S.D.N.Y. 2015) ................................................ ...............10

*Schlenger v. IBM Corp.*,
No. 09-CV-3986 CS, 2013 WL 944798 (S.D.N.Y. Mar. 12, 2013) ............... ..........................16

*Yeh v. Han Dynasty, Inc.*
(Engelmayer, J.).......................................................................................5

*Yu Zhang v. Sabrina USA Inc.*,
No. 18 CV 12332, 2019 WL 6724351(S.D.N.Y. Dec. 10, 2019)............................................18, 19

*Zamora v. L Plus L Prods LLC*,
No. 19-CIV-1506, 2019 WL 5460559 (S.D.N.Y. Oct. 15, 2019) ................................................23

**Rules & Statutes**

29 C.F.R. § 541.100(a) ........................................................................... _...................14

Fed. R. Civ. P 56(g) ....................................................................... _..................... *Passim*

## PRELIMINARY STATEMENT

Defendants Deenora Corp., Dee's Brick Oven Pizza, Inc. (the "Corporate Defendants") and Deeran Arabian ("Arabian", collectively with the Corporate Defendants, the "Defendants"), respectfully submit this Memorandum in opposition to the motion by Plaintiff Jose Panora ("Plaintiff") for conditional certification of a collective action and related relief (the "Motion").

The Motion must be denied for the following reasons. Initially, it is inconceivable that Plaintiff, a former manager at Defendants' restaurant who claims he was misclassified as exempt, is similarly situated to a collective consisting of non-exempt employees (*inter alia*, dishwashers, cleaners, and bussers), especially given that Plaintiff admitted earlier in these proceedings that his fixed salary compensation was *sui generis*. Similarly, allegations that non-exempt employees were deprived of overtime by operation of any number of purported "policies or practices" do not satisfy Plaintiff's burden of demonstrating that Plaintiff and the members of the proposed collective ***together*** were victims of a ***common policy or plan*** that violated the law.

Denial of the Motion is also justified on the basis of Plaintiff and his counsel's disingenuous habit of misrepresenting facts and contradicting prior admissions material to conditional collective certification. First, on February 12, 2020, Plaintiff's counsel misrepresented to the Court that all other employees were paid fixed salaries as Plaintiff was. *See* Solomon Decl., Exhibit A (Transcript of February 12, 2020 Pre-Motion Conference). Following this untruthful assertion, Plaintiff conceded, in opposition to a summary judgment motion, that he was the only employee in the kitchen paid on a salary basis. Yet now, in his affidavit in support of the Motion, Plaintiff avers that *a handful of* other employees were paid weekly. Significantly, one of these employees submitted a sworn affidavit in favor of summary judgment attesting that he was paid hourly, contrary to Plaintiff's present claims. Plaintiff had every opportunity to dispute this

1

employee's affidavit, but tellingly, he did not.  The law is clear that Plaintiff and his attorney's inability to keep their story straight warrants denial of the Motion.  Plaintiff is bound by the concessions he made and the Court's resulting prior rulings.

It is telling that Plaintiff's attorneys insisted on pressing forward with this ill-conceived Motion even after the Court appropriately expressed serious doubts regarding the merit of same during the pre-motion teleconference.  Opposing counsel's posturing in face of open judicial skepticism strongly suggests that Mr. Troy and Mr. Schweitzer are well aware that their Motion lacks merit, but simply don't care.[1]  Thus, this is a scorched-earth tactic  intended to deplete Defendants' funds and jeopardize their business. This is a shakedown, plain and simple. The Court should not condone such an outrageous weaponization of its facilities and the FLSA. For these reasons, and as explained in greater detail below, the Motion must be denied.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### I.   PLAINTIFF'S PRIOR CONCESSIONS

In support of summary judgment, Defendants submitted, *inter alia*, the declaration of Defendant Arabian (ECF No. 25, Ex. A) and the declarations of Robert Denes. and Daniel Perez (ECF No. 25, Exs. B and C), both of whom work as cooks at Defendants' restaurant and were

---

[1] Plaintiff's counsel's willingness to engage in frivolous motion practice, submission of false and contradictory sworn documents, lack of candor before the Court, procedural non-compliance and other improper and unprofessional conduct in these proceedings is disturbing, but hardly out of character. The New York federal courts have sanctioned Plaintiffs' counsel multiple times **this year alone** for similar conduct to that exhibited in this case. *See Jianjun Chen v. WMK 89th St. LLC*, No. 1:16-CV-5735-GHW, 2020 WL 2571010, at *10 (S.D.N.Y. May 20, 2020) (sanctioning Plaintiff's counsel for misrepresentations to the Court and noting that "Troy Law has already played far too fast and loose with their ethical and professional responsibilities during the pendency of this litigation."); *Ji Li v. New Ichiro Sushi, Inc.*, No. 14-CV-10242 (AJN), 2020 WL 2094095, at *11 (S.D.N.Y. Apr. 30, 2020) (sanctioning John Troy for pressing meritless claims through trial); *Guangqing Lin v. Teng Fei Rest. Grp. Inc.*, No. 17CV1774 (DF), 2020 WL 264407, at *5 (S.D.N.Y. Jan. 17, 2020), *reconsideration denied*, No. 17CV1774 (DF), 2020 WL 429128 (S.D.N.Y. Jan. 27, 2020) (sanctioning attorneys John Troy and Aaron Schweitzer for repeatedly failing to comply with Court-ordered scheduling deadlines). These cases are hardly the only occasions on which courts have been constrained to address Plaintiff's counsel's improper conduct with sanctions. Recent disciplinary actions against Plaintiff's counsel are placed at issue by Plaintiff's counsel's self-congratulatory claims regarding their "considerable experience" and prior success. See ECF No. 40, Troy Aff. ¶ 6.

Plaintiff's co-workers for more than a decade. Facts set forth in the three foregoing declarations were reflected in Defendants' Local Civil Rule 56.1 statement in support of their summary judgment motion. ECF No. 24. Pertinently for purposes of the Motion: (1) Defendant Arabian's declaration attested that other than Plaintiff, all non-exempt kitchen workers are paid on an hourly basis (ECF No. 25, Ex. A, ¶ 16); (2) Daniel Perez's declaration attested that he was paid $17.00 per hour (ECF No. 25, Ex. B, ¶ 5); and (3) Robert Denes's declaration stated that he was paid $18.00 per hour (ECF No. 25, Ex. C, ¶ 5),

Defendants stated at Paragraph no. 29 of their Rule 56.1 statement that, that other than Plaintiff, "non-exempt kitchen workers [at Defendants' restaurant] are paid on an hourly basis." *See* [ECF No. 24, No. 29] (*citing* ECF No. 25, Solomon Decl., Ex. A, Arabian Decl., ¶ 16; Ex. B, Denes Decl., ¶ 5; Ex. C, Perez Decl., ¶ 5). Plaintiff responded as follows:

> "Admit to the extent that Robert Denes and Daniel Perez stated that they were paid on an hourly basis. Deny to the extent that Defendants categorize some employees as 'non-exempt kitchen workers' without providing factual support."

