# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

JOSE PANORA, ON HIS OWN BEHALF AND ON BEHALF OF OTHERS SIMILARLY SITUATED,

Plaintiffs,

-against-

DEENORA CORP D/B/A DEE'S; DEE'S BRICK OVEN PIZZA, INC D/B/A DEE'S; AND DEERAN ARABIAN A/K/A DEE ARABIAN,

Defendants.

- - - - - - - - - - - - - - - X

: 19-CV-07267 (BMC)

: United States Courthouse
: Brooklyn, New York

: Thursday, August 20, 2020
: 12:15 p.m.

TRANSCRIPT OF:
CIVIL CAUSE FOR PRE-MOTION CONFERENCE VIA TELEPHONE
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES SENIOR DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiffs: TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 103
Flushing, New York 11355
BY: AARON B. SCHWEITZER, ESQ.

For the Defendants: KAUFMAN DOLOWICH & VOLUCK, LLP
135 Crossways Park Drive
Suite 201
Woodbury, New York 11797
BY: AARON NATHANIEL SOLOMON, ESQ.
TAIMUR ALAMGIR, ESQ.

Court Reporter: VICTORIA A. TORRES BUTLER, CRR
225 Cadman Plaza East / Brooklyn, NY 11201
**VButlerRPR@aol.com**

Proceedings recorded by mechanical stenography, transcript produced by Computer-Assisted Transcription.

(Teleconference call initiated.)

(Judge BRIAN M. COGAN is on the call.)

THE COURT: Good afternoon, this is Judge Cogan.

Let me make sure I have got the court reporter on the line.

THE COURT REPORTER: Yes, Your Honor, I am here, thank you.

THE COURT: This is Panora against Deenora Corp., 19-CV-7267.

Who do I have for the plaintiff?

MR. SCHWEITZER: Aaron Schweitzer for the plaintiff, Your Honor.

THE COURT: I need you to speak up a little bit. Was it Aaron Schweitzer?

MR. SCHWEITZER: Yes, Your Honor.

THE COURT: Okay.

Who do I have for the defendant?

MR. SOLOMON: Aaron Nathaniel Solomon of Kaufman Dolowich & Voluck for the defendant.

With me on the call is Taimur Alamgir, my associate, and my client Deeran Arabian.

THE COURT: Okay. This is the belated pre-motion conference.

I will tell you, Mr. Solomon, I do not hold it against the plaintiff that they moved when they moved. We

left it a little bit ambiguous as to that. I think they would have been better advised to have filed a letter, but it is not the biggest deal in the world, it was their trouble in drafting the motion.

As far as the timeliness, I really, I did not set a date, so I am not going to hold them to it and I cannot point to any prejudice, nor have you from hearing the motion now. So, I am going to hear the motion.

But having said that, Mr. Schweitzer, I am not sure you have got a motion here. For better or for worse, you have got a guy that was paid differently than anybody else and there is a real issue as to whether he is exempt or not. And that is not something he shares with any other member of the collective.

So, how are you going to get around that?

MR. SCHWEITZER: The issue of his exemption has not been decided yet, it should probably be decided at the decertification case phase, which would follow more discovery.

And, Your Honor, I don't think we agree that he is not similarly situated or paid similarly to other employees. He's identified 19 employees, eight of whose wage rates he knows. Three of them were paid weekly salaries which did not include overtime, which is exactly what his complaint is.

THE COURT: Where did the get the notion, Mr. Schweitzer, that your client was the only one paid on a

salary? Didn't you represent that to me earlier in the case? When I say "you," I mean the plaintiff.

MR. SCHWEITZER: I don't think I'm able to speak to that, Your Honor.

THE COURT: Okay.

Let me ask Mr. Solomon, maybe he knows where I got that impression.

MR. SOLOMON: Thank you, Your Honor. This is Aaron Solomon for the defendant.

In the summary judgment 56.1 we made the assertion that plaintiff was the only employee in the kitchen paid a salary. That assertion was backed up by my client's affidavit in the 56.1 statement.

In addition we submitted affidavits from two employees.

THE COURT: Mr. Solomon, I am going to let everyone say what they have to say but I have to tell you, the court reporter has had a very long morning with our last call.

MR. SOLOMON: I will slow down, Judge. A little bit too much coffee on my part.

THE COURT REPORTER: Thank you, Your Honor.

MR. SOLOMON: So, we had -- again, my apologies.

We had submitted affidavits from Deeran Arabian and two employees, one of whom is named Daniel Perez who, in his declaration in support of his motion for summary judgment --

THE COURT: You are still talking very fast.

MR. SOLOMON: Yes, Judge.

Mr. Perez has stated in his declaration in support of our summary judgment motion that he was paid on an hourly basis.

Plaintiffs did not dispute any of these items in our 56.1 statement, did not dispute that plaintiff was the only one paid on a salary basis in the summary judgment motion and that is why we believe the Court held that the parties agree that plaintiff was the only one in the kitchen paid a salary.

THE COURT: Mr. Solomon, slow down.

