# EXHIBIT C

J816DYNC

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 3    HSIEH LIANG YEH,
 4                 Plaintiff,
 5            v.                          18 CV 6018(PAE)
 6    HAN DYNASTY, INC., et al.,
 7                 Defendants.
 8    ------------------------------x
                                         New York, N.Y.
 9                                       August 1, 2019
                                         4:30 p.m.
10
      Before:
11
                     HON. PAUL A. ENGELMAYER,
12
                                         District Judge
13
                          APPEARANCES
14
      AARON B. SCHWEITZER
15         Attorney for Plaintiff
16    WILLIAM H. NG
           Attorney for Defendants
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          (Case called)

2          MR. SCHWEITZER:  Good afternoon, your Honor.  Aaron

3     Schweitzer for the plaintiff, Mr. Yeh.

4          THE COURT:  Good afternoon.

5          MR. NG:  Good afternoon, your Honor.  William Ng for

6     the defendants.

7          THE COURT:  Good afternoon.  You may be seated.

8          This conference has been on the calendar for some

9     time.  I set it in connection with the approval of the case

10     management plan back in February.  I set the conference

11     originally for two days ago, July the 29th, but I was recently

12     asked and happy to accommodate the request to advance it by two

13     days.  The purpose of conference as covered at the initial

14     conference is a postdiscovery conference to take up any

15     potential applications for leave to file summary judgment

16     motions or to alternatively to set a schedule for trial.

17          In reviewing the submission that was made just a few

18     days ago, I noted there seems to be a bit of confusion here.

19     The case management plan provided for the end of fact discovery

20     on June the 28th.  Judge Pitman in his order on July 3rd

21     allowed discovery to continue to July 12th for the single

22     purpose of permitting the deposition of the plaintiff.  I am

23     unable to find on the record any application to me or to Judge

24     Pitman to authorize any otherwise discovery to be taken out of

25     time.  From my perspective discovery is closed and we're now

```
 1    moving forward in the case.

 2              Plaintiff, there seems to be some attempt in the

 3    letter that you submitted to arrogate to yourself the right to

 4    simply take discovery out of time, but has any court authorized

 5    that?

 6              MR. SCHWEITZER:  Prior to making the application

 7    before your Honor, we were trying to resolve the issue of

 8    getting a discovery extension --

 9              THE COURT:  Answer my question.  Discovery ended

10    June 28th.  Apart from the application to Judge Pitman with

11    respect to the plaintiff's deposition, was any application made

12    to any judge to extend discovery past June the 28th?

13              MR. SCHWEITZER:  No, your Honor.

14              THE COURT:  That answers the question, doesn't it?

15              It is not the wild west.  You cannot just decide you

16    are going to take discovery out of time.  This conference is

17    here as a postdiscovery conference to discuss summary judgment

18    motion had someone written a premotion letter.  Nobody did

19    that.  So it is to set a trial date.  Discovery is over.  I

20    just don't understand what you have in mind here.

21              MR. SCHWEITZER:  The only additional discovery we

22    would be seeking is the depositions of 30(b)(6) witnesses of

23    the corporation.

24              THE COURT:  Right.  You had four months to do that, or

25    you had the opportunity within the discovery period to seek an
```

J816DYNC

```
 1    extension for that.  I realize you may be standing in for
 2    Mr. Troy, but nobody sought permission for that.  The answer is
 3    no.  If that had mattered to you, you would have sought that
 4    during the discovery period.  This is the Southern District of
 5    New York.
 6              MR. SCHWEITZER:  Understood.
 7              THE COURT:  Let me sort of take stock where we are.
 8    We're done with discovery.  If there are outstanding
 9    photocopying to be done, I am not getting in the way of that
10    being turned over, but to say the only discovery that remains
11    to be done is deposition discovery is facetious.
12              How many depositions have you taken so far in this
13    case?
14              MR. SCHWEITZER:  We took one and the other side took
15    one.
16              THE COURT:  How many depositions are you saying are
17    just remaining?
18              MR. SCHWEITZER:  We had originally noticed depositions
19    for the individual defendant as well as four 30(b)(6).  During
20    the deposition during of the defendant, she had identified a
21    number of people who may or may not have knowledge.  We had
22    sought to -- we had given the defense counsel a request that
23    they be identified fully.  That was on -- that has not been
24    responded to.
25              THE COURT:  Look, all I can say is my individual rules
```

