# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOSE PANORA,                                                    Case No.: 19-cv-7267 (BMC)
*on his own behalf and on behalf of others similarly*
*situated,*
                                                               **DEFENDANTS, DEENORA**
                                                               **CORP d/b/a DEE'S, DEE'S**
                              Plaintiff,                        **BRICK OVEN PIZZA, INC.**
                                                               **d/b/a DEE'S, and DEERAN**
                                                               **ARABIAN a/k/a DEE**
                -against-                                       **ARABIAN'S, FIRST**
                                                               **REQUEST FOR THE**
DEENORA CORP                                                    **PRODUCTION OF**
         d/b/a Dee's;                                          **DOCUMENTS TO**
DEE'S BRICK OVEN PIZZA, INC                                     **PLAINTIFF JOSE PANORA**
         d/b/a Dee's; and
DEERAN ARABIAN a/k/a Dee Arabian

                              Defendants.
------------------------------------------------------------------X

Pursuant to Federal Rule of Civil Procedure 34 and Local Rule 26.3, Defendants,

DEENORA CORP d/b/a Dee's ("Dee's Corp"), DEE'S BRICK OVEN PIZZA, INC. d/b/a Dee's

("Dee's"), and DEERAN ARABIAN a/k/a Dee Arabian (Dee's Corp, Dee's, and Deeran Arabian

collectively referred to hereinafter as "Defendants"), by their attorneys, Kaufman Dolowich &

Voluck LLP, request that Plaintiff, JOSE PANORA ("Plaintiff"), produce for inspection the

following requested documents at the offices of Defendants' counsel within thirty (30) days after

receipt hereof.

## **INSTRUCTIONS**

Documents should be produced as they are kept in the usual course of business and shall

be organized and labeled to correspond with the itemized requests. Documents responsive to these

requests include all documents as defined and/or described below in the possession, custody or

control of Plaintiff, his agents, and/or representatives and all persons acting for Plaintiff.

1

The Document Requests below are continuing in nature to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

With respect to any document for which Plaintiff claims a privilege, identify the document, state the privilege involved, and state the factual and legal basis for the claimed privilege. Identify the document by submitting a written statement which:

(a)     describes the type of document (e.g.: letter, memo);

(b)     identifies the author;

(c)     specifies the date written and originated;

(d)     identifies each person to whom the original or a copy was addressed or delivered; and

(e)     identifies every other person who has ever had possession of the document.

If any requested document was ever in the possession, custody or control of Plaintiff and has been lost or destroyed, Plaintiff is requested to submit in lieu of each such document a written statement which:

(a)     describes in detail the nature of the document and its contents;

(b)     identifies the person who prepared or authored the document and, if applicable, the person or persons to whom the document was sent;

(c)     specifies the date on which the document was prepared or transmitted; and

(d)     specifies, if possible, the date on which the document was lost or destroyed, and, if destroyed, the conditions of and reasons for such destruction, and the persons requesting and performing the destruction.

## DEFINITIONS

As used herein, the following terms shall have the meanings indicated below:

(a)     "Document" includes, without limiting the generality of its meaning, all original (or copies where originals are unavailable) and non-identical copies (where different from originals) of any electronic, printed, typewritten, handwritten or otherwise recorded or graphic matter of whatever character, however produced or reproduced, whether or not now in existence, including but not limited to, contracts, files, agreements, administrative complaints, agency forms or questionnaires, correspondence telegrams, notes or sound recordings of any type of conversation, meeting or conference, memoranda, graphs, charts, inter-office communications, jottings, announcements, depositions, affidavits, photographs, motion pictures, studies, analyses, reports, summaries and results of investigations and tests, reviews, statistical records, ledgers, books of account, vouchers, bank checks, handbooks, manuals, bank statements, audit reports and other statements, invoices, receipts, confirmations, computer-developed, stored or produced data, notebooks, desk calendars, appointment books, newspaper articles, diaries or papers similar to any of the foregoing, however entitled, denominated or described. The term "Document" also includes all electronic communications including, but not limited to, e-mails, text messages, messages on any social media platform (i.e. Facebook, Twitter, LinkedIn, Pinterest, Mylige, Instagram, Reunion, YouTube, Foursquare, Tumblr, Reddit, StumbleUpon, Caffine, Lasso, House Party, and Tik Tok, etc.), social media posts, online comments, likes, and blogs.

