```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------  X
JOSE PANORA, on his own behalf and on behalf    :
of others similarly situated,                   :
                                                :
                              Plaintiff,        :   MEMORANDUM DECISION
                                                :   AND ORDER
              - against -                       :
                                                :   19-cv-7267 (BMC)
DEENORA CORP d/b/a Dees et al.,                 :
                                                :
                              Defendants.       :
----------------------------------------------------------------  X
```

**COGAN**, District Judge.

Plaintiff brings this case under the Fair Labor Standards Act ("FLSA"), alleging that defendants failed to pay him proper overtime wages.[1]  Before me is his motion for leave to send out notice of a collective action.  The motion is granted in part.

## BACKGROUND

Dee's Brick Oven Pizza employs eleven or more people at any given time, including waiters, bartenders, bussers, and kitchen staff.  Plaintiff worked as a chef at Dee's from some time in 2013 to July 13, 2019 and was paid a flat salary on a weekly basis.  From 2013 to April 9, 2018, plaintiff was paid $1,310 per week.  During this time period, plaintiff generally worked six days a week, ranging from 10.5 hours to 11.5 hours a day, for a total of 65 hours per week.  From April 10, 2018 (at the latest) until the end of his employment on July 13, 2019, plaintiff was paid $1,340 per week.  During this time period, he generally worked five days a week for a total of 55.5 hours a week, but approximately once a month he worked an additional one day a

---

[1] Plaintiff also asserts several state law claims under the New York Labor Law, including for failure to pay state overtime wages and the spread of hours premium.

week for a total of 65 hours that week. Plaintiff was not paid overtime despite regularly working over forty hours a week.

Defendants maintain that plaintiff was an overtime exempt executive. Defendants moved for summary judgment on plaintiff's claims on that basis and moved to dismiss plaintiff's state law minimum wage claim. I denied summary judgment on the issue of exemption because there were material disputes of fact as to plaintiff's role at the restaurant but granted dismissal of the state law minimum wage claim.

Plaintiff seeks authorization to send out this collective action to his coworkers. In his affidavit, plaintiff provides information regarding 19 coworkers, including their position, work period, workdays per week, work hours per week, and pay if known. Some of these employees were paid a weekly salary and some hourly, but all are alleged to have suffered from a practice and policy of defendants to not pay overtime. Plaintiff's information comes from his observations of his coworkers' schedules, as he asserts that the majority of kitchen employees worked the same schedule as him, and conversations with them about their pay. For example:

- Four kitchen chefs worked 6 days a week and 66 hours per week before April 2018, and 5 days a week and 55 hours per week after April 2018. One was paid $800 a week and another $16 per hour – both allegedly without overtime – but the others' pay is unknown.

- Three dishwashers generally worked five days a week for around 45-46 hours, with one working up to 51 hours per week, allegedly at $15 per hour with no overtime.

- Seven busboys, some of whom also worked in other roles, worked over 40 hours per week on weeks that had double shifts. One is believed to have been paid $15 per hour with no overtime, but the others' pay is unknown.

As the basis for his knowledge of pay and the lack of overtime, plaintiff describes conversations with other kitchen employees while working on the kitchen line and the approximate timing of these conversations, in which he and his coworkers discussed their pay,

complained about the lack of overtime, and wondered whether they might make more money and be paid overtime in a position elsewhere.

## DISCUSSION

I.  **Collective Authorization**

The FLSA authorizes employees to bring a collective action to recover unpaid overtime compensation on behalf of themselves and similarly situated employees. See 29 U.S.C. § 216(b). Because similarly situated employees can become plaintiffs only by filing written consent with the court, see id., courts have discretion to facilitate notice to those employees, see Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989). Although this process is often referred to as "certification," see, e.g., Weng v. Kung Fu Little Steamed Buns Ramen Inc., No. 17 Civ. 273, 2018 WL 1737726, at *2 (S.D.N.Y. Mar. 26, 2018), that term does not appear in the FLSA or any Federal Rule of Civil Procedure. I prefer to refer to it as "collective authorization" to avoid confusion with a class action, which is not available under the FLSA or Fed. R. Civ. P. 23, and yet is available for state law wage claims that are usually supplemental to cases asserting FLSA claims.

