

*Taimur Alamgir*
*talamgir@kdvlaw.com*

Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Telephone: 516.681.1100
Facsimile: 516.681.1101
www.kdvlaw.com

January 8, 2021

**<u>Via ECF</u>**
Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza West
Brooklyn, NY 11201

Re:     *Jose Panora v. Deenora Corp., et al.*, **19-CV-7267 (BMC)**

Dear Judge Cogan:

This firm represents Defendants in the above-captioned matter. We are yet again constrained to request judicial action to address bad faith conduct and non-compliance with Court Orders by Plaintiff's counsel, Mr. Troy and Mr. Schweitzer. By this letter, we respectfully request a pre-motion teleconference in anticipation of a motion for monetary sanctions and decertification of the conditionally certified FLSA collective action.

Your Honor's December 9, 2020 Order set forth parameters for the judicially-authorized notice form to be disseminated to collective action members. ECF No. 72. The certification Order further directed Plaintiff to electronically file the version to be mailed out to the collective. *Id.* Mr. Schweitzer later submitted a finalized Court-authorized notice form at ECF No. 74-1, confirming to the Court that this form would be disseminated to collective action members.

Given these repeated assurances, Defendants were justifiably very displeased to discover that Plaintiff's counsel sent collective members notices deviating significantly from the form filed at ECF No. 74-1. Ex. A., pp. 3-10. Worse, without our knowledge and without judicial endorsement, Plaintiff sent out notice using custom-designed mailing and return envelopes clearly designed to deceive and mislead collective members. Ex. A, pp. 1-2.

Indeed, the most egregious violation we address here are the mailing and return envelopes. In a striking display of gamesmanship and bad faith, Mr. Troy placed the Dee's logo prominently on said envelopes without first obtaining court approval or informing us. Ex. A, pp. 1-2. As a preliminary matter, Plaintiff's counsel's unauthorized use of Defendants' intellectual property to solicit litigants may support separate legal action against Mr. Troy and his firm for trademark infringement, and/or misappropriation. Turning back to this case, the prejudice caused to Defendants by the portrayal of Dee's logo on the envelopes is self-evident. The logo's presence on the mailing envelopes gives the false impression that the mailings emanated from Dee's. Likewise, the logo's presence on the return envelopes will undeniably mislead collective members

to believe our clients have blessed the collective action and are encouraging them to mail in opt-in forms.

As well, the mailing envelopes prominently feature with a QR code. This was also placed without judicial authorization or our foreknowledge. Ex. A, p. 1. Based on our attempts to investigate the QR code, it appears to link to WeChat, a smartphone messaging platform. However, we have not been able to conclusively determine the purpose of the link or what Mr. Troy sought to gain by placing it on the envelope. Mr. Troy should be compelled to explain to the Court what information is provided to an individual who scans the QR code.

The notice enclosed in the envelopes was also violative. The Court-authorized notice separates the English and Spanish versions of the notice by placing them on separate pages. ECF No. 74-1. By contrast, the version disseminated by Mr. Troy includes English and Spanish on the same page, with the Spanish translation under each English sentence. Ex. A, pp. 3-10. Aside from being contrary to the agreed-upon form, this disorganized layout creates significant potential for confusion.

Further, the consent to join forms are pre-filled with personal information of employees. Ex. A, p. 10. Plaintiff's counsel never told us, or the Court, that they would pre-fill the consent to join forms with said private information, which we released to them in accordance with the certification Order. ECF No. 72. Pre-filling private information of collective members in the opt in forms clearly prejudices Defendants. It leaves the false impression that Defendants support the collective action and voluntarily provided Mr. Troy employee information to boost participation.

Lastly, the consent to join forms do not mention Defendants' restaurant, "Dee's Pizza", instead naming a different establishment, "SungBookDong BBQ". Ex. A, p. 10. Mr. Troy will say that this is an error. However, if Mr. Troy's office had done as they promised and used the form submitted to the Court at ECF No. 74-1 as the final version, instead of preparing and sending out a different form absent judicial authorization or our consent, this error never would have happened.