ECF No. 30, Troy Decl., Ex. A., Response No. 29.

The foregoing response did not dispute that: 1) Denes and Perez were paid hourly; and 2) all other kitchen workers are paid on an hourly basis. In addition, with respect to his own employment, Plaintiff's response to the Rule 56.1 statement freely admitted that he was paid on a weekly salary basis that was all times in excess of the minimum threshold to qualify for the executive exemption – first, $1,310.00 per week and later, $1,400, per week. ECF No. 30, Troy Declaration, Ex. A, Nos. 12-13, 22, 24-25, 27.

Reflecting Plaintiff's concession, the summary judgment decision recognized that "[t]he parties agree that… Plaintiff was the only member of Dee's kitchen staff paid on a salary basis; the others were paid on an hourly basis." *Panora v. Deenora Corp*, No. 19-CV-7267 (BMC), 2020

3

WL 3165183, at *1 (E.D.N.Y. June 15, 2020). Plaintiff has never suggested that this portion of the Court's decision (or any other part thereof) was in any way erroneous.

It is telling that, on summary judgment, Plaintiff offered no challenge to Robert Denes and Daniel Perez's sworn statements about their compensation – even though Denes and Perez's statements contradict and undermine the allegations Plaintiff now makes to support the Motion. [2]

## II.   PLAINTIFF'S AFFIDAVIT IS INADEQUATE

Plaintiff's Affidavit (the "Affidavit") in support of his Motion (ECF No. 40, Troy Aff., Ex. 4) is short on specifics, self-serving, and in substantial part, incoherent. Worse, the affidavit contains false claims and contradicts Plaintiff's prior concessions in these proceedings.

### A.  Plaintiff's Statements About His Pay and Duties Support His Exempt Status

Despite having previously admitted to compensation of $1,310.00 per week from December 29, 2016 until December 31, 2017 and compensation of $1,400.00 per week from at least April 2018 onwards (ECF No. 30, Ex. 1, Responses Nos. 22, 25), Plaintiff now claims in his affidavit that he was paid $1,300 per week[3] from before December 29, 2015 until April 10, 2018 (Pl's Aff, ¶ 17) and then $1,340 thereafter, until the end of his employment. Pl's Aff. ¶ 18.

Significantly, Plaintiff fails to allege that any other employee was misclassified as exempt from overtime. Nor does Plaintiff claim that any other kitchen employee had job duties similar to Plaintiff's. Demonstrating that his compensation was unique (due to his status as exempt from overtime under the executive exemption), no other employee is alleged to have been paid anywhere

---

[2] Indeed, Paragraph No. 30 of Defendants' Rule 56.1 statement stated that "… Daniel Perez, a cook for Dee's, is paid $17.00 per hour and Robert Denes, also a cook for Dee's, is paid $18.00 per hour." *See* [ECF No. 24, No. 30] (citing ECF No. 25, Solomon Decl. Ex. B, Denes Decl., ¶ 5. Solomon Decl. Ex. C, Perez Decl., ¶ 5. Plaintiff did not challenge this and admitted "to the extent [Perez and Denes] stated that they were paid $17.00 and $18.00 in their affidavits." ECF No. 30, Troy Decl., Ex. A., Response No. 30.

[3] Plaintiff's assertion that he received a "flat rate of $1,300 per month" in ¶ 12 of his affidavit (ECF No. 40, Troy Aff., Ex. 4) is assumed to be a typographical error as Plaintiff has repeatedly admitted he was paid on a weekly basis (ECF No. 30, Ex. 1, Responses Nos. 22, 25)

near the $1,300-$1,400 per week that Plaintiff was paid. Further, in this regard, Plaintiff does not suggest any other employee was compensated partially by check and partially in cash, as Plaintiff alleges to have been paid. Pl's Aff. ¶¶ 17-18.

Reinforcing his exempt status, Plaintiff uses condescending language to describe certain collective members, deeming them to be below his station. Despite seeking to include dishwashers in his proposed collective, Plaintiff ridicules dishwashers as halfwits incapable of performing even basic tasks, asserting that "…we even have to teach them how to wash dishes." Pl's Aff. ¶¶ 105-119. Plaintiff's bizarre and inappropriate mockery of co-workers that he seeks to represent in the proposed collective provides further cause for denial of the Motion.[4]

## B. The Affidavit Fails To Provide Sufficient Information

Out of the 19 employees the Affidavit provides names and purported compensation information (i.e. whether the employee was paid at an hourly rate or on a fixed basis) for only 8 employees. For the remaining 11 employees, Plaintiff fails to provide any details whatsoever on how they were paid.[5]

Of the 8 putative collective members for whom Plaintiff furnished *some* scant details regarding pay, 2 were allegedly paid on a weekly basis. However, Plaintiff's assertions that other

---

[4] Plaintiff's open contempt for those he seeks to represent demonstrates that he is not an adequate representative. Adequacy of representation is a consideration at the collective certification stage. *Gillian v. Starjem Rest. Corp.*, No. 10 Civ. 6056, 2011 WL 4639842, at *6–7 (S.D.N.Y. Oct. 4, 2011) (finding named plaintiffs not to be "similar situated" to other collective members based on adequacy concerns). Plaintiff's glaring inadequacy to represent the proposed collective is matched by his law firm's patent unsuitability to serve as collective counsel. "[A]dequacy of counsel is a relevant concern when evaluating FLSA collective certification." *Lynch v. Cassavetes*, No. CV 13-4317 DSF (JCX), 2014 WL 12603200, at *2 (C.D. Cal. Mar. 17, 2014) (citing cases). At least one court in the Circuit has found Plaintiff's counsel to be inadequate to serve as collective counsel following a pattern of improper litigation conduct resembling that at bar. *See* Ex. C, Hearing Transcript, *Yeh v. Han Dynasty, Inc.* (Engelmayer, J.) (denying collective action motion by Troy Law, and noting "I am not going to put my weight behind certifying a collective where the premise is they are going to be represented by a lawyer that misses central deadlines. I cannot do that.")