What is the law with regard to statements in a 56.1 statement that are not disputed as to the continuing effect of the nondispute after decision on the summary judgment motion?

To put a finer point on it, my understanding is the parties paid all kinds of -- is there someone on the phone where there is a lot of noise?

MR. SCHWEITZER: I apologize, that's my child, he's 20 months old. I apologize.

THE COURT: When I am talking then, I would appreciate if it if you would put it on mute so that at least the court reporter is able to hear me. Hearing you will be a different problem.

Okay. My understanding is parties take a position on summary judgment motions. They assume certain facts are

true for purposes of the motion, but it has no lasting impact once the motion is decided.

Do you have authority to the contrary, Mr. Solomon?

MR. SOLOMON: Well, I would say that even a decision denying a motion for summary judgment can constitute law of the case, especially when certain rulings are made when deciding the judgment that are integral to the Court's holding. And the purpose of the summary judgment motion in defendants' view was to determine what the scope of the case was; was plaintiff classified as exempt?

And what summary judgment briefing revealed was that there was no dispute that plaintiff was paid at a higher salary than everybody in the kitchen, there was no dispute that plaintiff was paid at a salary that classified him as exempt under the wage and hour laws, and there was no dispute that nobody else in the kitchen was paid a salary. What summary judgment left us with, in defendant's view, was a dispute of fact as to the duties plaintiff performs.

And I will get to the substance of plaintiff's motion. I know we're just talking about summary judgment. I would like to address, you know, whether or not there is a modest factual showing, but I just wanted to answer the Court's question that we believe that these rulings on summary judgment would constitute law of the case.

THE COURT: All right.

You are going to have to convince me that there is law of the case when oppose plaintiff's collective action motion and not just an assumption of certain facts for the purpose of teeing up a legal issue. Maybe you are right. Maybe the concession of the fact that plaintiff was the only salaried employee is so integral to the decision that it has lasting effect beyond summary judgment. Maybe that is right, but I am really not sure. I do know it is common practice, of course, to concede things for the purpose of the motion, but I am not sure that those concessions have lasting effect later on in the case.

All right. Let me ask Mr. Schweitzer another question.

Mr. Schweitzer, even if there are a few more salaried employees, doesn't this still leave us with a situation that there are certain employees -- well, let me put it another way.

You are seeking a collective action for both salaried and hourly employees when, in fact, there is an issue, at least to your plaintiff and maybe any other salaried employees, as to whether they are exempt. So, doesn't that separate you from the wage-paid employees?

MR. SCHWEITZER: Not necessarily, Your Honor, for two reasons.

First, defendants' documents to which Mr. Panora

alluded in his affidavit state that they purported to pay him on a hourly basis. This purported hourly bases is not true. It undercounts his hours, it states false wage rates, but it remains to be seen whether the people who Mr. Panora thinks were paid on a wage basis were, in fact, paid on a wage basis or were, in fact, paid on a salary basis.

THE COURT: Are you saying that what your client has asserted in support of the collective action motion may be false?

MR. SCHWEITZER: It is true to the best of his knowledge, but his knowledge is not necessarily perfect.

THE COURT: I do not think you can have it both ways. If he gives me a set of facts and says, based on this set of facts you are to approve a collective action as step one, then he can't say, well, also if my facts are wrong, that is even more reason to approve class action step one. You have to come out one way or the other.

MR. SCHWEITZER: Well that's the particular complexity of this case. You don't often see a case where a salaried employee is purported to have been paid at an hourly rate for the purpose of getting, for instance, a pay stub.

THE COURT: Well, yes, I appreciate that it is unusual and that is why it might not be appropriate for collective treatment.

MR. SCHWEITZER: Your Honor, this is the exact sort

of issue that should be decided on decertification after employees have had the opportunity to opt in and discovery has been taken against them rather than on -- at the first stage.

THE COURT: Here is why I do not think you are right about that. I am going to let you go to the second issue, but here is why I think you are wrong about the first issue.

This issue of whether he is exempt or not is not going to be decided until trial. It may not even be decided by me. It may well be decided by a jury or it may be decided by me after I get factual findings from a jury so that I can apply the law to those factual findings. But it is not going to happen before stage two, I can tell you that.

MR. SCHWEITZER: And the second reason, Your Honor, is that the essence of plaintiff's claim is that he was denied overtime. Even with respect to the hourly rate employees, what he's saying is that they worked more than 40 hours, but were only paid their straight hourly rate for those overtime hours.

THE COURT: But that is not him.

MR. SCHWEITZER: The second is still the same claim.

THE COURT: But that is not him, right? That is not what happened to him.

MR. SCHWEITZER: He was paid on a salary basis, but the salary did not include overtime.

THE COURT: Okay.

Is there anything you need to add?

MR. SCHWEITZER: No, Your Honor.

THE COURT: Okay.

Mr. Solomon, is there anything you need to say? You have to take me off mute, Mr. Solomon.

MR. SOLOMON: Oh, I apologize, Judge, that was a very psychic prediction of you.