J816DYNC

```
 1   provide a mechanism for resolving discovery disputes.  If you
 2   felt within the discovery period that something you were
 3   seeking was not being heeded, you knew to go to me or you knew
 4   to go to Judge Pitman as in fact the defense did with respect
 5   to the deposition of the plaintiff.  Either you took one
 6   deposition and you now would like to take more, the deadline
 7   past.  I regret to say this but deadlines matter.  You need to
 8   play within the rules.
 9               MR. SCHWEITZER:  I understand, Judge.  We had tried to
10   resolved it amicably and failed.
11               THE COURT:  Do you understand that if you actually
12   envisioned that discovery was a rolling process, the whole
13   purpose for this conference would have been moot.  The purpose
14   of the conference as I covered at the initial conference is as
15   a postdiscovery case management conference either to take up
16   anticipated summary judgment motions or to discuss trial.  If
17   you really were still in progress in the middle of discovery,
18   the purpose for this conference would be unattainable.
19               MR. SCHWEITZER:  Understood, your Honor.
20               THE COURT:  As it happens, I understand that there
21   seem to be some disputes among other matters, but the purpose
22   of the conference was for the reason I stated.  You had no
23   business just sort of asking me to check in with you in the
24   middle of what you thought was discovery process outside the
25   deadline without extending it.  Okay?
```

```
 1            MR. SCHWEITZER:  Yes.
 2            THE COURT:  How many plaintiffs are there in the case?
 3            MR. SCHWEITZER:  Single-plaintiff case.
 4            THE COURT:  I understand at some point you had in mind
 5   the idea of conditional certification.
 6            MR. SCHWEITZER:  There is currently a motion pending.
 7            THE COURT:  I am going to deny that motion.  The other
 8   workers need a lawyer who will be heeding deadlines and taking
 9   discovery.  I have to tell you that I have a fiduciary
10   obligation as a judge in any collective or conditional cert
11   context to make sure that the people who are being added into
12   this case are ably represented.  In this case counsel blew the
13   deadline for the 30(b)(6), didn't take the other depositions
14   and didn't heed the Court's rules.  These other employees might
15   or night not be better off going pro se, but they can do better
16   by way of law firm than this.  I am not going put my weight
17   behind certifying a collective where the premise is they are
18   going to be represented by a lawyer that misses central
19   deadlines.  I cannot do that.
20            So where we are at is we have Yeh v. Han Dynasty.  How
21   long will that case take to try?
22            MR. SCHWEITZER:  Probably no more than three days.
23            THE COURT:  Tell me what the evidence would be that
24   would compromise plaintiff's case and what you expect the
25   evidence to show.
```

1           MR. SCHWEITZER:  We expect the evidence to show that

2      the plaintiff was paid a flatly month rate and that he was not

3      subject to any overtime.

4           THE COURT:  Speak a little more loudly and slowly.

5           MR. SCHWEITZER:  I apologize, your Honor.  It hurts to

6      talk.

7           THE COURT:  Just feel free to sit down.  Get the

8      microphone closer to you and do what you can to speak.

9           MR. SCHWEITZER:  Thank you, your Honor.

10          the Evidence will show that the plaintiff was a --

11          THE COURT:  A little too close.  Move back.

12          MR. SCHWEITZER:  -- nonexempt manual worker, that he

13     was paid a flat monthly rate and was not paid overtime.

14          THE COURT:  What was the flat monthly rate?

15          MR. SCHWEITZER:  The flat monthly rate began at 3600 a

16     month.  It rose to 4,000 a month during his employment.

17          THE COURT:  Do you know what his hours were?

18          MR. SCHWEITZER:  Yes.  They were well in excess of 4C.

19     They were in the realm of high 50s.

20          THE COURT:  So in a particular month, he might have

21     worked 240 hours or so?