(b)     "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address and the present or last known place of employment, and to state each of the facts or information that he or she possesses regarding any allegation contained in the Complaint or any of the claims asserted by Plaintiff herein.

(c)      "Identify," with respect to documents, means to give, to the extent known, the (i) type of document; (ii) general description of its contents; (iii) date of the document; (iv) author(s), addressee(s) and recipient(s); (v) current custodian and/or location of the document; and (vi) to provide a copy of the document.

(d)      The term "person," as used herein, shall be deemed to include, in the plural as well as singular, any natural person, firm, association, partnership, joint venture, corporation, or other entity, unless the context otherwise indicates.

(e)      The term "concerning" means relating to, referring to, describing, evidencing, supporting, constituting, pertaining to, constituting, comprising, containing, setting forth, showing, disclosing or describing, directly, tangentially or indirectly.

(f)      The term "communication" as used herein, shall mean any oral, written or matter of transmission or transfer of information.

(g)      "Identify" with respect to communications means to set forth: (i) the date of the communication; (ii) the place of the communication; (iii) the identity of the person(s) who made the communication; (iv) whether the communication was verbal, written, or transmitted in another means; (v) the substance of the communication; (vi) the identity of the person(s) to whom communication was made; (vii) the identity of all persons present or witnesses to the communication; (viii) the identity and description of all documents concerning the communication.

(h)      The terms "and/or" and "any and all" shall be read conjunctively or disjunctively as necessary to make the request and your response as inclusive as possible rather than as exclusive as possible.

(i)     "Complaint" means the Collective/Class Action Complaint filed in this action on December 29, 2019.

(j)     "Plaintiff" means Jose Panora and his representatives, employees, agents, brokers, servants, and/or attorneys, and any other individuals who have acted on his behalf.

(k)     "Defendants" means the named Defendants Deenora Corp d/b/a Dee's, Dee's Brick Oven Pizza, Inc. d/b/a Dee's, and Deeran Arabian a/k/a Dee Arabian, identified in the caption of the Complaint.

(l)     "Dee's Corp" means Deenora Corp d/b/a Dee's.

(m)     "Dee's" means Dee's Brick Oven Pizza, Inc. d/b/a Dee's.

(n)     "Defendants' Summary Judgment Motion" means Defendants Motion for Summary Judgment and all papers supporting same including documents, declarations, and affidavits associated with the following docket entries: Docket Entry Nos.: 22, 23, 24, 25, 33.

(o) "Dee's Team Member Chat" means a certain group text message chain a portion of which was filed on the docket as Docket Entry No: 30-3.

(p) "Pre-Assigned Schedules" means certain documents akin to those referred to in page 6 of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. *See Dkt.* # 30, at pg. 6.

(q) "Plaintiff's Affidavit" means the document entitled "Affidavit of Jose Panora in Opposition to Defendants' Motion for Summary Judgment" filed on the docket as Docket Entry No.: 30-2.

(r)     Unless otherwise indicated, the applicable time period for all requests is from December 29, 2013 through present.

## DOCUMENTS REQUESTED

1.      Produce each and every document which reflects the dates of Plaintiff's alleged employment with Defendants.

2.      Produce each and every document which sets forth the number of hours actually worked by Plaintiff during any day and/or week that he was allegedly employed by Defendants.

3.      Produce each and every document concerning the rate(s) of pay paid to Plaintiff while allegedly employed by Defendants.

4.      Produce each and every document reflecting all compensation paid to Plaintiff by any of the Defendants, including but not limited to, all paychecks, payroll records, pay stubs, cash receipts, pay check receipts, and pay summaries.