When determining whether to authorize a collective action, courts in the Second Circuit conduct a two-step process. See Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010). First, in a step often referred to as conditional certification, the court "mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555. Second, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Id.

This case is at the first step. Here, plaintiff must "make a 'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"[2] Id. (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "[T]he focus of the inquiry 'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are "similarly situated" . . . with respect to their allegations that the law has been violated.'" Romero v. La Revise Assocs., LLC., 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). Specifically, plaintiff must show "a factual nexus . . . between the plaintiff's situation and the situation of other potential plaintiffs," which plaintiffs often accomplish through pleadings, affidavits, and declarations. Fernandez v. On Time Ready Mix, Inc., No. 14-CV-4306, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quoting Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)).

Courts in this Circuit have routinely found that a modest factual showing can be established "based solely on the personal observations of one plaintiff's affidavit," see Hernandez v. Bare Burger Dio Inc., 12 Civ. 7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013), and have held that hearsay may be relied upon to support conditional certification, see Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 59 (E.D.N.Y. 2011). "[W]here a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or

---

[2] Defendants argue that a heightened standard of review should apply to plaintiff's collective certification motion because the parties have conducted some discovery that bears on the issue of conditional certification. Plaintiff sought to move for conditional certification earlier in these proceedings, but I deferred it until resolution of defendants' motion to dismiss and motion for summary judgment. Accordingly, I will not impose a heightened standard of review.

4

observations." Reyes v. Nidaja, LLC, No. 14 Civ. 9812, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015).

Here, plaintiff's affidavit sufficiently establishes, for the purposes of this motion, that he and several other employees were not paid overtime wages. Plaintiff worked at defendants' restaurant for over twenty years and developed personal relationships with many of his coworkers. Based on his observations that his coworkers had nearly identical schedules as his own and conversations with several of them about their pay rate and lack of overtime pay, plaintiff has shown a factual nexus between his situation and that of non-managerial non-exempt employees – namely, that there is a common policy in which employees who regularly work over forty hours a week are paid a flat weekly or hourly rate with no overtime. See Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011), rev'd on other grounds, 533 F. App'x 11 (2d Cir. 2013) ("The issue here is not whether Plaintiffs and other Loan Consultants were identical in all respects, but 'rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.'" (quoting Vaughan v. Mortg. Source LLC, No. 08-cv-4737, 2010 WL 1528521, at *7 (E.D.N.Y. Apr. 14, 2010)). Plaintiff has explained in sufficient detail his observations and the time, place, and context of his conversations to support his affidavit's assertions. Plaintiff has thus satisfied the requisite modest showing that he is similarly situated to the potential opt-in plaintiffs as to the FLSA overtime claim.

Defendants' opposing arguments are not persuasive. Defendants first argue that conditional certification is not appropriate because plaintiff's overtime claim is based on his alleged misclassification as an exempt executive, while all proposed collective members are non-exempt. Defendants further argue that plaintiff should not be allowed to proceed on a collective

5

basis because trial in this matter would require resolution of the issue of liability only as to plaintiff, and thus would be inefficient. I disagree and find defendants' cases distinguishable. In Dalton v. Gem Fin. Servs., Inc., No. 15-CV-5636, 2016 WL 3676428, at *4-5 (E.D.N.Y. July 7, 2016), I denied conditional certification of a proposed collective that would have included a large number of both exempt and non-exempt employees because the plaintiffs had not met the "higher similarity burden" for such actions. I explained that the plaintiffs had failed to articulate the exempt employees' job requirements, pay provisions, or how such attributes rendered them similarly situated to the non-exempt employees or even to each other. See id. I further rejected the plaintiffs' argument that many such employees were illegally misclassified and thus a higher degree of similarity was not needed. See id. Similarly, in Diaz v. Elecs. Boutique of Am., Inc., No. 04-CV-0840, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005), the plaintiffs sought certification of a collective that would require "a detailed factual analysis" of every individual's exempt or nonexempt status. And in Romero v. H.B. Auto. Grp., Inc., No. 11 Civ. 386, 2012 WL 1514810, at *13 (S.D.N.Y. May 1, 2012), the potential collective would similarly include a large number of both non-exempt and exempt employees.