Yesterday, we contacted Mr. Troy to ask him why his office saw fit to send collective members a prejudicial and misleading collective mailing different than the one the Court authorized. In response, Mr. Troy falsely claimed that the notice he sent out was the one judicially approved. Notably, even though we repeatedly asked Mr. Troy to explain why the Dee's logo and the QR code are featured on the envelopes, Mr. Troy did not respond.

In *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165 (1989), the Supreme Court held that notification to FLSA collective members must be conducted pursuant to a single Court-authorized notice mechanism to avoid "the potential for abuse and confusion." *Hoffman-La Roche, Inc.,* 493 U.S. at 171. Moreover, the "[f]ailure to limit notification to a single process would be dissonant with the intent of the FLSA statute that the Court play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action was commenced." *Ruggles v. WellPoint, Inc.,* 591 F. Supp. 2d 150, 164 (N.D.N.Y. 2008). Here, Mr. Troy's deliberate flouting of the sacrosanct Court-supervised notice process and evident desire to mislead the collective must result in significant

monetary sanctions under 28 U.S.C. § 1927 and/or the Court's inherent power, and decertification of the conditional collective.

With respect to Mr. Troy's misconduct here, *Espinosa v. Stevens Tanker Div., LLC*, No. SA-15-CV-879-XR, 2017 WL 1718443 (W.D. Tex. Apr. 27, 2017) is particularly instructive. There, the court found that the plaintiff's attorney acted in "bad faith by sending multiple notices, even though the Court's certification and notice order contemplated only one notice, and by deviating from the agreements that he reached with opposing counsel regarding the notice." 2017 WL 1718443, at \*10. The *Espinosa* court deemed these unilateral and unsanctioned revisions to the notice sufficient to justify sanctions by themselves. *Id*. Here, sanctions are likewise merited based on the deviations between the parties' consented notice form, ECF No. 74-1, and what was ultimately mailed out by Mr. Troy. Ex. A.

*Espinosa* further addresses unauthorized and misleading communications. In *Espinosa* the unauthorized additional notices at issue specifically mislead class members to believe that they were required to opt in by Court order. *Espinosa*, 2017 WL 1718443, at \*11. Similarly, here, the Dee's logo placed on the mailing and return envelopes and the pre-filled personal information give the false impression that Defendants invite, support, or require participation in the collective.

In *Espinosa*, a monetary sanction in the amount of $20,625.00 was imposed. A substantial monetary sanction is justified on the facts of this case, particularly as this is not the first time Mr. Troy has engaged in sanctionable conduct in these proceedings.

In addition to monetary sanctions, decertification of the collective action is warranted based on Mr. Troy's conduct. Mr. Troy surely cannot remain collective action counsel given his efforts to mislead collective action members, in contravention of the Court's certification Order. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. at 172, empowers this court to "cancel consents obtained in an improper manner." Therefore, even if there were opt-ins, decertification would be permissible. But given there are no opt-ins to date, decertification would harm no one.

Though other lawyers who have engaged in related violations have been disqualified from representing any collective action members, or from collecting fees with respect to such representations, *see Hamm v. TBC Corp.*, 597 F.Supp.2d 1338 (S.D. Fla. 2009) (plaintiff's counsel was disqualified from representing collective members whose participation was obtained by way of impermissible solicitations of opt-ins, to avoid allowing the plaintiff to reap financial benefits of solicitation); *Espinosa*, 2017 WL 1718443, at \*2 (plaintiff's attorney prohibited from collecting fees with respect to opt-ins whose participation was obtained through a misleading and impermissible notice), Mr. Troy's conduct here is far worse because he attempted to disguise the collective notice as a communication from Dee's. Indeed, by using Dee's logo in an attempt to mislead and falsely lure individuals into this case (in an effort to reap a financial windfall for himself), Mr. Troy has irreparably poisoned the collective action process. Decertification is the only appropriate remedy. Moreover, Mr. Troy should be harshly sanctioned not only because of his misconduct here, but also to send a message to prevent others from flouting the orders of a Court and the well-established collective action procedure.[1]

---

[1] As Mr. Troy has proven himself to be untrustworthy, he should be enjoined from communicating with any member of the collective until this application is resolved.

We thank the Court for its continued courtesies.

Respectfully Submitted,
**KAUFMAN DOLOWICH & VOLUCK, LLP**

By: _____
Taimur Alamgir

cc:     All Counsel, *via ECF*

4