[5] Robert Denes is one of these 11 employees. Though Plaintiff repeatedly described Robert Denes as a "friend" in his affidavit in opposition to summary judgment, noting that the two had worked together for 13 years, See ECF No. 30, Troy Aff., Ex. 2, ¶¶ 28-30, Plaintiff fails to provide any details about Mr. Denes's compensation. ECF No. 30, Troy Decl., Ex. A., Response No. 30. This does not dispute Denes' affirmation that he was paid $18.00 per hour.

employees of Defendants' restaurant were compensated on a fixed salary basis are either wholly speculative, or contradict both Plaintiff's binding prior concessions and the "law of [this] case".

Plaintiff's new claims regarding fixed salaried kitchen workers are nonsensical and do not support the Motion. Plaintiff now claims that Daniel Perez was paid a fixed salary of $800 per week, directly contradicting Mr. Perez's sworn claim that he was paid $17.00 hourly. ECF No. 25, Ex. B, ¶ 5. This was despite the prior binding concession that Plaintiff made concerning Perez's hourly compensation on summary judgment. *See* ECF No. 30, Troy Decl., Ex. A, Responses Nos. 29-30. Plaintiff never disputed Mr. Perez's sworn statements about Perez's compensation. Nor does Plaintiff address this contradiction on this Motion.

In any event, Plaintiff's allegations regarding his purported conversations with Mr. Perez about pay are spurious. Plaintiff vaguely alleges that he would regularly discuss pay with Mr. Perez "while working in the kitchen line," Pl's Aff. ¶ 40, but then claims he would talk about pay with Mr. Perez "outside" and compare it with potential employment elsewhere. Pl's Aff. ¶ 41. Left unsaid is *where* and *when* Plaintiff is claiming Mr. Perez told him his compensation rate – Plaintiff provides no details or additional context for this purported discussion. Moreover, Plaintiff's claim that "[w]hen we discussed about the average pay depending on each position, DANIEL PEREZ told me he was paid $800 a week," Pl's Aff. ¶ 42, is ambiguous. Plaintiff claims Mr. Perez worked both a Kitchen Grill worker and as a Chef – both of these contradict Perez himself, who references himself as a "Cook". Plaintiff fails to indicate what role was Perez was referring to when Mr. Perez allegedly told Plaintiff he made $800 weekly.

Further, Plaintiff alleges that Luckmore, a cleaner, was paid $800 per week because "Daniel Perez told [Plaintiff] that Daniel's nephew (nicknamed "Chapo") was paid $800 per week, the same as LUCKMORE." Pl's Aff. ¶ 138. This allegation is not only insufficient but also

6

logically absurd – if Mr. Perez told Plaintiff that Daniel's nephew was paid $800 a week, how does Plaintiff know that Luckmore was paid the same amount? Plaintiff's allegations are insufficient because Luckmore did not himself inform Plaintiff of his alleged pay rate. In any event, Luckmore is unavailable to participate in a collective action or testify as to his wages, as he sadly was a victim of the COVID-19 pandemic and passed away this year. Pl's Aff. ¶ 136.

Providing further reason for the Court to reject Plaintiff's allegations with respect to Luckmore, Plaintiff alleges that Luckmore "is" 26 years old,[6] Pl's Aff. ¶ 133. Yet Plaintiff also claims that Luckmore worked for Defendants' restaurant as far back as 1995 when Plaintiff commenced his employment. Pl's Aff. ¶ 135. According to Plaintiff, Luckmore began working for Defendants when he was a toddler. This preposterous assertion gives reason to question Plaintiff's other assertions regarding Luckmore, and the veracity of Plaintiff's entire Affidavit.

Plaintiff alleges that kitchen sauté and grill chef Angel "wanted to make $1,400 per week but told [Plaintiff] that he made a lot less than that" (Pl's Aff. ¶ 94) without explaining whether Angel was *actually* paid a fixed salary or hourly. Significantly, Plaintiff admits not knowing how Angel was compensated. Pl's Aff. ¶ 92.[7] Nor does Plaintiff provide any context or setting whatsoever for his conversation with Angel. Plaintiff has no basis to assert that Angel was paid a fixed weekly salary but, even if that were the case, the fact that Angel was allegedly paid solely in cash suggests that Plaintiff and Angel were not compensated in a similar manner.

## C. Plaintiff Fails To Allege That Other Employees were Deprived of Overtime

Not only does Plaintiff fail to allege anyone else was unlawfully denied overtime due to misclassification, Plaintiff also fails to allege that either Perez or Luckmore – the only two employees Plaintiff purports were compensated on a fixed salary basis, were ever deprived of

---

[6] Luckmore presumably was 26, before his sad passing during the pandemic.
[7] Plaintiff affirms: "although I don't know ANGEL's exact pay, we did talk about money." (Pl's Aff. ¶ 92).

overtime or ever complained to him regarding overtime. In sum, per the Affidavit, no employee aside from Plaintiff was both paid at a fixed salary and claims to have been deprived of overtime.

Of the Affidavit's 19 listed employees, the only employees Plaintiff claims have not been paid overtime are Angel (mentioned above), Carlos (a salad maker), and dishwashers Terry and Shaolin. Plaintiff freely admits he has no idea how Angel was paid.[8]  He also affirms that Carlos, Terry, and Shaolin were paid on an hourly basis. As such, even if Plaintiff alleges that these four employees were not paid overtime, which his affidavit fails to do,[9] Plaintiff does not show that these employees were victims of the same alleged unlawful policy as him.

### D. Allegations Regarding Front-of-the-House/Tipped Employees Are Deficient

To the extent Plaintiff's Motion seeks to sweep front of the house employees and/or tipped employees into the collective action as well as kitchen personnel, Plaintiff's Affidavit does not support such an overbroad certification. The Affidavit names busboys, but does not explain how any busboy was compensated, or if any of the busboys were ever deprived of overtime. Plaintiff's identification of one dishwasher-turned-busboy, Faruk, and assertion that "[w]hen [Faruk] was a dishwasher, he was paid the minimum wage, with no overtime" says nothing about how *busboys*

---

[8] As stated, Plaintiff does not know if Angel was paid on a fixed salary or hourly. Pl's Aff. ¶ 92. However, the fact that Angel made far less than Plaintiff (who *did* make $1,400 per week or thereabouts) and was allegedly discussing overtime with Plaintiff, suggests not only that Plaintiff and Angel were not subject to a common compensation policy, but also provides further confirmation that Plaintiff had managerial power with respect to Angel such that Plaintiff could give (or at least recommend) a raise. In addition to not explaining how or how much Angel was paid, Plaintiff allegations as to Angel's alleged overtime deprivation do not include any details about context or setting.