I think you hit the nail on the head, Judge. Plaintiff is attempting to identify more than one allegedly unlawful policy and say that plaintiff is similarly situated to people subject to different unlawful policy. And what I'm hearing is that you know, oh, let's figure it out at decertification. Well, then apparently the modest factual showing means nothing.

With respect to the employees that he does identify in his affidavit, I would just like to point a couple things out. One of them is Danny Perez, who Danny Perez has put in his own affidavit on summary judgment saying he was paid hourly, a fact which, you know, we think it's suspicious that plaintiff never refuted even if it's not law of the case.

Secondly, the second employee that plaintiff identified who is allegedly paid a salary in the kitchen is an individual named Angel. And with respect to Angel, plaintiff's affidavit merely states: Specifically, Angel would complain -- although, I don't know Angel's exact pay, we

did talk about money.  Specifically, Angel would complain that
the only reason he was --

        THE COURT:  Slow down, Mr. Solomon.  Slow down, slow down.

        MR. SOLOMON:  Sorry, Judge.

        Specifically, Angel would complain that the only reason he was saying is because he was paid in cash.  He wanted to make 1400 a week, but told me he made a lot less than that and that there was no overtime.

        So according to plaintiff, Angel never said:  I get a salary.

        And then the third individual who plaintiff identifies out of his 19 in his chart is an individual named Luckmore who, unfortunately -- was employed as a cleaner and, unfortunately, passed away during the Coronavirus pandemic and plaintiff represents that this individual was paid 800 a week, and plaintiff said he says he knows that because:  Luckmore was paid 800 a week.  I know this because Daniel Perez told me that Daniel's nephew, nicknamed Chapo, was paid 800 a week, the same as Luckmore.

        Which makes no sense to me because plaintiff is basically saying, I know this guy got 800 a week because somebody else got 800 a week, so therefore, this guy got 800 a week.

        So it's not clear to me that even with respect to

the three salaried people that he is alleging in his affidavit, and he needs a modest factual showing of a common -- of the fact that there are other people in the kitchen that were paid salary, not to mention when you're designing a collective and there are only three people in the kitchen as opposed to, you know, 19 other people that many of the majority of whom plaintiff doesn't know how they were paid, you can't fashion out, you know, which job titles, which employees were subject to the collective. Is it dishwashers? Well, it was not dishwashers; they were all paid hourly. I mean, is it cleaners? It is something else?

So, we believe at that collective certification is absolutely inappropriate in this case for these reasons. You can't have a collective where your guy was paid a salary so, you know, just because everybody gets paid overtime, there's an unlawful policy. The failure to payee overtime is the effect. The policy is what the employer did to not pay overtime. In plaintiff's case, he was classified as exempt.

With respect to everybody else, plaintiff appears to be alleging straight-rate, you know, no overtime. So that means half-rate for overtime exposure. That's entirely different. And for those reasons we believe collective certification is inappropriate; notwithstanding everything I would say about the notice, the distribution plan, all this stuff. I don't want to waste the Court's time. I know you're

very busy.

THE COURT: I am not so busy, it's okay.

I will say this. First of all, the Second Circuit says I have to allow someone to make a motion if they want to make a motion. I cannot say to them, you are precluded from making this motion.

Mr. Schweitzer, I assume you want to rest on the papers you have submitted; is that right?

MR. SCHWEITZER: Yes, Your Honor.

THE COURT: Okay.

How long, Mr. Solomon, do you need to reply?

MR. SOLOMON: I would like, I'm just looking at the fact I have an arbitration on September 3rd, so I'm just looking at my calendar.

I'd like three weeks, to September 10th, Judge, is that okay?

THE COURT: Yes, that is okay.

Then I will have until September 17th for the plaintiff's reply.

Then we will see where the case is. I believe in the interim, before I decide this motion, discovery is likely to close and I may or may not require you all to put in trial submissions to go forward with the trial. We will deal with that once I see what the motion opposition looks like and I will decide whether I want to make you do that now or later.

If I think after I read the opposition to the motion that I am likely to deny collective action, then I can assure you that we will go forward with trial preparations as to plaintiff's claim alone.

Is there anything else we need to cover?

MR. SCHWEITZER: Just to be clear, Your Honor, discovery is set to close by October 11th.

THE COURT: Okay, so maybe we will not be done.

It will be close because you have got to allow some time for me to decide the motion, too. But I will try to decide before October 11th so we do not have that problem.

MR. SOLOMON: I guess to clarify -- this is Aaron Solomon, Judge.

From defendants' perspective, we have no problem continuing plaintiff's individual claims and getting that done by October 11th. That would put us in a position to, you know, try plaintiff's individual claims if the motion for the collective action is denied. Obviously, if the motion for the collective action is granted, defendants are going to want to take discovery from the collective action members and plaintiff is going to want to take certain collective discovery that we believe is inappropriate before collective action is granted.

THE COURT: We will get into that when we get into that.

MR. SOLOMON: Understood, Your Honor.

THE COURT: Okay.

Thank you both nor calling in. We are adjourned.

ALL: Thank you, Your Honor.

(Matter concluded.)

oooOooo

*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*
/s/ Victoria A. Torres Butler August 24, 2020