22          MR. SCHWEITZER:  Something like that.

23          THE COURT:  High 50s times four plus three other days?

24          MR. SCHWEITZER:  Yes.

25          THE COURT:  We're talking about 240 hours.  That would

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J816DYNC

1    be over the minimum wage; right?  In other words, this is an
2    overtime claim, not a minimum wage claim?
3              MR. SCHWEITZER:  That's correct, your Honor.
4              THE COURT:  There are circumstances under which an
5    employer can lawfully pay on a flat monthly basis without
6    running afoul of overtime.  Just refresh my memory.  I am aware
7    that there are certain hoops that the employer has to go
8    through for that to be lawful.  Just remind me what the legal
9    structure is when that sort of pay arrangement is used as
10   opposed to when the employer has to pay overtime and when they
11   don't.
12             MR. SCHWEITZER:  There was no notice given as to what
13   his wage rate would be in this case.  The defense in this case
14   is that the plaintiff was -- fell under the executive
15   exception.
16             THE COURT:  He what?
17             MR. SCHWEITZER:  Fell under the executive exemption.
18             THE COURT:  Fell what?
19             MR. SCHWEITZER:  Under the executive exemption.
20             THE COURT:  So the defense is that he was exempt?
21             MR. SCHWEITZER:  Yes.
22             THE COURT:  Was there a separate defense that assuming
23   no exemption the practice here was compliant for a nonexempt
24   employer?
25             MR. SCHWEITZER:  No, there is not.

1           THE COURT:  Remind me, though, in other words let's

2  simplify it and use the $4,000 because I have a feeling the

3  math will work a little bit better.  Let's suppose he is

4  working 240 hours a month and making $4,000 a month.  How would

5  one calculate from your perspective the overtime pay?  In other

6  words, you say there is no extra money being paid for the

7  overtime hours.  From your perspective how does one go about

8  calculating what the base rate is to calculate overtime?

9           MR. SCHWEITZER:  The base rate is calculated by

10  dividing the number of -- excuse me, by dividing the salary per

11  week by the number of hours that the salary was intended to

12  compensate.  Here, there was no agreement between the employer

13  and the employee that the salary was intended to compensate

14  anything other than 40 hours.  So we would divide the 4,000 a

15  month -- multiply the $4,000 a month divided by 50 to --

16           THE COURT:  4,000 a month?

17           MR. SCHWEITZER:  By 12.

18           THE COURT:  By 12.

19           MR. SCHWEITZER:  Because that is the number of months

20  in a year and divide that number by 52, the number of weeks in

21  a year to get the weekly --

22           THE COURT:  One moment.  You are saying we divide

23  4,000 per month by 12.  Why do you divide the monthly -- let me

24  get this right.  You multiply 4,000 by 12.  So that 48,000.

25  That is the amount of the he pay he would get in a year?

J816DYNC

```
 1          MR. SCHWEITZER:  Yes.  And then you would divide that
 2    by 52 to get a weekly rate because it is calculated on a work
 3    week.
 4          THE COURT:  A weekly week of 48,000 over 52 is going
 5    to wind up being something like $950 a week.
 6          MR. SCHWEITZER:  Something like that.
 7          THE COURT:  And then?
 8          MR. SCHWEITZER:  And then you would divide that number
 9    by 40 to get his hourly rate.
10          THE COURT:  That is going to wind up being about $44
11    an hour.
12          MR. SCHWEITZER:  Yes.
13          THE COURT:  I am trying to ballpark the math.  You
14    would figure out if he were worked about 15 to 20 hours a week
15    overtime, he would be entitled to --
16          MR. SCHWEITZER:  The hourly rate times 1.5 times that
17    number of hours.
18          THE COURT:  The damages would in that circumstance in
19    a week in which he worked 55 hours he would be entitled to 15
20    hours times 36, not 15 hours times 12?
21          MR. SCHWEITZER:  Yes.
22          THE COURT:  And the times 12 would be if this were a
23    fluctuating work-week situation and those preconditions are not
24    here.
25          MR. SCHWEITZER:  That's correct.
```