5.      Produce each and every document reflecting all compensation earned by Plaintiff and/or allegedly owed to Plaintiff as a result of any work performed on the behalf of Defendants.

6.      Produce each and every document identifying the job title and/or any of the job duties and responsibilities Plaintiff performed as an alleged employee of Defendants, including but not limited to, all written job descriptions.

7.      Produce each and every document used by Plaintiff to keep track of his hours allegedly worked for Defendants.

8.      Produce each and every document which reflects any of the dates on which Plaintiff allegedly performed work for Defendants.

9.      Produce each and every document, including all e-mails and text messages, submitted by Plaintiff to any of the Defendants concerning Plaintiff's application(s) for employment at Dee's Corp and/or Dee's, including, but not limited to Plaintiff's resume, employment application, and/or letter(s) of reference.

10.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, concerning Plaintiff's allegations, including but not limited to, Plaintiff's hours worked, absences, compensation received and/or compensation allegedly owed during Plaintiff's alleged employment with Defendants, that was sent and/or received between Plaintiff and Deeran Arabian, and/or any employee or representative of any of the Defendants.

11.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, concerning Plaintiff's allegations, including but not limited to, Plaintiff's hours worked, absences, compensation received and/or compensation allegedly owed during Plaintiff's alleged employment with Defendants, that was sent and/or received between Plaintiff and any person other than Plaintiff's counsel.

12.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, concerning Plaintiff's duties and/or job responsibilities between Plaintiff and Defendants.

13.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, concerning Plaintiff's duties and/or job responsibilities between Plaintiff and any current or former employee of Defendants concerning Plaintiff's employment.

14.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, concerning Plaintiff's duties and/or job responsibilities between Plaintiff and any person other than Plaintiff's counsel.

15.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, between Plaintiff and any current or former employee of Defendants concerning Plaintiff's alleged employment with Defendants.

16.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, between Plaintiff and any person (other than Plaintiff's counsel) concerning Plaintiff's alleged employment with Defendants.

17.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, between Plaintiff and any current or former employee of Defendants concerning any of the allegations in the Complaint.

18.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, between Plaintiff and any person (other than Plaintiff's counsel) concerning any of the allegations in the Complaint.

19.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, between Plaintiff and any current or former employee of Defendants concerning any of the allegations in the Complaint.

20.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, between Plaintiff and any current or former employee of Defendants concerning any statement by Defendants made in Defendants' Summary Judgment Motion.

21.     Produce all communications, including but not limited to all letters, e-mails, and/or text messages, between Plaintiff and any person (other than Plaintiff's counsel) concerning any statement by Defendants made in Defendants' Summary Judgment Motion.

22.     Produce each and every document concerning any communications regarding Plaintiff's allegations set forth in the Complaint, including but not limited to, Plaintiff's hours worked, rate(s) of pay, compensation received, and/or compensation allegedly owed during and/or as a result of his alleged employment with Defendants.

23.     Produce each and every document concerning and/or identifying Plaintiff's work schedule during his alleged employment with Defendants.

24.     Produce each and every document concerning how and/or when Plaintiff was allegedly hired to work for Defendants.

25.     Produce each and every document concerning and/or evidencing the hours allegedly worked by Plaintiff for Defendants, including but not limited to, all time records, diaries, calendars, and work schedules.

26.     Produce each and every document concerning the time Plaintiff started and/or ended any shifts during his alleged employment with Defendants.

27.     Produce each and every document concerning any and all time off, which Plaintiff took during his alleged employment with Defendants, including but not limited to, documents addressing any of Plaintiff's vacations, personal days, sick days, and/or leaves of absence.

28.     Produce each and every document concerning any work performed by Plaintiff for any company or business other than Dee's Corp and Dee's at any time during the period in which Plaintiff was allegedly employed with Defendants.

29.     Produce each and every document that references any of the events and/or the subject-matter alleged in the Complaint, including but not limited to, personal diaries, logs, calendars, notebooks, e-mails, text messages, and/or other documents maintained by Plaintiff.