    By contrast, here, plaintiff seeks a collective of non-exempt employees only, and defendants concede that all of the potential opt-in plaintiffs are non-exempt employees and that only plaintiff is alleged to be exempt. Defendants argue that plaintiff is not similarly situated to the potential opt-in plaintiffs because there is an issue of fact as to whether he is a non-exempt employee. But if defendants' position was the rule, then nearly every FLSA defendant could avoid a collective action simply by putting forth some evidence that the lead plaintiff falls under one of the potential exemptions. It cannot be that the FLSA defendant always gets the benefit of the doubt that a plaintiff will be found exempt by the jury. Further, because only a single

plaintiff in this collective is potentially subject to an exemption, the trial efficiency argument is not compelling.

Defendants next argue that plaintiff's prior concessions and the "law of the case" bar his collective action.  Defendants state that plaintiff conceded that all other kitchen workers were paid on an hourly basis and that Daniel Perez and Robert Denes were compensated at $17 per hour and $18 per hour, respectively, but now directly contradicts those concessions.  As an initial matter, although I too first read plaintiff's 56.1 statement as admitting that all kitchen workers were paid on an hourly basis when I resolved defendants' motion for summary judgment, a second read reveals that plaintiff admitted only that two employees, Mr. Denes and Mr. Perez, stated that they were paid on an hourly basis.

As to the inconsistency regarding their hourly rate in the present motion, such minor differences do not sink plaintiff's proposed collective.  Even if Mr. Denes and Mr. Perez were paid hourly and at a slightly higher rate than plaintiff asserts, defendants would still be liable for a failure to pay overtime to these individuals.  I similarly reject defendants' argument that the law of the case bars plaintiff from arguing that any other member of the kitchen staff was paid on a salary basis.  I assumed that fact for purposes of resolving defendants' motion for summary judgment, but it is not clear that plaintiff did so admit.  In any event, such an admission would not be fatal to plaintiff's proposed collective.

Defendants next argue that I should strike plaintiff's entire affidavit because it contains misrepresentations and false and contradictory testimony.  Defendants cite only plaintiff's "shift in his story" as to whether employees were paid flat rates over the course of this case.  But, as

7

discovery unfolds, certain details underlying a plaintiff's claims may change. This is a natural part of litigation and not the "repeated deceptions" defendants make it out to be.[3]

Defendants' final argument is that plaintiff has not adequately alleged overtime deprivation due to a common policy. This section essentially reargues defendants' position that a collective action is not appropriate because plaintiff alleges he was misclassified as exempt while the other potential plaintiffs are all non-exempt, and further argues that plaintiff did not sufficiently describe the conversations on which he bases his affidavit. For the reasons described above, plaintiff has sufficiently established a common policy of not paying overtime and the basis for his knowledge of other employees' work schedules and pay.

## II.     Production of Contact Information and Other Notice Items

To aid in providing notice to all potential members of the putative FLSA collective, plaintiff requests that defendants produce:

> a Microsoft Excel data file containing contact information ("including but not limited to last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, work location, dates of employment, and position") for all non-managerial employees who worked for defendants from December 29, 2016 to the present day.

Defendants do not object to production of this information and are ordered to do so within fourteen days of entry of this order, a reasonable time period for this case. See Zamora v. L Plus L Productions LLC, 19-cv-1506, 2019 WL 5460559, at *6 (S.D.N.Y. Oct. 15, 2019).

Defendants object to plaintiff's proposed Court Authorized Notice (the "Notice") and distribution plan as overbroad. First, defendants note that plaintiff's minimum wage claim has been dismissed, and thus argue that the notice should not mention any federal minimum wage claim. I agree. Plaintiff must remove any reference to minimum wages from the Notice.

---

[3] Defendants' citation to critiques of plaintiff's counsel in other cases has no relevance to this motion.

Second, defendants object to plaintiff's failure to include contact information for defense counsel in the Notice. Plaintiff objects to inclusion of defense counsel's contact information, but "[i]nclusion of such information is routine." She Jian Guo v. Tommy's Sushi Inc., No. 14 CIV. 3946, 2014 WL 5314822, at *4 (S.D.N.Y. Oct. 16, 2014) (collecting cases). I agree that defense counsel's contact information should be provided in the Notice.