[9] According to Plaintiff, Carlos, Terry, and Shaolin were each paid hourly, unlike him. Moreover, for each of these three employees, Plaintiff explains his knowledge of the overtime deprivation with vague, detail-free allegations. Plaintiff claims to have known of Carlos's overtime deprivation because "we talked in the kitchen about {Carlos's} pay in or around 2019" and "because none of us are paid any overtime and that was why we would discuss about leaving Dee's Brick's Oven Pizza". Pl's Aff. ¶ 68. The former allegation provides no context and only vague details regarding timing and setting of the conversation; the latter is a conclusory circuitous statement that gives no inclination of how Plaintiff learned the information. Similarly, for dishwasher Terry, Plaintiff claims "I know that he was not paid overtime because we always used to complain about not getting overtime payment." Pl's Aff. ¶ 106. This statement is conclusory, circuitous and fails to explain how Plaintiff became aware of Terry's overtime deprivation. Finally, for Shaolin, no detail is provided regarding how he was deprived of overtime or the circumstances under which he informed Plaintiff of same. Pl's Aff. ¶ 128.

8

were paid or whether they suffered overtime deprivation. Pl's Aff. ¶ 162.  Moreover, this assertion regarding Faruk is conclusory, and is insufficient.  Finally, as Plaintiff did not receive tips, tipped employees are not similarly situated to him.

## FLSA COLLECTIVE CERTIFICATION STANDARDS

Courts in the Second Circuit employ a two-step certification process for an FLSA collective action. *See, e.g.*, *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 610 (S.D.N.Y. 2016). The Motion involves the first step, during which "the court mak[es] an initial determination to send notice to potential opt-in plaintiffs…" *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  To determine whether a plaintiff has established that the proposed members of a putative collective action are similarly situated, district courts in this Circuit generally consider the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 26–27 (W.D.N.Y. 2020). "The elements of, and defenses to, the claim inform the analysis of whether employees are similarly situated." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016).

Contrary to Plaintiff's apparent misunderstanding, he does not have an unchecked legal right to court-authorized disseminate a notice to Defendants' employees. Rather, notice to collective members is a "case management tool" that a court may employ at its discretion in "appropriate cases," where the court feels that notice will facilitate swift and economic justice. *See Myers*, 624 F.3d at 555. The ultimate question is whether conditionally certifying a collective action and permitting Plaintiff to send a court-authorized notice will "make for more

efficient and economical adjudication of cases." *Brown v. Barnes & Noble, Inc.*, No. 16 CV 07333, 2018 WL 3105068, at *5 (S.D.N.Y. June 25, 2018).

## I.      THE "MODEST FACTUAL SHOWING" STANDARD

At the first step, the Court must determine whether to send notice to "persons who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  FLSA plaintiffs bear the burden of demonstrating that they and the potential opt-in plaintiffs "**together** were victims of a **common policy or plan** that violated the law." *Id.* (emphasis added) (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)).

The standard of scrutiny applicable to a plaintiff's collective certification motion is a function of the degree of discovery has been conducted on the issue. Where – unlike here -- no information has been exchanged as to the propriety of collective certification, a "…modest factual showing" is the level of proof required. *Myers*, 624 F.3d at 555.  Even under the "modest" standard, however, "certification is not automatic." *Romero v. H.B. Auto. Grp., Inc.,* No. 11 Civ. 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012). Rather, to achieve certification, the "modest factual showing" standard requires Plaintiff to offer "substantial allegations of a factual nexus between [him] and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." *Schaefer v. M & T Bank Corp.,* 122 F. Supp. 3d 189, 193 (S.D.N.Y. 2015).

## II.     THE "MODEST-PLUS" STANDARD

While Plaintiff fails to acknowledge it, there is a strong trend in recent precedent that the level of scrutiny given to a FLSA collective certification motion *increases* "in proportion to the discovery conducted by the parties." *Korenblum*, 195 F. Supp. 3d at 482. Where *some* (but not all) discovery as to conditional collective certification has occurred, "the Court will look beyond the

10

pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding "that the body of evidence is necessarily incomplete." *Id*; *see also McDermott v. Fed. Savings Bank*, No. 14-cv-6657 (JMA) (GRB), 2018 WL 1865916, at *5 (E.D.N.Y. Apr. 18, 2018) ("Here, where discovery has been conducted on the issue of conditional certification, the Court should consider all evidence relevant to that determination"); *Brown v. Barnes & Noble, Inc.,* No. 16 CV 07333, 2018 WL 3105068, at *6 (S.D.N.Y. June 25, 2018) (applying "modest-plus" standard).

Under this standard of review, which courts have termed the "modest-plus" standard, the first-stage certification question additionally considers whether additional evidence obtained in litigation demonstrates "that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs"— in other words, that Plaintiffs have, through discovery, "advanced the ball down the field." *Korenblum*, 195 F. Supp. 3d at 482. Here, Defendants respectfully submit that a "modest-plus" standard of review is applicable because "[t]he Court is not required to turn a blind eye to evidence in the record that is relevant to the conditional certification determination." *McDermott,* 2018 WL 1865916, at *5.

Here, record evidence relevant to collective certification must be considered because Plaintiff did not dispute that evidence earlier. Numerous claims in the Affidavit regarding the compensation and other working conditions of certain proposed collective members are directly contradicted by previously filed affidavits by these very same individuals. Consideration of these affidavits is plainly warranted, especially as, to this day, Plaintiff never questioned them, despite now making self-serving contrary claims in support of this Motion.  However, even if the more lenient "modest factual showing" review is applied, for the reasons stated herein, the Motion should be denied.

11

## ARGUMENT

## POINT I

## PLAINTIFF'S MOTION MUST BE DENIED AS HIS CLAIM ARISES FROM HIS ALLEGED MISCLASSIFICATION, WHILE ALL PROPOSED COLLECTIVE MEMBERS ARE NON-EXEMPT

The fact that Plaintiff's FLSA overtime claim stands or falls on whether he was misclassified as an exempt executive employee bars him from obtaining certification of a collective including non-exempt employees. "Where a collective action contains a mix of employees, some of whom are classified exempt from the FLSA's requirements, and some of whom are classified as non-exempt, there is no factual nexus between the collective action members' situations, and conditional certification is not appropriate. *Romero v. H.B. Auto. Grp., Inc.*, No. 11 CIV. 386 CM, 2012 WL 1514810, at \*12 (S.D.N.Y. May 1, 2012).