J816DYNC

```
 1              THE COURT:  I understand that is the theory of
 2   damages.  How does the record reflect that your client worked
 3   Han Dynast?
 4              MR. SCHWEITZER:  He worked from before the limitations
 5   period for the FLSA, but during the limitations period he
 6   worked from 2015 on until 2017.
 7              THE COURT:  Is this also brought under New York Labor
 8   Law?
 9              MR. SCHWEITZER:  It is under the New York Labor Law.
10              THE COURT:  What is the limitations period there?
11              MR. SCHWEITZER:  That would be six years.
12              THE COURT:  Putting aside whether it is the FLSA or
13   New York Labor Law, I take it the standard of recovery will be
14   the same?
15              MR. SCHWEITZER:  Yes.
16              THE COURT:  So how far back do we go under New York
17   labor law?  Is it the same?  I remember it as being different
18   but also different if you have a claim of a willful violation.
19   I don't know if that is alleged here.
20              MR. SCHWEITZER:  The difference in time for willful
21   violations under the FLSA.
22              THE COURT:  Difference?
23              MR. SCHWEITZER:  It is under the FLSA.  It goes from a
24   two-year statute of limitations to three years for willful
25   violation.  New York Labor Law is always a six-year statute of
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  limitations.

2          THE COURT:  Why is your focus on the FLSA?  Doesn't

3  your client stand to recover more if you use the New York Labor

4  Law measure?

5          MR. SCHWEITZER:  Yes, he does.  No, I didn't have any

6  particular reason for focusing on the FLSA.

7          THE COURT:  In other words, does the FLSA give your

8  client anything that the New York Labor Law doesn't give him?

9          MR. SCHWEITZER:  No.

10          THE COURT:  SO from your perspective, you can reach

11  back -- when does your client's employment begin?  You said

12  before the FLSA, but it seems to me that if you are trying to

13  actually maximize your client's recovery here, you will be

14  looking at the New York Labor Law.

15          MR. SCHWEITZER:  That's true, your Honor.  I don't

16  remember his exact start time off the top of my head, but it

17  was about five years' worth of employment.

18          THE COURT:  When did your client cease employment?

19          MR. SCHWEITZER:  In 2017.

20          THE COURT:  So it is some period of time going back

21  before 2015 to 2017?

22          MR. SCHWEITZER:  Yes.

23          THE COURT:  What did your client do for Han Dynast?

24          MR. SCHWEITZER:  He was a stir fry cook.  He phrased

25  it as fry wok.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              THE COURT:  He physically did cooking using a wok?

 2              MR. SCHWEITZER:  Yes.

 3              THE COURT:  Did he supervise anybody?

 4              MR. SCHWEITZER:  In a very, very limited way.  What

 5    happened was sometimes customers would complain that a dish

 6    that somebody else cooked was not up their standard or liking.

 7    He would instruct them how to correct their mistake.  That

 8    happened from time to time.  It didn't happen often.  It was

 9    certainly not his primary duty to do that.  It just happened

10    that he did sometimes.

11              THE COURT:  What evidence has been adduced about your

12    client's duties?  You have your client's testimony?

13              MR. SCHWEITZER:  His testimony and the employer's

14    testimony as well.

15              THE COURT:  Who is the employer?

16              MR. SCHWEITZER:  The employer who was deposed was Lulu

17    Chen Chiang.

18              THE COURT:  That person's role was what when you say

19    employer?

20              MR. SCHWEITZER:  That person was a manager at the Han

21    Dynast Pennsylvania location.

22              THE COURT:  I remember having written a decision on

23    this earlier.  Remind me at what locations Mr. Yeh, who is the

24    only plaintiff, worked?

25              MR. SCHWEITZER:  He was in Pennsylvania.  I think it
```

1  was the Exton location and he was in New York at the Upper West

2  Side location.

3          THE COURT:  Pennsylvania and New York.  Just those

4  two?

5          MR. SCHWEITZER:  Yes.

6          THE COURT:  What years was he in New York?

7          MR. SCHWEITZER:  He was in New York towards the very

8  end of his employment.  I believe 2017.

9          THE COURT:  Maybe that answers a question in the way

10  that was not made clear earlier.  Does he have any basis for

11  suing under New York Labor Law for violations in Pennsylvania?

12          MR. SCHWEITZER:  No.

13          THE COURT:  So this case is not brought under

14  Pennsylvania Labor Law: right?

15          MR. SCHWEITZER:  Yes, it is.  It is brought under

16  Pennsylvania and New York and FLSA.  The statute of

17  limitations --

18          THE COURT:  I think I need a little better help from

19  you.  Let's go back to the statute of limitations issue.

20          What is the statute of limitations under Pennsylvania

21  Labor Law?

22          MR. SCHWEITZER:  Three years.

23          THE COURT:  All right.  In new York he only worked at

24  the tail end?