30.     Produce each and every document concerning the pay practices of any of the Defendants that are claimed to be unlawful.

31.     Produce each and every document signed or executed by Plaintiff which memorializes any compensation received by Plaintiff from any of the Defendants, any compensation allegedly owed to Plaintiff by any of the Defendants, any compensation promised

to Plaintiff by any of the Defendants, and/or the terms and conditions of Plaintiff's alleged employment with Defendants.

32.     Produce each and every recording and/or transcripts of any recording, of conversations in the possession of Plaintiff or his agents involving Plaintiff's alleged employment with Defendants.

33.     Produce each and every recording and/or transcripts of any recording, of conversations in the possession of Plaintiff or his agents concerning any of the events and/or the subject-matter alleged in the Complaint.

34.     Produce each and every document received by Plaintiff from any of the Defendants prior to his alleged commencement of employment with Defendants.

35.     Produce each and every document received by Plaintiff from any of the Defendants during Plaintiff's alleged employment with Defendants.

36.     Produce each and every document concerning any contract and/or written or oral agreement entered into between Plaintiff and any of the Defendants.

37.     Produce each and every document concerning Plaintiff's allegation that "[f]rom on or about January 01, 1995 to July 13, 2019, Plaintiff JOSE PANORA was employed by Defendants to work as a Chef for Defendants at Dee's located at 107-23 Metropolitan Avenue, Forest Hills, NY 11375," as alleged in Paragraph 33 in the Complaint.

38.     Produce each and every document concerning Plaintiff's allegation that "[f]rom in or around 2006 to April 10, 2018, Plaintiff JOSE PANORA's regular work schedule ran from:

     a.   11:00 to 22:00 from Tuesdays, Wednesdays, and Thursdays for eleven (11) hours a day for three (3) days and thirty three (33) hours per week; and

b.  11:00 to 23:00 on Friday and Saturday for twelve (12) hours a day for two (2) days

and twenty four (24) hours per week; and

c.  11:00 to 21:30 on Sundays for ten and a half (10.5) hours per week,"

as alleged in Paragraph 34 of the Complaint.

39.     Produce each and every document concerning Plaintiff's allegation that "[f]rom 2006 to April 10, 2018, Plaintiff JOSE PANORA worked for a total of sixty seven and a half (67.5) hours per week," as alleged in Paragraph 35 of the Complaint.

40.     Produce each and every document concerning Plaintiff's allegation that "from in or around April 11, 2018 to July 13, 2019, Plaintiff JOSE PANORA's regular work schedule ran from:

a.  11:00 to 22:00 from Tuesdays, Wednesdays, and Thursdays for eleven (11) hours

a day for three (3) days and thirty three (33) hours per week; and

b.  11:00 to 23:00 on Friday and Saturday for twelve (12) hours a day for two (2) days

and twenty four (24) hours per week,"

as alleged in Paragraph 36 of the Complaint.

41.     Produce each and every document concerning Plaintiff's allegation that "[f]rom April 11, 2018 to July 13, 2019, Plaintiff JOSE PANORA worked for a total of fifty six (56) hours per day for days when he worked five (5) days a week for 2/3 of the time," as alleged in Paragraph 37 of the Complaint.

42.     Produce each and every document concerning Plaintiff's allegation that "[f]rom April 11, 2018 to July 13, 2019, for roughly 1/3 of the time, however, Plaintiff JOSE PANORA would come in on Sundays to help out for an additional ten and a half (10.5) hours," as alleged in Paragraph 38 of the Complaint.

43.     Produce each and every document concerning Plaintiff's allegation that "[f]rom April 11, 2018 to July 13, 2019, on those weeks, Plaintiff JOSE PANORA would work for sixty seven and a half (67.5) hours per week," as alleged in Paragraph 39 of the Complaint.

44.     Produce each and every document concerning Plaintiff's allegation that "[f]for those weeks where Plaintiff JOSE PANORA worked six days instead of five days, Plaintiff JOSE PANORA was not paid any additional money," as alleged in Paragraph 40 of the Complaint.