Third, defendants object to the inclusion of the case caption on the Notice. The case caption merely provides basic information about the case and is appropriately included on the Notice.

Fourth, defendants claim that plaintiff fails to include language explaining that the Court has not determined who is right or who is wrong and does not make any suggestion as to whether a collective member should or should not join the case. But the proposed Notice clearly states that "[n]o determination has been made that you are owed any amount of money, and the Court is not endorsing the merits of this lawsuit or advising you to participate in this lawsuit." The Notice later states that "[t]he Court has not yet ruled on whether Plaintiffs' claims or Defendants' defenses have any merit" and "the Court expresses no opinion on the merits of the lawsuit." This language is sufficient.

Fifth, defendants claim that there is no language advising the opt-in plaintiffs that they have the freedom to choose their own counsel. But the Notice clearly states that "[y]ou have the right to hire any attorney of your choice to represent you in this matter" and further suggests in two other places that the plaintiff may "select an attorney other than Troy Law, PLLC."

Sixth, defendants argue that the Notice should discuss the potential costs and discovery obligations that come with being a party to litigation. Courts in this district routinely approve requests for a brief explanation that potential opt-ins may have to provide discovery responses

9

and documentation as well as testify at deposition and trial.  See She Jian Guo, 2014 WL 5314822, at *5.  The Notice thus should include this information.  However, an explanation of potential costs or counterclaims against plaintiffs is not required.  "[T]his district often rejects such language because it imposes 'an *in terrorem* effect that is disproportionate to the actual likelihood the costs or counterclaim damages will occur.'"  Dilonez v. Fox Linen Serv. Inc., 35 F. Supp. 3d 247, 256 (E.D.N.Y. 2014).

  For distribution, plaintiffs propose that the Notice be disseminated via mail, e-mail, text message or social media chat, publicized on plaintiffs' counsel's website, and conspicuously posted at the store.  Defendants object to dissemination on social media and the internet as overbroad.  On reply, plaintiff clarified that he proposes to use only direct social media channels such as WhatsApp and WeChat.  The COVID-19 public health crisis favors some form of electronic dissemination.  Plaintiff thus may use forms of direct communication with potential plaintiffs – including mail, e-mail, text message, and direct social media channels such as WhatsApp and WeChat – in addition to posting on plaintiff's counsel's website and at the defendant restaurant.

  As to the opt-in period, plaintiffs request 90 days, arguing that the longer period is justified in light of the COVID-19 public health crisis and because the majority of potential plaintiffs are Spanish-speaking, first generation workers in the United States.  Defendants argue that 60 days is more appropriate.  Courts generally adopt a 90-day opt-in period where the parties agree or if special circumstance requires it.  See Gui Zhen Zhu v. Matsu Corp., 424 F. Supp. 3d 253, 272 (D. Conn. 2020).  The COVID-19 public health crisis is a special circumstance, and its increasing severity in New York City makes it likely that restrictive shutdown orders may be imposed during the opt-in period.  A 90-day opt-in period is thus appropriate in this case.

Defendants also object to the notice period being measured from the filing of the complaint rather than the date of the Court's order granting plaintiffs' motion for conditional certification. "[U]nder the FLSA, the notice period generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed." Ritz v. Mike Rory Corp., No. 12-CV-367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013). Plaintiff has not presented any reason to deviate from this general rule. Thus, the notice shall be measured from the date of issuance of this order.

Defendants do not substantively object to plaintiff's remaining procedural requests – that the Notice may be disseminated in any relevant language and that the Notice should provide for a 3-year statute of limitations in light of the complaint's allegations of willfulness. These are reasonable and approved.

## CONCLUSION

Plaintiff's motion for leave to send out notice of a collective action is granted in part. Plaintiff's counsel shall modify the notice and consent form in accordance with this order and shall electronically file the revised forms within fourteen (14) days. Defendants shall produce the requested employee information for potential class members to plaintiff's counsel by the same date. Plaintiff's counsel shall mail the revised notice to all potential plaintiffs no later than fourteen (14) days following defendants' disclosure of the contact information.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
      December 8, 2020