This Court's decision in *Dalton v. Gem Fin. Servs., Inc.*, No. 15 CIV. 5636 (BMC), 2016 WL 3676428 (E.D.N.Y. July 7, 2016) is illustrative of why Plaintiff's proposed collective is untenable. *Dalton* was the mirror image of this case – there, non-exempt plaintiffs sought a collective certification covering non-exempt *and* exempt personnel. Noting that in *Myers, supra,* the Second Circuit recognized that a heightened showing of similarity is required for collective certification in exemption cases, this Court deemed a "greater scrutiny" applies where a collective certification is sought as to both overtime claims by employees alleging overtime deprivation due to misclassification as exempt *and* non-exempt employees claiming they were deprived of overtime. *Dalton*, 2016 WL 3676428, at \*4. In this regard, this Court pointed out that exempt employees tend to differ from non-exempt employees in that they "usually hold salaried, managerial positions requiring higher level skillsets." *Id.* In denying the *Dalton* plaintiffs' attempt to include both exempt and non-exempt employees in a collective, this Court observed:

12

> Plaintiffs' proposed collective action class would be comprised of
> all defendants' hourly and salaried employees together – regardless
> of their job function, work location, or exemption status. Nowhere
> in plaintiffs' declarations or affidavits do they articulate the exempt
> employees' job requirements or pay provisions, nor do they
> articulate how such attributes render them similarly situated to the
> non-exempt employees, or even each other. *Id.*

Here, similar to *Dalton*, "greater scrutiny" of Plaintiff's Motion is appropriate as the

Motion proposes that Plaintiff's own claims of alleged misclassification *and the overtime* claims

assortment of non-exempt employees be certified within a single collective. Plaintiff's Affidavit

substantially fails to articulate job requirements or pay provisions of the non-exempt employees

including in the proposed collective. To an even greater degree, Plaintiff fails to explain how such

attributes render Plaintiff similarly situated to the non-exempt employees, or vice versa. *Id.*

Therefore, as in *Dalton*, the heightened similarity requirement between exempt and non-exempt

claims is not met here. It follows that here, too, collective treatment of exempt and non-exempt

claims together is not appropriate.

Further, *Dalton* rejected the argument that by merely alleging misclassification, exempt

employees can participate in the same collective as non-exempt employees. This Court observed

that allegations of misclassification do not show that an exempt employee is "similarly situated"

to non-exempt employees. *Id.* at 5. Similarly, Plaintiff's purported misclassification does not

support certification of a collective including non-exempt employees with whom he has not shown

himself to be similarly situated.

Concerns of prudence and efficiency strongly militate against permitting certification of

exempt and non-exempt claims in the same collective. Certification of such a proposed collective

was denied in *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270, at

*3 (W.D.N.Y. Oct. 17, 2005). In finding collective treatment of exempt and non-exempt claims

unworkable, the *Diaz* court reasoned that assessing liability as to of exempt employees "will involve an analysis of daily duties and responsibilities and the amount of time spent on each, whereas" ruling on the claims of non-exempt employees, by contrast, "will involve an examination of hours worked, payroll records and [the manager's] knowledge and/or permission of the alleged overtime hours worked.'" *Diaz*, 2005 WL 2654270, at *3; *see also Colon v. Major Perry St. Corp.*, No. 12 CIV. 3788 JPO, 2013 WL 3328223, at *7 (S.D.N.Y. July 2, 2013) (rejecting collective certification as to position appearing "to involve markedly different pay scales, different hours and tasks, different overtime policies, and different compensation schemes.") Likewise, in *Romero v. H.B. Auto. Grp., Inc.*, No. 11 CIV. 386 CM, 2012 WL 1514810, at *12 (S.D.N.Y. May 1, 2012), which this Court cited in *Dalton*, the court pointed out that the liability analysis required in exemption cases makes the combination of exempt and non-exempt employees in a single collective action untenable:

> "The parties would first need to litigate whether Plaintiff and the [other allegedly misclassified] putative opt-ins were misclassified — i.e., Defendants' *liability* for overtime wages would need to be established — whereas the non-exempt employees need only determine the *amount* of relief — if any — to which they are entitled."

*Romero*, 2012 WL 1514810, at *22-23.

Here, Plaintiff's claim hinges on whether he is found to be misclassified, while the claims of the proposed collective of non-exempt employees do not.[10]

---

[10] Specifically, the outcome of Plaintiff's claim rests on whether Plaintiff's "primary duties" support application of the executive exemption. Administrative regulations classify employees as "executive" if (1) they are "[c]ompensated on a salary or fee basis," (2) their "primary duty is management of the enterprise ... or of a customarily recognized department or subdivision thereof," (3) they "customarily and regularly direct[ ] the work of two or more other employees," and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a).

Significantly, no other proposed collective members are alleged to have suffered unpaid overtime based on misclassification. Even if Plaintiff's self-serving and deficient Affidavit could be credited, only 2 proposed collective members were allegedly paid a fixed salary. Those 2 employees were allegedly paid $800 per week. As low paid employees, these 2 employees are not subject to same exemption defense as Plaintiff because the salary paid to these employees is insufficient to qualify for the New York Labor Law's ("NYLL") executive exemption.

Assuming *arguendo* that Defendants were denying overtime to undisputedly non-exempt employees who prove they work over 40 hours in a workweek, and unlike Plaintiff were not subject to an exemption, *Defendants would not have any defense to liability*. Even if purported overtime pay is on the line in both cases, collective treatment of Plaintiff's exemption-misclassification claim and the potential claims of the collective would hardly be fair or efficient, as Plaintiff is subject to the exemption defense and everyone else in the collective is not.

Plaintiff will surely beg the Court to ignore, at least for now, the striking differences between Plaintiff and his proposed collective, arguing that this issue should be addressed at decertification. This is absurd. The divergence between the Plaintiff and proposed collective members here is too significant and material to wait until decertification to be resolved. In *Fraticelli v. MSG Holdings, L.P.*, No. 13 CIV. 6518 JMF, 2014 WL 1807105, at *3 (S.D.N.Y. May 7, 2014), the differences between collective members were deemed too significant to wait until decertification. *Id.* ("proposed collective members worked in approximately one hundred different departments, and their experiences appear to vary greatly from one department to the next, in ways that are highly relevant...") The same is true here.

## POINT II

### PLAINTIFF'S PRIOR CONCESSIONS AND "LAW OF THE CASE" ARE BINDING

#### A. Plaintiff's Prior Concessions Bar Him From Making Contrary Arguments

In opposition to Defendants' Rule 56.1 Statement in support of summary judgment, as noted above, Plaintiff conceded that: (1) all other kitchen workers are paid on an hourly basis (ECF No. 30, Troy Decl., Ex. A., Response No. 29) and (2) that Daniel Perez and Robert Denes stated that they were compensated hourly, at $17.00 per hour and $18.00 per hour respectively (ECF No. 30, Troy Decl., Ex. A., Response No. 30). Now, in his Affidavit, Plaintiff has directly contradicted both concessions to bolster the Motion.