25          MR. SCHWEITZER:  That's right.

```
 1              THE COURT:  Why did you tell me that the New York
 2   Labor Law would allow -- I asked you this question neutrally —
 3   why did you suggest to me that the New York Labor Law would
 4   allow him to reach back if in fact he only worked in New York
 5   the tail end of that period?
 6              MR. SCHWEITZER:  I misremembered.  I apologize.
 7              THE COURT:  Have you had any settlement discussions
 8   with the defense?
 9              MR. SCHWEITZER:  No.
10              MR. NG:  Your Honor, may I be heard on that?
11              THE COURT:  Who spoke?
12              MR. NG:  William Ng.
13              THE COURT:  Let turn to you, Mr. Ng.
14              Go ahead.  What did you have to say?
15              MR. NG:  Your Honor, first a couple things.  Your
16   Honor, the defendants had intended to move for summary judgment
17   in this case.
18              THE COURT:  Well, you blew the deadline, too.  That
19   was the purpose of this conference.  Were you here at the
20   initial conference?
21              MR. NG:  Yes, your Honor.
22              THE COURT:  Do you remember my saying that two weeks
23   before this conference you were to submit a three-page letter
24   previewing any motion for summary judgment?
25              MR. NG:  Your Honor, I am sure that is what you said.
```

1    THE COURT:  Right.  What was your reason for not doing

2    that?

3    MR. NG:  Your Honor, there is no reason.  We submitted

4    a status report and we are trying to address all the issues and

5    it was anticipated to be discussed during today's conference.

6    THE COURT:  If you are going to move for summary

7    judgment, why shouldn't I reopen fact discovery if you are both

8    blowing the deadlines?  Why shouldn't he get his depositions?

9    MR. NG:  Your Honor, then we'll proceed with trial.

10   THE COURT:  The problem is that neither of you is

11   taking the rules here seriously.  I am kind of not really sure

12   what to say.

13   MR. NG:  I understand, your Honor.  I also wanted to

14   address when you asked counsel if we had settlement

15   discussions.  Pursuant to your case management plan, Mr. Yam

16   from my office and Mr. Dong from Mr. Troy's office did have

17   that one-hour discussion pursuant to your case --

18   THE COURT:  I am sorry.  Mr. Dong is the one who was

19   just admitted to the bar?

20   MR. NG:  I believe so, your Honor.  Again, we didn't

21   know that at the time, though.

22   THE COURT:  Look, when did you have that discussion?

23   MR. NG:  They had it following the deposition of the

24   individual defendant.

25   THE COURT:  When was that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1          MR. NG:  July 23rd.

 2          THE COURT:  Wait.  Sorry.  Who extended the depo

 3     deadline for the individual defendant to occur on July 23rd?

 4          MR. NG:  No one, your Honor.  We voluntarily produced

 5     him.  We were under no obligation to do so, but we did do so,

 6     your Honor.

 7          THE COURT:  Were there dates set for the other two

 8     defense witnesses' depos?

 9          MR. NG:  We did not come to an agreement and we told

10     them that we took the position that discovery was closed.  We

11     tried to work it out, but we could not.

12          THE COURT:  You took the position that discovery was

13     closed but you produced your other defendant on July 23rd.

14          MR. NG:  Yes, your Honor.  Again, we were just trying

15     to be -- you know, in anticipation of this conference to try to

16     be as reasonable and pragmatic as we could.

17          THE COURT:  Anticipation of this conference.  The

18     purpose of the conference, I mean, neither of you seem to have

19     given any thought to the purpose of the conference.  Plaintiff

20     sat on his rights to depose people.  You have some notion of

21     moving for summary judgment on some ground, but didn't comply

22     with my individual rules or my statement at the initial

23     conference about a premotion letter.