45.     Produce each and every document concerning Plaintiff's allegation that "from roughly 2011 to April 09, 2018, Plaintiff JOSE PANORA was paid a at a flat weekly rate of One Thousand Three Hundred Dollars in check and cash, with One Thousand Dollars ($1000) in cash and Three Hundred Dollars ($300) in check," as alleged in Paragraph 41 of the Complaint.

46.     Produce each and every document concerning Plaintiff's allegation that "[f]rom roughly 2011 to 2015, JOSE PANORA received paystub which shows that he received a rate of Eighteen Dollars ($18) an hour for sixty six (66) hours for each week only," as alleged in Paragraph 43 of the Complaint.

47.     Produce each and every document concerning Plaintiff's allegation that "Plaintiff JOSE PANORA would receive Eighteen Dollars ($18) an hour for sixty six (66) hours and not any overtime, including for hours which he worked in excess of forty (40) hours per week," as alleged in Paragraph 44 of the Complaint.

48.     Produce each and every document concerning Plaintiff's allegation that "from 2015 to April 09, 2018, Plaintiff JOSE PANORA received paystubs that he was paid at a rate of Thirty Two Dollars and Seventy Five Cents ($32.75) for Forty hours only," as alleged in Paragraph 45 of the Complaint.

49.     Produce each and every document concerning Plaintiff's allegation that "Plaintiff continued to work sixty seven and a half (67.5) hours," as alleged in Paragraph 46 of the Complaint.

50.     Produce each and every document concerning Plaintiff's allegation that "Plaintiff JOSE PANORA's pay remained the same," as alleged in Paragraph 47 of the Complaint.

51.     Produce each and every document concerning Plaintiff's allegation that "from April 10, 2018 to July 13, 2019, Plaintiff JOSE PANORA was paid at a flat weekly rate of Nine Hundred Fifty Dollars ($950) in cash and Three Hundred Ninety Dollars ($390) in check," as alleged in Paragraph 48 of the Complaint.

52.     Produce each and every document concerning Plaintiff's allegation that "[a]t all relevant times, Plaintiff JOSE PANORA did not have a fixed time for lunch or for dinner," as alleged in Paragraph 49 of the Complaint.

53.     Produce each and every document concerning Plaintiff's allegation that "[a]t all relevant times, Plaintiff JOSE PANORA was not paid overtime pay for overtime work," as alleged in Paragraph 50 of the Complaint.

54.     Produce each and every document concerning Plaintiff's allegation that "[t]hroughout his employment, Plaintiff JOSE PANORA was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish Plaintiff's native language," as alleged in Paragraph 51 of the Complaint.

55.     Produce each and every document concerning Plaintiff's allegation that "[t]hroughout his employment, Plaintiff JOSE PANORA was not compensated at least one-and-

one half his promised hourly wages for all hours worked above forty (40) in each workweek," as alleged in Paragraph 52 of the Complaint.

56.     Produce each and every document concerning Plaintiff's allegation that "[t]hroughout his employment, Plaintiff JOSE PANORA was not compensated for New York's 'spread of hours' premium for shifts that lasted longer than ten (10) hours at his promised rate," as alleged in Paragraph 53 of the Complaint.

57.     Produce each and every posting by Plaintiff on Facebook, Twitter, LinkedIn, and/or any other social media website concerning:

    a.  Any of the Defendants;

    b.  The hours worked by Plaintiff during his alleged employment with Defendants;

    c.  Plaintiff's job duties and/or responsibilities while allegedly employed by Defendants;

    d.  Any compensation received by Plaintiff from any of the Defendants;

    e.  Any compensation allegedly owed to Plaintiff by any of the Defendants;

    f.  Any vacation or sick days taken by Plaintiff from work while allegedly employed by Defendants; and/or

    g.  Any other employment, work performed on an independent contractor basis, and/or classes held by Plaintiff at any time while allegedly employed by Defendants.