Plaintiff is estopped from making arguments that contradict the aforesaid prior concessions. "Facts admitted… in any pleading, are judicial admissions that bind the defendant throughout this litigation." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006). "[P]arties are bound by their concessions in Rule 56.1 Statements." *Cohan v. Movtady,* 751 F.Supp.2d 436, 443 (E.D.N.Y.2010)) (*citing Hoodho v. Holder,* 558 F.3d 184, 191 (2d Cir.2009) ("acts admitted by a party are judicial admissions that bind [that] [party] throughout th[e] litigation")); *see also Schlenger v. IBM Corp.*, No. 09-CV-3986 CS, 2013 WL 944798, at *5 (S.D.N.Y. Mar. 12, 2013) (party bound by concession in prior Local Rule 56.1 statement, despite including a contradictory allegation walking back the concession in an amended Complaint); *Granite Ridge Energy LLC v. Allianz Global Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385, 389 (S.D.N.Y. 2013) ("Defendants are bound by their Rule 56.1 counterstatement.").

Accordingly, in deciding this motion, the Court should disregard Plaintiff's Affidavit and other papers to the extent they contradict Plaintiff's concessions that: (1) all other kitchen workers

are paid on an hourly basis and (2) that Daniel Perez and Robert Denes stated that they were compensated hourly, respectively at $17.00 per hour and $18.00 per hour.

## B. Law of The Case Bars Plaintiff From Making Arguments Contrary To His Prior Concessions

In addition, the Court's undisputed determination that "Plaintiff was the only member of Dee's kitchen staff paid on a salary basis; the others were paid on an hourly basis," *Panora v. Deenora Corp*, No. 19-CV-7267 (BMC), 2020 WL 3165183, at *1 (E.D.N.Y. June 15, 2020), constitutes binding law of the case. "[T]he doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618 (1983). This doctrine "expresses the practice of the courts generally to refuse to reop n what has been decided." *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001). Courts routinely apply the law of the case doctrine to bind parties by prior judicial rulings in the same proceeding in the particular context of wage and hour collective action litigation. *Gayle v. Harry's Nurses Registry, Inc*., No. CV 07-4672 NGG MDG, 2013 WL 5502951, at *1 (E.D.N.Y. Aug. 26, 2013) (prior summary judgment decision in same case deemed "law of the case"); *Jacob v. Duane Reade, Inc*., No. 11-CV-0160 (JPO), 2016 WL 3221148, at *1 (S.D.N.Y. June 9, 2016) ("the factual underpinnings of a court's prior certification order are deemed to be law of the case.")

Accordingly, the Court's finding that "Plaintiff was the only member of Dee's kitchen staff paid on a salary basis; the others were paid on an hourly basis." *Panora v. Deenora Corp*, No. 19-CV-7267 (BMC), 2020 WL 3165183, at *1 (E.D.N.Y. June 15, 2020) constitutes binding law of the case and mandates denial of the Motion.[11]

---

[11] Alternatively, Fed. R. Civ. P 56(g) empowers the Court to prevent Plaintiff from backtracking on established facts that he neglected to dispute on summary judgment. "A reservation of the right to dispute facts at trial does not immunize a party from the risks of not disputing facts at summary judgment.... [E]ven with such a reservation, a court

17

## C.  The Court Should Strike Plaintiff's Entire Affidavit

Plaintiff and his counsel have made misrepresentations and submitted false and contradictory testimony to the Court in this action and in connection with this Motion. There is no excuse or explanation for Plaintiff's counsel's repeated deceptions, including previously misrepresenting at the February 12, 2020 conference that all employees at Defendants' restaurant were paid at flat rates, only to "walk this back" on summary judgment, before now presenting Plaintiff's latest shift in his story. Regrettably, Plaintiff's counsel's duplicitous behavior in these proceedings is hardly unusual. *Yu Zhang v. Sabrina USA Inc.*, No. 18CV12332AJNOTW, 2019 WL 6724351, at \*5 (S.D.N.Y. Dec. 10, 2019) ("The Court is concerned, however, about the discrepancies regarding key facts that would be difficult to classify as a mere mistake."); *Gao v. A Canaan Sushi Inc.*, No. 18 Civ. 6442, ECF 29 (S.D.N.Y. July 18, 2019) (noting two affidavits by the same affiant that directly contradict each other); *Jianjun Chen v. 2425 Broadway Chao Restaurant, LLC*, 331 F.R.D. 568, 573-74 (S.D.N.Y. 2019) (sanctioning John Troy because the plaintiffs' deposition testimony contradicted earlier certified discovery responses); *Jianman Jin v. Shanghai Original, Inc.*, No. 16 Civ. 5633, 2018 WL 1597389, at \*15 (E.D.N.Y. April 2, 2018) (finding "concerning" discrepancy between the plaintiff's sworn affidavit and subsequent deposition testimony).

In *Yu Zhang*, the court was faced with evidence of impropriety by Plaintiff's counsel in connection with a collective action, similar to that exhibited in this case, involving the submission

---

can determine that certain facts are established and forbid parties from contesting those facts at trial." *Berbick v. Precinct 42,* 977 F. Supp. 2d 268, 275 (S.D.N.Y. 2013) (citing Fed. R. Civ. P. 56(g)). "A court is not bound by a party's hedging." *Berbick,* 977 F. Supp. 2d at 275. Thus, "[a] party's personal belief that the true facts are different from the facts established by the record cannot create a genuine dispute." *Hawkins v. Medapproach Holdings, Inc.,* No. 113CV05434ALCSDA, 2020 WL 4349813, at \*10 (S.D.N.Y. July 29, 2020). Here, as noted in the court's summary judgment order, it was not disputed by any party on summary judgment that he was the only salaried kitchen employee and that, unlike him, the rest of the kitchen staff were paid hourly. Per Rule 56(g), the Court can, and should, render the foregoing "established in the case".

of apparently false and plainly contradictory affidavits by a Plaintiff. *Yu Zhang v. Sabrina USA Inc.*, No. 18 CV 12332, 2019 WL 6724351, at *5 (S.D.N.Y. Dec. 10, 2019). The Court appropriately declined to credit the *Yu Zhang* plaintiff's affidavit and denied his motion. *Id.*[12]; *See also Mendoza v. Casa de Cambio Delgado, Inc.,* No. 07 CV 2579 (HB), 2008 WL 938584, at *3 (S.D.N.Y. Apr. 7, 2008) (denying conditional collective certification where plaintiff's affidavit conflicted with the amended complaint). Here, Plaintiff's counsel's submission of yet another false and contradictory affidavit in a federal court proceeding warrants that affidavit being stricken.