24          MR. NG:  I understand, your Honor.

25          THE COURT:  On what ground were you going to move for
```

1   summary judgment?

2            MR. NG:  On the ground that the plaintiff was a

3   salaried head chef during his time at the Exton location.

4            THE COURT:  What does the plaintiff say his

5   responsibilities were?

6            MR. NG:  That he managed and supervised more than two

7   people during this time.  He worked for approximately three

8   years in both the locations in Exton, Pennsylvania and I

9   believe for six weeks according to his testimony in the Upper

10  West Side.

11           THE COURT:  Are you confident that the plaintiff's

12  testimony taken on its own terms would unambiguously establish

13  the elements of that exemption?

14           MR. NG:  Yes, your Honor.  After our review of the --

15  we understand just from the review of the case law it may be

16  difficult, but in this particular situation he had a number of

17  missions which led us to believe that we might have a

18  sufficient shot.

19           THE COURT:  Well, a sufficient shot.  I am not in the

20  time-wasting business.

21           MR. NG:  I understand that, too, your Honor.  I

22  understand that defendants didn't comply with your rule.  We

23  understand that.

24           THE COURT:  Look, I am also not going to waste my time

25  with a trial if you are confident that you have a winner on

J816DYNC

1    your hands.  Is that what you are representing to me?

2              MR. NG:  Yes, your Honor.

3              THE COURT:  I will give you a week to submit a summary

4    judgment motion.  I am doing this because frankly you

5    disrespected the rules here.  Your client should not pay the

6    price for that.  But if in fact there is a basis for summary

7    judgment, I will let you brief it.  We need to move this on.

8              MR. NG:  Your Honor, can we have two weeks, your

9    Honor?

10             THE COURT:  Because?

11             MR. NG:  Just because we need -- it's a large, large

12   record.

13             THE COURT:  A large record.  How many depositions,

14   two?

15             MR. NG:  It would be two but --

16             THE COURT:  What is the record?

17             MR. NG:  It would be the plaintiff's deposition as

18   well as the defendant's deposition.

19             THE COURT:  Have you gotten the deposition transcripts

20   from the court reporters yet?

21             MR. NG:  Only for the plaintiff, not for the defense.

22             THE COURT:  When are you likely to get that

23   transcript?

24             MR. NG:  When we would receive it from plaintiff's

25   counsel or we can order our own copy.

1          THE COURT:  Plaintiff, do you have a copy of that

2    transcript yet?

3          MR. SCHWEITZER:  That transcript has -- that

4    deposition took place last week.

5          THE COURT:  I cannot hear mumbling.  I need you to be

6    clear.

7          Do you have a copy of the transcript?

8          MR. SCHWEITZER:  That deposition take place on July

9    23rd.  We don't have a transcript yet.  Furthermore, we have

10   requested a copy of the plaintiff's deposition transcript but

11   haven't received it.

12         THE COURT:  That's all fine.  That can be

13   accomplished.  If he has a copy of it, I can direct him, and I

14   am doing it now, to get it to you tonight.

15         Email it to him tonight.

16         MR. NG:  Correct, your Honor.

17         THE COURT:  The defendant's deposition, you are the

18   master of having taken that deposition.  When will you be

19   getting the transcript from the court reporter?

20         MR. SCHWEITZER:  We haven't gotten it from the court

21   reporter.  I anticipate within the next week or so.  That said,

22   it has been argued that the plaintiff's admission standing

23   alone suffice to get summary judgment.

24         THE COURT:  To get summary judgment or to deny summary

25   judgment?  You are not proposing to move for summary judgment?

```
 1        MR. SCHWEITZER:  No, we're not proposing to move for
 2   summary judgment.  I am saying that mr. Ng has represented to
 3   this Court that the plaintiff's admissions are sufficient for
 4   his motion.
 5        THE COURT:  Right.  The issue is whether there is a
 6   material dispute on the facts.  The evidence has to be viewed
 7   in the light most favorable to the nonmovant.  If he is moving
 8   for summary judgment on the grounds that the undisputed facts
 9   establish that this exception applies, it is likely that a
10   central issue is going to be what your client has to say about
11   that.  I asked him therefore whether your client's deposition
12   testimony in his view would essentially establish the elements
13   of that exemption.  He says yes and you say no.
14        What is it about your client's testimony -- just give
15   me a quick synopsis -- that if credited would undermine a claim
16   that the executive exemption applies?
17        MR. SCHWEITZER:  My client has described his primary
18   job duty as being cooking.  He described any other duties as
19   being exceptional or rare.  He denied flatout having the power
20   to hire or fire anybody.  He denied having any opinions on who
21   to hire and fire.  That he may have, that they were credited or
22   they were respected.  He doesn't fall within the executive
23   exemption.
24        THE COURT:  As to the factual propositions that Mr.
25   Schweitzer just recited, Mr. Ng, he is accurate or inaccurate
```

1  in summarizing those aspects of his client's testimony?

2  MR. NG:  We believe he is inaccurate.

3  THE COURT:  You believe that the transcript will

4  demonstrate that Mr. Schweitzer misdescribed those aspects of

5  the testimony?

6  MR. NG:  That's correct, your Honor.

7  THE COURT:  What are the things that the plaintiff

8  said?  Put aside what your defense witness said or undeposed

9  employees would say.  What is it that the plaintiff said that

10  you believe will establish the executive exemption.

11  MR. NG:  Mr. Yeh was hired as initially the deputy

12  head chef where he was in charge of four people.  The head chef

13  left within a matter of weeks.  He became the head chef.  He

14  had the keys to the restaurant.  He directed not only the two

15  other chefs or three other chefs there.  He directed the

16  dishwasher.

17  In addition, the mere fact that he was cooking does

18  not preclude the exemption.  He also made over the salary

19  threshold for Pennsylvania.  He had recommendations to hire and

20  fire people.  He identified those individuals.  He hired folks

21  from the temporary staffing agency that the restaurant used.

22  THE COURT:  Does he admit all these things?

23  MR. NG:  Yes, your Honor.

24  THE COURT:  Look, plaintiff, I want you to get that

25  deposition transcript from the court reporter right away.