58.     Produce each and every wage statement, cash receipt, and/or wage notice received by Plaintiff during his alleged employment with Defendants.

59.     Produce each and every document filed by Plaintiff with any state or federal agency about any of the Defendants.

60.     Produce each and every document concerning the damages sought by Plaintiff in this action.

61.     Produce each and every document used to calculate any damages sought by Plaintiff in this action.

62.     Produce each and every document submitted by Plaintiff, his agents, or his representatives or any person acting on his behalf to any employee, agent, representative, supervisor, manager, director and/or principal of Dee's Corp and/or Dee's, and/or to any governmental body or agency, concerning any claims of unpaid compensation (including but not limited to overtime), failure to receive a wage notice, failure to receive a wage statement, alleged violations of the Fair Labor Standards Act, and/or alleged violations of the New York Labor Law, including but not limited to correspondence, memos and/or e-mails.

63.     Produce each and every affidavit drafted and signed by Plaintiff, his agents, or his representatives regarding Plaintiff's job duties, hours worked, and locations to which Plaintiff traveled while allegedly employed by Defendants.

64.     Produce each and every document concerning any complaint(s) made by Plaintiff concerning any unpaid compensation (including but not limited to overtime) that was allegedly not paid by any of the Defendants, any failure to receive a wage notice, any failure to receive a wage statement, and/or any other purported Fair Labor Standards Act and/or New York Labor Law violations.

65.     Produce each and every document which supports Plaintiff's allegation that he worked in excess of forty (40) hours per week as an alleged employee of Defendants. Plaintiff's response must include all diaries, time sheets, time records, calendars and/or schedules.

66.     Produce each and every document regarding instructions provided by Defendants to Plaintiff regarding the manner in which Plaintiff was to allegedly perform his duties for Defendants.

67.     Produce each and every handbook, policy and/or manual which Plaintiff received from Defendants.

68.     Produce each and every document concerning Plaintiff's performance as an alleged employee of Defendants, including, but not limited to, all performance reviews, warning letters and letters of praise.

69.     Produce each and every document concerning any other employment held or educational classes attended by Plaintiff while working for Defendants.  This request seeks documents including, but not limited to, those that concern any time worked and remuneration Plaintiff received from such other employment (i.e. time records, payroll records, W-2 statements).

70.     Produce each and every document identifying the cell phone number(s) used by Plaintiff during his employment and the wireless carrier(s) that provided cell phone service to Plaintiff during his employment.

71.     Produce a true and accurate copy of all work schedule(s) concerning Plaintiff's duties as an employee for Defendants.

72.     Produce any and all tangible items, including but not limited to drawings, videotapes, or audiotapes of any kind, which relate, in any way, to any allegation contained in the Complaint.

73.     Produce any and all tangible items, including but not limited to drawings, recordings videotapes or audiotapes of any kind, which relate, in any way, to Plaintiff's employment with the Defendants.

74.     Produce each and every document supporting any claim by Plaintiff that the alleged Fair Labor Standards Act ("FLSA") and/or New York State Labor Law ("NYLL") violations by Defendants were willful.

75.     Produce each and every document identifying and concerning the duration of Plaintiff's meal breaks and/or any breaks that Plaintiff took while performing services for Defendants.

76.     Produce each and every document identifying Plaintiff's current employer(s) (including, but not limited to, any and all pay stubs, wage statements, work schedules, and/or identifying tax forms).

77.     Produce all documents, correspondence, communications or other tangible items containing, referring to, or referencing any communications between Plaintiff and any non-party, other than her present counsel, about the subject matter of the Complaint.

78.     Produce all documents that Plaintiff contends constitute admissions by any party to this litigation.

79.     Produce all documents that Plaintiff contends constitute statements against interest in this litigation.

80.     Produce all documents that Plaintiff contends contain statements by any Defendant or any servant, member, officer, director, supervisor, employee, or agent of any Defendant.

81.     Produce all documents relating to any statement taken by you, in your possession, in the possession of any attorney, or in the possession of any other third party which refer or relate to the subject matter of this litigation.