## POINT III

### CONDITIONAL COLLECTIVE CERTIFICATION MUST BE DENIED AS PLAINTIFF'S AFFIDAVIT IS INSUFFICIENT TO SUPPORT SAME

#### A. Plaintiff Fails To Allege A Common Policy or Plan That He, Together With Proposed Collective Members, Was A Victim Of

Plaintiff's memorandum of law (at p. 9) pays hollow lip service to *Myers*' binding holding that FLSA must show that they and members of the collective "**together** were victims of a **common policy or plan** that violated the law." *Myers*, 624 F.3d at 555 (emphasis added). In fact, Plaintiff asserts no such "common policy or plan" from which he and collective members alike suffered. Plaintiff's counsel, Mr. Troy, gives the game away in his sworn affidavit in support of the Motion, affirming that "the Named Plaintiff and proposed members of the class experienced a common **set** of policies and practices by the Defendants as to wages and hours that violated the FLSA…" Troy Aff. ¶ 4. That is not what *Myers* held. The singular unlawful "common policy or plan" that *Myers* requires a plaintiff to show is very different from Plaintiff's undefined "common

---

[12] In *Yu Zhang,* in rejecting the plaintiff's affidavit, the Court noted that: "Plaintiff's pattern of revising his factual allegations after Defendants point out the inaccuracies also raises questions as to the reliability of Plaintiff's affidavits." *Id.* Defendants submit that opposing counsel is repeating this same pattern of conduct here.

set of policies and practices."[13] The "set" of policies described by Plaintiff could include an untold number of independent and distinct policies and practices, each of which is alleged to violate the FLSA in a different way. Mr. Troy's exclusion of the word "together" from ¶ 4 of his affidavit is further indication that Plaintiff is **not** in fact claiming that he and even one of his proposed collective members was deprived of overtime by a ***common*** policy.

Plaintiff's proposed collective members were purportedly deprived of overtime by a potpourri of independent policies with separate mechanisms of action. It is not enough that Plaintiff is alleging that everyone commonly suffered overtime deprivation – overtime deprivation **due to a particular common policy that affects *both* Plaintiff and the proposed collective** is necessary. Here, Plaintiff does not claim to have suffered overtime deprivation from any alleged "policy" that affected collective members. Nor does Plaintiff allege that any collective members were misclassified as exempt – the very policy that underlies Plaintiff's overtime claim (Compl. ¶ 27).

*Camara v. Kenner*, No. 16-CV-7078 (JGK), 2018 WL 1596195, at *15 (S.D.N.Y. Mar. 29, 2018), where Plaintiff's counsel represented the plaintiffs, is instructive. *Camara* appropriately denied a similarly deficient bid by Plaintiff's counsel to obtain collective certification, finding:

> **"There is no evidence that the plaintiffs' allegations arise from a common policy or plan....** the factual and employment setting that gave rise to each plaintiff's claim is different.... Two plaintiffs allege that the defendants illegally retained their tips, while all of the others do not. Some of the plaintiffs allege that they did not receive any written notification of the defendants' intention to take tip credits, while others allege that they received written tip credit notification that was insufficient, while others clearly received sufficient written tip credit notification. Some of the plaintiffs claim

---

[13] No authority exists for granting collective certification where a "common set of policies" is alleged – in fact, in a prior matter handled by Plaintiff's counsel, conditional certification was *denied* where he used the same disingenuous language. *Bowe v. Enviropro Basement Sys.*, No. 12-2099, 2013 WL 6280873, at *3 (D.N.J Dec. 4, 2013) (where the plaintiff alleged a "common set of policies, denying collective certification on the ground that "Plaintiffs have failed to produce [any] evidence beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected [Plaintiffs] and the manner in which it affected other employees.").

> that they performed non-tipped work for hours at a time, while others claim that they performed short non-tipped tasks, and others did not perform any non-tipped work at all. Some plaintiffs claim that they worked overtime, while others do not."

*Camara*, 2018 WL 1596195, at *15 (emphasis added).

*Camara* stands for the proposition that claims by multiple employees alleging that a company violated the FLSA in different ways does not demonstrate a "common policy" supporting certification. This situation resembles *Camara*, but is even more egregious. In *Camara*, collective certification was sought on the basis of a number of affidavits as to a relatively limited collective consisting of employees in a single position. *Id.* Here, Plaintiff and his counsel – relying solely on Plaintiff's own affidavit -- seek to shoehorn all back and front of the house positions into their purported collective action. Plaintiff's Affidavit fails to point to any single common policy that *together* causes both Plaintiff and *any* proposed collective member to be deprived of overtime.

The cases cited by Plaintiff in furtherance of his Motion are each inapposite. For example, in *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 322 (S.D.N.Y. 2011), the entire collective consisted of misclassified employees. Thus, there was a common policy binding the named plaintiff and his proposed collective members. Likewise in *Sanchez v. Garsevoort Mgmt. Grp., Inc.*, No. 12 CIV. 75 KBF, 2013 WL 208909, at *2 (S.D.N.Y. Jan. 10, 2013), to which Plaintiff cites, there is no indication that the collective contained both exempt and not exempt employees. Further, as *Sanchez* noted, the defendants there failed to provide any reason why a collective action should not be certified. *Id.*

Here, by contrast, Plaintiff does not allege that any proposed collective member was misclassified under the executive exemption. Rather, while Plaintiff was allegedly misclassified, the members his proposed collective are non-exempt and are allegedly subject to different purported unlawful policies that did not affect Plaintiff.

21

**B.   Plaintiff Fails To Evince That He Is Similarly Situated To The Proposed Collective**

Plaintiff is required to "provide actual evidence of a factual nexus between [his] situation and those that [he claims] are similarly situated rather than mere conclusory allegations." *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014); *Reyes v. Nidaja, LLC*, No. 14-CV-9812, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015) ("A plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice."). Here, even if it were not subject to being stricken in whole or in part based on Plaintiff's prior concessions, law of the case, or by operation of Fed. R. Civ. P. 56(g), Plaintiff's Affidavit is plainly insufficient to support the conditional collective certification. Preliminarily, the Affidavit fails to identify even one employee allegedly subject to misclassification like Plaintiff.