```
 1              MR. SCHWEITZER:  Yes, your Honor.
 2              THE COURT:  Look, Mr. Ng, I will give you two weeks
 3    from tomorrow -- today is August 1 -- August 16th to file your
 4    motion for summary judgment.  I understand it is going to be
 5    limited to the ground that the exemption applies?
 6              MR. NG:  That is correct.
 7              THE COURT:  Not any other ground?
 8              MR. NG:  No.
 9              THE COURT:  Mr. Schweitzer, how long do you want for
10    your opposition?
11              MR. SCHWEITZER:  Two weeks.
12              THE COURT:  August 30th.
13              Mr. Ng, do you have Labor Day vacation plans?
14              MR. NG:  Yes, your Honor.
15              THE COURT:  I will give you two weeks.  I will give
16    you until September 12th.  August 16th, August 30th,
17    September 12th for the briefing.
18              I will then resolve the summary judgment motions.  And
19    if the summary motion is granted, that would appear to dispose
20    of the case.  If the summary judgment motion is denied, the
21    decision I expect will then direct the submission of a joint
22    pretrial order promptly and get us ready for trial.
23              Let me ask you, Mr. Schweitzer, is there any value to
24    having settlement discussions while the summary judgment motion
25    is underway or ought that wait until after?
```

1          MR. SCHWEITZER:  I think there would be value in

2     having settlement discussions while it is underway.

3          MR. NG:  We're always interested in settlement

4     discussions.

5          THE COURT:  Mr. Ng, the scale of this case, given

6     plaintiff's gross inattention to discovery obligations, is

7     going to be limited to Mr. Yeh.  If someone wants to bring

8     suit, they are at liberty to do so.  I cannot saddle the other

9     employees with this level of discovery inattention.  Under the

10    circumstances here, you have been given a gift insofar as your

11    adversary has effectively forfeited the right to claim

12    capability of representing a broader class.  There would be

13    much wisdom in my judgment in your considering at this point

14    whether to seriously engage in settlement discussions.

15         I have no idea whether or not the executive exemption

16    applies.  I am assuming as an officer of the court that you

17    believe that the plaintiff's deposition not only supports your

18    claim but in a way that leaves no material disputes of fact.

19    Those exemptions are hard to prove on summary judgment.  I have

20    had other exemptions litigated before.  That's an uphill climb.

21    I am going to let you try to do it, but my strong advice is to

22    discuss settling the case sooner rather than later --

23    presumably next week.

24         Will you agree to do that?

25         MR. NG:  Yes, your Honor.  Just so your Honor knows,

J816DYNC

1    we did offer of judgment and then again we spent an hour with

2    opposing counsel to try to settle.

3           THE COURT:  Look, I want, Mr. Ng, you personally to

4    speak with Mr. Schweitzer personally next week about

5    settlement.  I don't want somebody else there.  I want somebody

6    who has got familiarity with the case and the experience.

7           Mr. Schweitzer, I gather you have more experience than

8    the newcomer your firm?

9           MR. SCHWEITZER:  Yes, your Honor.

10          THE COURT:  Look, I want the two of you to take

11   ownership of this.  It is my hope together you will find a way

12   to resolve this matter.  If it is not resolved, I will resolve

13   summary judgment as promptly as I can.

14          MR. NG:  Thank you, your Honor.

15          THE COURT:  Look, there is an outstanding issue about

16   the various requests for sanctions and alike pursued by defense

17   against the plaintiff.  I am going to deny that in an exercise

18   of discretion.  I think plaintiffs could have handled the issue

19   better with respect to the new employee.  The short answer is

20   courts are -- and I certainly am -- willing to admit somebody

21   pro hac vice under an appropriate showing of qualification.  It

22   looks to me as if what happened was you were short-handed and

23   found somebody who had just pass the bar to appear.

24          Has that person been admitted in New York?

25          MR. SCHWEITZER:  His application is pending.  We

 1    expect him to be admitted in New York within the month.

 2              THE COURT:  I am not going to saddle you or that young

 3    lawyer with any unfortunate mark here.  In an exercise of

 4    discretion I am not doing anything about that, but I would urge

 5    to you to be more punctilious in the future.

 6              MR. SCHWEITZER:  Yes, your Honor.

 7              THE COURT:  I think there is also to be candid a

 8    substantial question here about whether that person ought to

 9    have been the one defending your client's deposition.  That

10    person I take it hadn't been actively working on the case but

11    was called in because the people who are familiar with the case

12    were busy; right?

13              MR. SCHWEITZER:  Inescapable obligations, yes, your

14    Honor.

15              THE COURT:  I used to be a practicing lawyer.  A

16    corporate client would never put up with sending in somebody

17    who was fresh off taking the bar and who didn't have previous

18    familiarity with the case to defend the deposition of the named

19    plaintiff.  It would be unthinkable if you had a consumer of

20    legal services.  They would be appalled by that.  You need to

21    treat your individual clients with the same level of dignity

22    and respect as somebody who is a more serious consumer.

23              Just because Mr. Yeh presumably has limited experience

24    dealing with lawyers, doesn't mean that you can send somebody

25    to defend his deposition who is unfamiliar with the case, new

1    to the case, new to the practice.  It is just wrong.  If I were

2    Mystery A and I were a sophisticated consumer, I would be

3    distressed that happened.  You need to do better.

4           That is one of the other data points that leads me to

5    in an exercise of discretion tell you that I cannot grant the

6    motion for conditional certification.  I am not going to create

7    a written decision about it.  It seems to me under these

8    circumstances that I am seeing here, I cannot in good conscious

9    saddle other potential members of the Han Dynasty restaurant

10   with the representation by the Troy Law Firm.  There has been

11   inattention to discovery deadlines.  There has been a

12   forfeiting of the ability to take depositions of what may be

13   important defense witnesses and there is the sending out to the

14   named plaintiffs the one plaintiff's deposition somebody with

15   unfamiliarity with the case who is green in the practice of

16   law.

17          Under those circumstances, I would be ill serving the

18   interests of the hypothetical other plaintiffs to appoint the

19   Troy Law Firm as counsel for such people.  They are at liberty

20   to pursue their own claims.  If they choose to hire you, I

21   cannot stop them; but I am not going to facilitate that process

22   because what I am seeing here is disquieting.

23          MR. SCHWEITZER:  Understood.

24          THE COURT:  I will issue an order that simply denies

25   the reasons stated on the record and leaves it at that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J816DYNC