82.     Produce all investigative reports obtained or prepared by Plaintiff or on Plaintiff's behalf in connection with the subject matter of this litigation.

83.     Produce any documents relating to any prior civil or criminal litigation in which Plaintiff has been involved as a plaintiff, defendant, or witness, including but not limited to, any civil charge filed with any state or federal government agency, any documents related to any criminal charges or traffic violations against Plaintiff, any restraining orders to which Plaintiff was either the party restrained or the party requiring the restraints, as well as any lawsuit, action, complaint or other litigated matter in which Plaintiff has been a party.

84.     Produce all W-2 and 1099 statements received by Plaintiff from any person or entity during his employment with Defendants.

85.     Produce all documents in Plaintiff's possession, custody, or control detailing any efforts by Plaintiff to obtain full or part-time employment or earn money, whether as an employee, owner or self-employed individual or in any other capacity, with  any person or entity during the period(s) of Plaintiff's employment with Defendants, including but not limited to employment or work applications, resumes, job offers, wage,  time and attendance records, hours worked, salary or commission payment information, authorization(s) for deduction or withholding of pay, fringe benefit information, leave records, employee or work history, job title, dates of employment or other work, employment or work duties,  attendance records and schedules for work.

86.     Produce a privilege log, as required by the Federal Rules of Civil Procedure, and the Instructions set forth above, for any documents or other information which have been withheld from production and/or disclosure in answering Defendants' First Set of Interrogatories to Plaintiff and/or responding to Defendants' First Demand for the Production of Documents.

87.     Produce all expert reports that have been prepared in connection with the subject matter of this litigation, including any documents provided by Plaintiff to any expert in connection with this litigation, and any work papers or other documents referred to or relied upon by the expert

in preparing his/her report or any oral or written summaries of his/her conclusions and opinions in this matter.

88.     Produce written summaries of all oral expert reports prepared in connection with the subject matter of this litigation.

89.     Produce copies of all resumes or curriculum vitae for each person Plaintiff has consulted with or may call as an expert witness at trial.

90.     Produce all documents concerning any allegation by Plaintiff that Defendants failed to provide Plaintiff with proper wage statements as required by NYLL § 195 *et. seq.*

91.     Produce all communications including, but not limited to, all letters, e-mails, and/or text messages, between Plaintiff and Robert Dennes (including, but not limited to, all communications concerning Plaintiff's employment and/or job duties during the period of Plaintiff's employment).

92.     Produce all communications including, but not limited to, all letters, e-mails, and/or text messages, between Plaintiff and Daniel Perez (including, but not limited to, all communications concerning Plaintiff's employment and/or job duties during the period of Plaintiff's employment).

93.     Produce all documents concerning Plaintiff's contention that he is not covered by the executive/managerial overtime exemption.

94.     Produce each and every document referred to or used by Plaintiff in drafting his Complaint.

95.     Produce each and every document referred to or used by Plaintiff in drafting his responses to Defendants' First Set of Interrogatories.

96.     Produce each and every report provided to Plaintiff, or anyone acting on his behalf, by any expert(s) contacted and/or retained for the purpose of this action.

97.     Produce each and every document that Plaintiff expects to be relied on or referenced by any witness called on to testify at the trial of this action.

98.     Produce each and every document not otherwise requested herein that Plaintiff intends to use or may use at the trial of this matter.

99.     Produce all documents identified in Plaintiffs' Initial Disclosures.

100.    Produce all documents identified in the Plaintiff's responses to Defendants' First Set of Interrogatories.

101.    Produce all communications identified in the Plaintiff's responses to Defendants' First Set of Interrogatories.

102.    Produce all communications referred to in the Complaint.

103.    Produce all documents referred to in the Complaint.

104.    Produce all documents concerning any statement of parties or non-parties to this action that in any way relate to the underlying subject matter of this suit.