Moreover, conditional certification is not appropriate where, as here, a plaintiff "provides no details about [his] conversations [with other employees] and provides no affidavits from any other employees corroborating [his] claims." *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009). A "plaintiff cannot simply state his belief that others are similarly situated based on conversations with or observations of those potential opt-in members; rather, [he] must supply additional detail regarding the particular conversations or observations substantiating that belief." *Joshi v. Flagship S B Amsterdam NY, LLC*, No. 17-CV-5785, 2018 WL 1135566, at *3 (S.D.N.Y. Mar. 1. 2018). "[G]eneral, uncorroborated assertions with no detail are insufficient to support conditional certification"; *Zamora v. L Plus L Prods LLC*, No. 19-CIV-1506, 2019 WL 5460559, at *4 (S.D.N.Y. Oct. 15, 2019); Plaintiff must tell the Court where and when each conversation took place. *Jian Guo Yang v. Zhou's Yummy Rest., Inc.*, No. 19-CV-5203, 2020 WL 2738403, at *3 (E.D.N.Y. Apr. 28, 2020).

22

*Zamora v. L Plus L Prods LLC*, 2019 WL 5460559, at \*4 is instructive. There, conditional collective certification was denied on the basis that the plaintiff failed to provide the name of any employee in his position, and, moreover, failed to provide any facts showing a common wage policy. Also analogous is *Ji v. Jling Inc.*, No. 15 CV 4194, 2016 WL 2939.54, at \*4 (E.D.N.Y. May 19, 2016), where the plaintiff failed to describe the duties and responsibilities of employees in the proposed collective, and offered no facts supporting an inference of a common policy applicable to "all non-managerial employees."

"[D]etails are particularly important where a conditional certification motion is based on the lone affidavit of a single employee, who performed a single job function." *See Mata v. Foodbridge LLC*, No. 14-8754, 2015 WL 3457293, at \*4 (S.D.N.Y. 2015). Plaintiff's lone Affidavit identified only 2 employees alleged to be paid a fixed salary as Plaintiff was Daniel Perez and Luckmore. Plaintiff fails to explain precisely *where* and *when* he and Perez discussed Perez's alleged fixed salary compensation. Nor does Plaintiff provide any other context. As for Luckmore, Plaintiff never spoke with Luckmore about Luckmore's compensation, but purports to have found out, from Daniel Perez, information about the compensation of Perez's nephew. Pl's Aff. ¶ 138. Through this little bit of information, Plaintiff somehow divined that Luckmore was compensated at the same rate as Daniel Perez's nephew. Needless to say, these speculative allegations are insufficient to support conditional collective certification.

Significantly, in addition to providing no specifics whatsoever regarding conversations with either Luckmore or Daniel Perez, Plaintiff does not claim that either of them – the only two employees *allegedly* paid on a fixed salary like Plaintiff – ever advised Plaintiff they were deprived of overtime. Moreover, per Plaintiff's Affidavit, not one of those employees who *did* allegedly speak with Plaintiff regarding overtime was paid on a fixed salary basis as Plaintiff was.

## POINT IV

## THE COLLECTIVE NOTICE AND DISTRIBUTION PLAN ARE INAPPROPRIATE

Although the Motion must be denied for the numerous reasons set forth above, Defendants must still address Plaintiff's proposed notice and distribution plan as both are overbroad and inappropriate. Preliminarily, as Plaintiff's minimum wage claim has been dismissed, notice should not mention any federal minimum wage claim. Moreover, the Notice should include contact information for Defendants' counsel. In this regard, courts "have generally concluded" that the contact information of defendants' counsel 'is appropriate for inclusion in a notice of collective action. *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18CV12220PAERWL. 2019 WL 4493429, at *19 (S.D.N.Y. Sept. 9, 2019). Further, neutral notice should not include any caption as that gives the impression that the Court's imprimatur has been received. Similarly, because the notice does not state that the Court "has not determined who is right or who is wrong," and does not say that the Court "does not make any suggestion as to whether [a collective member] should or should not join this case," the notice could be incorrectly viewed as an invitation by the Court encouraging collective members to opt in. As well, "language stating that opt-in plaintiffs have the freedom to choose their own counsel is an appropriate provision of any proposed notice." *Dilonez v. Fox Linen Serv. Inc.,* 35 F. Supp. 3d 247, 257 (E.D.N.Y. 2014). No such language exists here. As well, the notice should appropriately inform potential opt-ins of the potential costs and discovery obligations that come in hand with to being party to litigation. *See, e.g., Halissey v. Am. Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19. 2008) (authorizing notice informing potential opt-in plaintiffs that "they *may* be asked to (1) appear for depositions; (2) respond to written discovery; (3) testify at trial; and (4) pay costs if they do not prevail").

Courts in this Circuit routinely approve 60-day opt-in periods. *See, e.g., Aguilo v. Vails Gate Cleaners Inc.,* No. 18CIV8850PMHJCM, 2020 WL 3545558, at *10 (S.D.N.Y. June 30, 2020). The opt-in period should therefore be reduced to 60 days. Contrary to Plaintiff's argument, the notice period is measured "from the date of the Court's order granting plaintiffs' motion for conditional certification, not from the filing of the complaint." *Jing Fang Luo v. Panarium Kissena Inc.*, No. 15 CV 3642, 2016 WL 11263668, at *13 (E.D.N.Y. Nov. 23, 2016).

Finally, posting and dissemination on social media and the internet should not be permitted. Posting and dissemination on social media and websites "would be overbroad and not likely to materially improve the chances of notice." *Mark v. Gawker Media LLC*, No. 13-cv-4347, 2014 WL 5557489, at *4 (S.D.N.Y. Nov. 3, 2014).[14] The potential plaintiffs herein are "likely to be reached and identified by other means, and any plaintiffs who cannot be reached will not have their legal rights altered by their inaction," whereas posting on social media and websites has the potential to prejudice Defendants, because Plaintiffs have not put before the Court any proposed social media posting or dissemination message and, therefore, the court cannot assess the propriety of any intended social media communication. *Id.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's motion for conditional collective certification be denied, and further, that the Court award Defendants all further relief that it deems to be just and proper.

---

[14] Plaintiff asks that notice be disseminated by mail, text message, and email. Even during a pandemic, this is good enough. Though social media and internet dissemination is inappropriate, Defendants can only be ordered to give whatever contact information that is already in their possession. They cannot be ordered to find more. *See e.g. Lijun Geng*, 2019 WL 4493429, at *21 ("Defendants need only produce employee email addresses and social media usernames to the extent that such information is in Defendants' possession")

Dated: Woodbury, NY
      September 10, 2020

                                        KAUFMAN DOLOWICH & VOLUCK, LLP
                                        *Attorneys for Defendants*

By:      _____

                                          Aaron N. Solomon
                                          Taimur Alamgir
                                          135 Crossways Park Drive, Suite 201
                                          Woodbury, New York 11797
                                          (516) 681-1100
                                          asolomon@kdvlaw.com
                                          talamgir@kdvlaw.com

4839-8786-9386, v. 1

26