```
 1              MR. SCHWEITZER:  I appreciate that, your Honor.

 2              THE COURT:  I don't think there are any other disputes

 3      that need to get resolved.  I have taken care of the issue

 4      about the junior lawyer.  The discovery disputes are muted by

 5      the fact that the discovery deadline lapsed.  I have set a

 6      schedule for summary judgment.

 7              Is there anything else for me to address?

 8              MR. SCHWEITZER:  No, your Honor.

 9              THE COURT:  Defense?

10              MR. NG:  No, your Honor.

11              THE COURT:  In the next week I want the two of you to

12      talk settlement.  I want a joint letter from you due by the end

13      of next Friday confirming that you have spoken about

14      settlement.  It is my hope you will reach an agreement.

15              Mr. Ng, I need to tell you that in the event that your

16      summary judgment motion were unsuccessful, you are then dealing

17      with a very real trial here.  Trials are expensive and the

18      numbers that Mr. Schweitzer is speaking about are formidable

19      even within a time period framed by the Pennsylvania statute of

20      limitations, which appears to be the one applicable to the

21      earlier time period.  We're talking about an employee who has a

22      decidedly higher than usual base wage rate for people in the

23      food services industry.  It may or may not be that is light

24      support for a claim of the executive exception.  It is not that

25      high of a rate so I don't know that is the case.  Looking at
```

J816DYNC

1  the numbers that have been proffered to me if Mr. Schweitzer is

2  correct, there are formidable damages here relative to single

3  employee FLSA New York Labor Law restaurant cases.  Your client

4  would do very well if given the prospect of a trial here and

5  given the implications of those numbers to take settlement

6  discussions very seriously and approach them in a flexible

7  spirit.

8         Understood?

9         MR. NG:  Understood, your Honor.

10         THE COURT:  Thank you.  We stand adjourned.

11                           o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25