105.    All video or audio recordings of Deeran Arabian.

106.    All video or audio recordings that relate to the allegations in the Complaint.

107.    All video or audio recordings that Plaintiff intends to admit as evidence at trial.

108.    Any and all tangible items, including but not limited to drawings, videotapes, or audiotapes of any kind, which relate, in any way, to any allegation contained in the Complaint.

109.    Any and all content on any social media sites, apps, and/or other platforms (including, but not limited to Facebook, Twitter, LinkedIn, Pinterest, Mylige, Instagram, Reunion, YouTube, Foursquare, Tumblr, Reddit, StumbleUpon, Caffine, Lasso, House Party, and Tik Tok,

etc.) created or maintained by Plaintiff (including online profiles, status updates, postings, photos, videos, recordings, likes, messages (including, without limitation, tweets, replies retweets, direct messages, instant messages and blog entries), wall comments, other communications, causes joined, groups joined, activity streams, or any other information) that concern:

     a.   One or more allegations set forth in the Complaint;

     b.   One or more facts or defenses raised by Defendants;

     c.   Deeran Arabian;

     d.   Plaintiff's compensation during his alleged employment with Defendants;

     e.   Complaints about unpaid compensation;

     f.   Plaintiff's duties and responsibilities during his employment with Defendants;

     g.   Statements and/or communications concerning this action;

     h.   Plaintiff's alleged damages;

     i.   Communications with any current or former of Defendants: (i) who has been identified by the Parties in their Initial Disclosures or as a potential witness; or (ii) concerning any of the foregoing topics or other topics, events or issues referenced in Defendants' other document requests and/or interrogatories.

110.   All portions of the Dees Team Member Chat.

111.   All documents concerning vendor orders placed by Plaintiff on behalf of Defendants.

112.   All communications between Plaintiff and any employment agency during the period of Plaintiff's alleged employment with Defendants.

113.   All "Pre-Assigned Schedules" in Plaintiff's possession, custody, and/or control.

114.     All documents and/or communications concerning the hiring or firing of employees of Defendants working in the kitchen.

115.     All documents and/or communications concerning "orders" of Deeran Arabian (a/k/a Boss Deeran) referred to in Paragraph 17 of Plaintiff's Affidavit.

116.     All documents and/or communications concerning "orders" of "Armen" referred to in Paragraph 17 of Plaintiff's Affidavit.

117.     All communications concerning the arrangement of schedules described in Paragraph 19 of Plaintiff's Affidavit.

118.     All documents and/or communications concerning "orders" of Deeran Arabian (a/k/a Boss Deeran) referred to in Paragraph 21 of Plaintiff's Affidavit.

119.     All documents and/or communications concerning "orders" of "Armen" referred to in Paragraph 21 of Plaintiff's Affidavit.

120.     All documents and/or communications concerning the training of kitchen staff discussed in Paragraph 22 of Plaintiff's Affidavit.

121.     All documents and/or communications concerning interviews of potential employees of Dee's.

122.     All communications between Plaintiff and any vendor of Defendants during the period of Plaintiff's alleged employment with Defendants.

123.     All communications between Plaintiff and Metro Meat Market.

Dated: Woodbury, New York
       July 24, 2020

                    KAUFMAN DOLOWICH & VOLUCK, LLP
                    *Attorneys for Defendants Deenora Corp d/b/a Dee's, Dee's*
                    *Brick Oven Pizza, Inc., d/b/a Dee's, and Deeran Arabian*
                    *a/k/a Dee Arabian*

              By:     _____

                    Keith Gutstein, Esq.
                    Aaron Solomon, Esq.
                    135 Crossways Park Drive, Suite 201
                    Woodbury, New York 11797
                    (516) 681-1100
                    kgutstein@kdvlaw.com
                    asolomon@kdvlaw.com

TO:     ***VIA* Email and FedEx**
        John Troy, Esq.
        Troy Law, PLLC
        41-25 Kissena Boulevard, Suite 103
        Flushing, New York 11355
        troylaw@troypllc.com
        *Attorneys for Plaintiff*

4822-1756-1282, v. 1