UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

JOSE PANORA, on his own behalf and on behalf of others similarly situated,

                Plaintiff,

- against -

DEENORA CORP d/b/a Dee's *et al.*,

                Defendants.

----------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

19-cv-7267 (BMC)

**COGAN**, District Judge.

In this wage case under the Fair Labor Standards Act ("FLSA") and corresponding state law, plaintiff obtained a $100,000 judgment against defendant Deenora Corp d/b/a Dee's pursuant to Fed. R. Civ. P. 68(a). The judgment deferred an award of attorneys' fees pending discussions between the attorneys or a motion to recover them. The discussions having failed, plaintiff, through his counsel ("Troy Law"), has moved for attorneys' fees of $53,375.05 and costs of $1,192.36. Defendants contend that plaintiff should recover nothing at all or, at most, a sharply reduced amount in the discretion of the Court. The Court grants plaintiff's motion but reduces the amount of the attorneys' fee award as described below.

## BACKGROUND

Familiarity with the detailed facts of this highly contentious case is presumed, see Panora v. Deenora Corp, 521 F. Supp. 3d 177 (E.D.N.Y. 2021), but the basic facts can be summarized as follows.

Defendant Dee's Brick Oven Pizza is what its name implies. It employs waiters, bartenders, bussers, and kitchen staff. Plaintiff worked there from about January 1995, starting as a dishwasher and then a "salad person." At some point in the early 2000s, he was promoted to

Chef, a position he held through July 13, 2019. When promoted, he received a flat weekly salary of $1,310 per week; that increased to $1,400 per week in April 2018.

Plaintiff asserted that he worked about 67.5 hours every week and always more than eight hours each day but received no extra pay for the hours over 40. Defendants responded that this was because plaintiff was an executive or manger, and thus exempt from coverage under both the FLSA and New York Labor Law. See 29 U.S.C. § 213(a)(1); N.Y. Labor Law § 651(5). I denied defendants' motion for summary judgment on this point, finding there were many issues of fact as to the duties plaintiff performed and the responsibilities he had and thus I could not determine as a matter of law whether he fell within the exemption. See Panora v. Deenora Corp., 467 F. Supp. 3d 38, 41-44 (E.D.N.Y. 2020).

Plaintiff's complaint sought the usual panoply of redress in wage actions: accrued but unpaid overtime and minimum wages; liquidated damages; pre-judgment interest, spread-of-hours pay; and $10,000 for violating New York notice requirements to employees. See N.Y. Labor Law §§ 195(1)(a) & (3), 198(1-b) & (1-d).

As to failing to pay him a minimum wage, plaintiff's theory was that he had received no payment at all for his overtime hours. That meant that each of those overtime hours had a basis of zero and zero is of course less than the minimum wage. I rejected that argument in granting defendants' motion to dismiss plaintiff's minimum wage claim, noting that "this theory would hold that a non-exempt employee paid $1 million dollars per week would still have a viable minimum wage claim upon working his 41st hour." Panora, 467 F. Supp. 3d at 45.

Subsequently, plaintiff moved for conditional approval to proceed as a collective action and to send out notices to other employees. Defendants opposed and sought sanctions, but I

granted the motion and gave detailed instructions on the form of the notice. See Panora v. Deenora Corp., No. 19-cv-7267, 2020 WL 7246439 (E.D.N.Y. Dec. 9, 2020).

Troy Law then unilaterally altered the court-approved notices in several ways to make opting in more likely without advising the Court or defendants that it had done so. I granted defendants' motion for sanctions in the amount of $2,000 against Troy Law with an additional direction to reimburse defendants' reasonable attorneys' fees in making the motion for sanctions (together, the "Notice Sanctions"), but I denied defendants' motion to retract the prior approval for sending notices to the collective. See Panora, 521 F. Supp. 3d 177. Plaintiff moved for reconsideration which I denied by docket entry. Plaintiff then delayed paying the sanctions for a week after his reconsideration motion was denied. This led to another motion by defendants for further sanctions, which I denied.

Despite the extensive litigation over the motion to permit collective action notice and the subsequent sanctions, none of defendants' employees opted into the case.

The alteration of the notice was not the only time in this case that I had to impose sanctions. I required Troy Law to reimburse defendants' reasonable attorneys' fees for their moving brief on another sanctions motion, and I sanctioned each side's lawyers $350 for attempting to litigate the issue of who was responsible for delivering courtesy copies of motion papers to Chambers.

Plaintiff filed a notice of acceptance of defendants' $100,000 offer of judgment shortly before trial. The offer preserved plaintiff's right to move for attorneys' fees. That is the motion before the Court.

## DISCUSSION

It is undisputed that since plaintiff obtained a $100,000 judgment against defendants, he is entitled to move for attorneys' fees under both the FLSA and New York law. See 29 U.S.C. § 216(b); N.Y. Labor Law §§ 198(1–a) & 663(1).

Courts within the Second Circuit generally employ the "presumptively reasonable fee" method when analyzing attorneys' fees motions. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). Under this method, courts multiply the "amount of time reasonably spent by counsel" by a reasonable hourly rate to derive a presumptively reasonable overall fee. Cover v. Potter, No. 05-cv-7039, 2008 WL 4093043, at *5 (S.D.N.Y. Aug. 29, 2008). To determine reasonable hourly rates, courts must refer to the "prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). The "community" is the district where the district court sits. See Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009); Arbor Hill, 522 F.3d at 190.

Here, the $53,705.50 that plaintiff seeks is based primarily on a claimed $450 per hour rate for plaintiff's lead attorney, John Troy, and $300 per hour for a mid-level associate, Aaron Schweitzer. There is also one junior attorney and two paralegals who are charged out at $100 to $200 per hour.[1] However, the amount claimed is net of adjustments to the number of hours charged. Troy Law has eliminated time spent by all attorneys and staff on the Notice Sanctions (eliminating over 43 hours) and reduced all attorney rates to $150 for work that Mr. Troy thinks could fairly have been assigned to a paralegal.

---

[1] Plaintiff is not seeking fees for the work of two other junior attorneys.

4

Defendants oppose the motion on numerous grounds.

1. **Excessive litigiousness**

Defendants' main argument is that plaintiff overlitigated the case. They point to the dismissed minimum wage claim, plaintiff's refusal to discuss settlement, discovery violations, and the Notice Sanctions.

Defendants' argument has an element of the pot calling the kettle black. The fact is that this case was hard-fought on both sides, and defendants gave as good as they got. If I was going to find overlitigation, defendants would be nearly as responsible for it as plaintiff. The vitriol in their opposition to the instant motion, especially the request to disallow fees in their entirety despite obtaining a wage award of $100,000 for Troy Law's client, is a good illustration of it, but far from the only one. Opposing plaintiff's motion for collective action authorization despite the minimal standard necessary to obtain that relief; seeking summary judgment on the executive exemption issue despite clear issues of disputed fact; asking for the primary relief in the Notice Sanctions of revoking authorization for collective notification (even though this wouldn't hurt plaintiff at all but would only harm any co-employees who might want to opt-in); seeking additional sanctions because plaintiff didn't pay the Notice Sanctions until a week after his motion for reconsideration of them was denied; requesting other sanctions at least twice and having those denied; initiating motion practice over the delivery of courtesy copies; making an "emergency" motion because of an obvious error in the original judgment; and moving to strike an exhibit in connection with the instant fee motion instead of just addressing why defendants thought it is immaterial (it is), could all be considered to have been overlitigation. The fact is that both sides were responsible for a substantial amount of motion practice in the case that

didn't have to occur. If Troy Law is more responsible than defendants' lawyers, it is only marginally so.

As a practical matter, counsel for a defendant who has any kind of liability exposure in an FLSA or NYLL case has to be more careful with what he files than the plaintiff's lawyers. The plaintiff's lawyers need only comply with the standard of good faith. The defendants' counsel must meet not only that, but because a recovery in favor of a plaintiff carries with it the right to seek attorneys' fees, the defendants' counsel must be constantly aware that if he makes an unsuccessful motion, even in good faith – and, indeed, even if he makes a successful but non-dispositive motion – his client may be incurring an additional exposure for the attorneys' fees that plaintiff has expended in responding to defendants' arguments. Defense counsel should therefore be convinced that his filings not only are in good faith, but that he believes those arguments have a high likelihood of prevailing on the motion or in the case. The number of motions and arguments by defendants that I denied or rejected suggests that either this factor was not always considered or that defendants' counsel misperceived the chances of prevailing on a number of them.

2. **Pursuit of minimum wage claim**

Defendant criticizes plaintiff's decision to litigate the minimum wage claim, focusing on my advice to Troy Law at the premotion conference that it seemed unlikely to succeed. It didn't succeed, but it didn't violate Rule 11 either. Plaintiff's theory was not based on the FLSA but on New York law. Troy Law read Section 146-3.5(b), Title 12, of the New York Code, Rules and Regulations too aggressively, but courts should not sanction lawyers merely for trying to stretch the reach of a statute. I referred to this theory as "creative" when I rejected it, which admittedly had a partially (but only partially) pejorative subtext, but if I thought it was frivolous, I would

6

have said so. Panora, 467 F. Supp. 3d at 45. It is important not to chill plaintiffs' lawyers from advancing novel arguments as long as those arguments are not frivolous.

### 3. Failure to negotiate

Defendants also criticize plaintiff's counsel for refusing to discuss settlement except through a demand for $1,163,995.83 based on a calculation that defendants assert was "astronomical." They have exhibited the spreadsheet that Troy Law provided to them to support plaintiff's demand. Defendants, however, do not explain to me why the amount claimed is astronomical. It is not really a settlement demand; it is a maximum recovery scenario. It seems like all that plaintiff did was total up the amount of damages for each element, *i.e.*, unpaid overtime, liquidated damages, interest, and the other elements demanded in the complaint. The only potential overreach immediately apparent is the inclusion of damages based on plaintiff's minimum wage theory, which the Court had not at that point rejected, and, arguably, the inclusion of interest, which some cases hold is not recoverable when liquidated damages are awarded. See Yun Hong Hua v. Eight Star Inc., No. 15-cv-0275, 2015 WL 2354322, at *3 (E.D.N.Y. May 15, 2015). The fact is that the federal and state (mostly state) wage laws can impose a crippling or fatal level of damages on a small business for non-compliance – indeed, they are designed to have a deterrent effect – and these cases almost always settle because the risks to the business (and often its principals' personal assets) are so high.

Assuming, arguendo, that plaintiff did decline to reasonably negotiate, there is no provision in federal practice that requires a party to engage in settlement discussions unless the court orders it. It is an often-used hardball strategy to take a no-settlement or high settlement position until the eve of trial to pressure a defendant to make its best offer. It appears to have at least partially paid off for plaintiff here.

Defendants complain that they made two Rule 68(a) offers for $35,000 each that plaintiff rejected and because the accrued fees were much lower at those points, plaintiff refused in bad faith to accept the offers solely for the purpose of increasing the attorneys' fees with more litigation. The facts actually suggest the opposite. Instead of accepting a $35,000 offer, plaintiff's attorney got his client $100,000. Attorneys' fees will be in addition to that amount as determined by the decision on this motion, so plaintiff has not been hurt by the extra litigation. Therefore, there is no basis for counsel's claim that the earlier Rule 68(a) offers show that the additional litigation was unnecessary. The accepted Rule 68(a) offer nearly tripled the amount that defendant originally offered.[2]

Defendants place particular emphasis on a text exchange between John Troy and one of defendants' lawyers. In that exchange, Mr. Troy stated:

> [I]t seems you enjoy your Deenora case a lot[.] Clients come and go [but] we, attorneys, have to survive[.] I am shaking the Apple tree so you could pick up the fallen apple on the floor[.] I am the rainmaker for you[.] [Y]ou make more money on this case than the last one[.] You should say thank you and have a good weekend[.] Maybe you do not have to say thank you, but do not hit me with a bat[.] [H]a ha[.]

The text message is foolish and undignified. But it does not show Mr. Troy "admitted" to overlitigating the case, as defendants argue. The text doesn't say anything about the amount of work plaintiff has done, and, indeed, the statement "do not hit me with a bat" suggests that it was defendants, not plaintiff, who were engaging in unnecessary

---

[2] Defendants also arguably violated the New York Rules of Professional Conduct. Defendants' counsel had doubts as to whether plaintiff's counsel had actually forwarded the $35,000 offers to plaintiff. He therefore advised his client to send the offer directly to plaintiff, which his client did. Although a client can decide on its own whether to directly contact his adversary, a lawyer cannot advise a client to contact his adversary, or do anything that the attorney could not do directly. See ABA Formal Opinion 11-461. It is of course improper for a lawyer to contact a represented adversary, and thus since he can't do it himself, he can't put up his client to do it for him either.

8

litigation. And the text might well have served the legitimate purpose of reminding defense counsel of their clients' vulnerability to having to pay both sides' attorneys' fees.

Defendants nevertheless contend that plaintiff's counsel obtained a poor result for plaintiff. They contrast the $100,000 judgment with the approximately $1.2 million maximum recovery scenario referenced above. Their point seems to be that such a deep discount from their maximum recovery scenario means that the refusal to negotiate was in bad faith.

However, defendants are in no position to complain about the discount they received while, at the same time, baldly proclaiming that their financial distress prevents them from settling in excess of the amount they offered. Although defendants have not shown this Court any evidence of their potential inability to pay a judgment, it was not unreasonable for plaintiff's counsel to take those protestations of poverty into account in advising his client to accept $100,000. In addition, I have never seen a wage case settle for an amount that includes liquidated damages or prejudgment interest, and right there, that knocks down plaintiff's $1.2 million maximum recovery scenario by nearly $350,000.

In any event, plaintiff ultimately settled for less than 1/10 of his maximum possible recovery, and defendants settled for just under three times their initial settlement offer. Those facts in isolation do not persuade me that the recovery here was negligible. The settlement may be small in relation to plaintiff's maximum potential recovery, but $100,000 is well above the average for a single plaintiff wage case against a small business in this district. At the very least, although the recovery was not a home run, it was not, as defendants contend, "subpar."

Finally (as to this point), defendants contend that because they "generously offered" $12,500 to settle the attorneys' fee issue, plaintiff's rejection of that offer and pursuit of this

motion are further indicia of bad faith. The award set forth below shows that defendants' argument is wrong.

### 4. Previously sanctioned misconduct in this case

Defendants also assert that because plaintiff's counsel engaged in a discovery dispute that resulted in sanctions as well as causing the Notice Sanctions, counsel's claimed fee should be cut or reduced to zero. However, the Court has already been there and done that. A further reduction in the fee award for that reason would be doubling up. It is true that the Court, in imposing sanctions, warned plaintiff that the amount of fees claimed might be cut because of counsel's conduct in addition to the Notice Sanctions. But by voluntarily giving up the fees that might have been claimed relating to the Notice Sanctions, plaintiff's counsel has already applied the remedy that the Court might have imposed.

### 5. Previously sanctioned misconduct or bad practice in other cases

A substantial part of defendants' opposition to the fee motion is to note the many cases in which Troy Law has had its fees cut, sanctions imposed, class counsel motions denied, collectives decertified, or other criticisms of its performance.[3] It is accurate to note that Troy

---

[3] See, e.g., Jin v. Shanghai Original, Inc., 990 F.3d 251, 263 (2d Cir. 2021) (finding that the "district court acted within its discretion in decertifying the class on the ground that class counsel [Troy Law] was no longer adequately representing the class"); Lin v. Quality Woods, Inc., No. 17-cv-3043, 2021 WL 2343179, at *8 (E.D.N.Y. June 4, 2021) (directing Troy Law to show cause why sanctions should not be imposed for, among other conduct, "doubling down on bad faith assertions"); Shi Ming Chen v. Hunan Manor Enter., Inc., No. 17-cv-802, 2021 WL 2282642, at *8 (S.D.N.Y. June 4, 2021) (denying plaintiff's motion for Rule 23 class certification as "[g]iven the litigation history of Troy and Troy Law in this Circuit as well as conduct throughout the present litigation, we cannot find Troy or Troy Law will serve as adequate class counsel"); Rodpracha v. Pongsri Thai Rest. Corp., No. 14-cv-02451, 2021 WL 1733515, at *2 (S.D.N.Y. Mar. 22, 2021) (finding Troy Law inadequate to represent the putative class and noting that the Court "shares the broader concern that has been expressed by other judges, in this district and elsewhere, that, regardless of its professed level of experience in wage-and-hour cases, Troy Law has shown a tendency towards prejudicial neglect of its clients' interests"); Yi Mei Ke v. J R Sushi 2 Inc., No. 19-cv-7332, 2021 WL 965037, at *3 (S.D.N.Y. Mar. 15, 2021) (in sanctioning Troy Law, noting that "[s]omething more than a written admonishment is required, however, both to deter repetition of the misconduct and to protect Troy Law's potential future clients"); Bao Guo Zhang v. Shun Lee Palace Rest., Inc., No. 17-cv-00840, 2021 WL 634717, at *18 (S.D.N.Y. Feb. 16, 2021) (ordering Troy Law to show cause why it should not be sanctioned for its "assertion and continuation of meritless claims," including its objections to the settlements of plaintiffs it does not represent); Ji Li v. New Ichiro Sushi, Inc., No. 14-cv-10242, 2020 WL 2094095, at *10, 12 (S.D.N.Y. Apr. 30, 2020) (issuing sanctions where the Court found that Troy Law's continued pursuit of "entirely meritless" claims were "in bad faith"

10

Law has attracted a troublingly high number of reprimands and adverse consequences due to its poor practice.

Troy Law's tarnished history compels the Court to scrutinize its fee applications in this or any other case with special care. It also makes more egregious any repetition of the same criticism that Troy Law has received in other cases. Nevertheless, as noted above, when plaintiff's law firm committed sanctionable conduct in this case, the Court imposed sanctions. Aside from that extra level of scrutiny, the fee application here has to be decided primarily by the

---

and "improper[]");Yuajian Lin v. La Vie En Schezuan Rest. Corp., No. 15-cv-9507, 2020 WL 1819941 (S.D.N.Y. Apr. 9, 2020) (reducing Mr. Troy's hourly rate due to performance issues and noting that courts have reduced Mr. Troy's requested rate a number of times "where Troy's performance at trial demonstrated a lack of skill and/or professionalism."); Guangqing Lin v. Teng Fei Rest. Grp. Inc., No. 17-cv-17742020, WL 264407, at *3 (S.D.N.Y. Jan. 17, 2020) (sanctioning Troy Law and attorney Schweitzer for repeated "noncompliance with court-ordered deadlines"); Shiqiu Chen v. H.B. Rest. Grp., Inc., No. 16-cv-2005, 2020 WL 115279, at *12 n.20 (S.D.N.Y. Jan. 9, 2020) (observing this was "yet another instance in which ... Troy Law PLLC has submitted conflicting sworn testimony" and that "[t]his course of conduct raises concerns about counsel's diligence in meeting ethical obligations to sufficiently investigate matters before they are filed and to guard against and take appropriate action with respect to submission of false testimony") (punctuation omitted); Jianjun Chen v. 2425 Broadway Chao Rest., LLC, 331 F.R.D. 568, 575 (S.D.N.Y. 2019) (imposing sanctions for discovery violations against Mr. Troy); Yu Zhang v. Sabrina USA Inc., No. 18-cv-12332, 2019 WL 6724351, at *3 (S.D.N.Y. Dec. 10, 2019) (noting concerns about "discrepancies regarding key facts that would be difficult to classify as a mere mistake" and that other "evidence in the record further raises questions whether Plaintiff submitted his affidavits in bad faith"); Ruixuan Cui v. E. Palace One, Inc., No. 17-cv-6713, 2019 WL 4573226, at *4, *6 (S.D.N.Y. Sept. 20, 2019) (reciting accusations from defendants that the plaintiff baselessly brought wage-and-hour claims against unrelated defendants, including that he "merely brought claims against individuals whose 'names somehow appear in public records of numerous dissolved corporations'"); Chun Lan Guan v. Long Island Bus. Inst., Inc., No. 15-cv-2215, 2019 WL 3807455, at *1 (E.D.N.Y. Aug. 13, 2019) (upholding monetary sanctions where Troy Law "failed three times to submit a draft joint pretrial order ('JPTO') to Defendants' counsel that complied with this Court's individual rules, in accordance with the deadlines set by Magistrate Judge Scanlon"); Shanfa Li v. Chinatown Take-Out Inc., No. 16-cv-7787, 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019) (reducing Mr. Troy's fee from his requested rate to $300 an hour where he "repeatedly interrupted the Court, was disrespectful, and struggled to pose clear questions"); Feng Lin v. Quality Woods, Inc., No. 17-cv-3043, at *3-6 (E.D.N.Y. Jan. 28, 2019) (finding that service was not properly made on all defendants and observing that "[t]his is not the first time th[e] Court has raised serious questions about the submissions made by Troy"); Jianshe Guo v. A Canaan Sushi Inc., No. 18-cv-4147, 2019 WL 1507900, at *4 (S.D.N.Y. Apr. 5, 2019) (dismissing case for failure to prosecute and assessing a monetary sanction because Troy Law and attorney Schweitzer "repeatedly failed to comply with this Court's deadlines, despite extensive experience with this Court and in this District"); Jianman Jin v. Shanghai Original, Inc., No. 16-cv-5633, 2018 WL 1597389, at *15 (E.D.N.Y. Apr. 2, 2018) (finding "concerning" discrepancy between the plaintiff's sworn affidavit and subsequent deposition testimony); Hui Luo v. L & S Acupuncture, P.C., No. 14-cv-1003, 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (noting that court could not justify a rate for Troy in excess of $300 per hour, where "[t]he trial was very rough in terms of demonstrating Mr. Troy's ability to formulate questions according to the rules of evidence").

11

history of this one case. It would be unfair to reduce the fees in this case for bad practices in other cases in which those courts have already taken the action they deem appropriate.

   6. **Hourly rates**

Defendants contend that the hourly rates charged by each of the timekeepers in the Troy Law Firm are too high for a number of reasons.

First, they contend that the authorities on which plaintiff's counsel relies are in the default judgment context, and that context is not transferable to a fully litigated case like this one. The Court agrees in part. When a defendant fails to appear in an FLSA or other fee-shifting case, it naturally follows that a lower degree of scrutiny will be applied to the plaintiff's fee application as it is not the Court's role to act as counsel for the defaulting defendant. Cf. Greathouse v. JHS Sec. Inc., 784 F.3d 105, 119 (2d Cir. 2015) (Korman, J., concurring in part) ("There is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judges deciding the case."). In addition, most cases in the default judgment context seek well under $10,000 in attorneys' fees because it doesn't take that many hours to obtain a default judgment. See, e.g., Thompson v. Hyun Suk Park, No. 18-cv-0006, 2020 WL 5822455, at *11 (E.D.N.Y. Sept. 1, 2020) (seeking $7,425 in fees); Baizan Guerrero v. 79th St. Gourmet & Deli Inc., No. 18-cv-04761, 2019 WL 4889591, at *11 (E.D.N.Y. Sept. 10, 2019) (seeking $2,025 in fees); Leon v. Zita Chen, No. 16-cv-480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (seeking $5,063.05 in fees).

But defendants again overstate their argument. The rates for FLSA cases will be reduced, even in the default judgment context, if they are clearly excessive. See Liu v. Millenium Motors Sports, LLC, No. 17-cv-06438, 2021 WL 4268136, at *11 (E.D.N.Y. May 24, 2021) (noting that "[w]hen a plaintiff's billing record is excessive, it is within the court's discretion to reduce the

12

fees requested"); see also Thompson, 2020 WL 5822455, at *13 (reducing fees requested in the default judgment context). And even if they are not reduced, those rates can at least inform the Court of what a reasonable rate might be in a contested case.

In this district, there are many FLSA cases awarding $450 per hour or close to it for heavily litigated cases. That rate has been approved when the plaintiff's attorney is a leader of the employment bar and has obtained an excellent result. See, e.g., Almond v. PJ Far Rockaway, Inc., No. 15-cv-06792, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) (in a litigated case, awarding hourly rate of $450 to an attorney with 17 years of experience in employment and wage litigation, including litigating over 400 employment and wage cases in federal court, and arguing "a number of significant employment cases before the Second Circuit"); Hall v. ProSource Techs., LLC, No. 14-cv-2502, 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (in a heavily litigated case, approving rate of $450 per hour for a lawyer with "significant experience litigating FLSA and NYLL wage and hour lawsuits", and in light of his "capable representation and favorable result achieved in this action [a settlement of $1,125,000]"); see also Christian v. Metro. Specialty Lab's, Inc., No. 17-cv-04721, 2019 WL 3729458, at *10 (E.D.N.Y. Aug. 8, 2019) (noting that "attorneys of significant experience and reputation in the district have been awarded hourly rates ranging from $300.00 to $450.00").

The problem with plaintiff's fee application, however, is that this is not one of those cases. Mr. Troy has an impressive resume of speaking engagements and bar association activities, but Troy Law also has innumerable cases criticizing its conduct. Moreover, as discussed above, although the result counsel obtained was not "subpar," Troy Law offers no defense of the settlement as a fraction of the maximum possible recovery. Perhaps more importantly, the settlement did not result in any recovery against the individual defendant and

two of the entity defendants. If defendants have accurately described the sole judgment debtor as being in financial distress, it may turn out the judgment obtained is not worth very much.

In addition to that, the submissions by plaintiff's counsel in this case were poorly done overall. There is a severe and persistent problem in the office of plaintiff's attorney with proofreading. Defendants allude to the unusual number of factual, typographical and grammatical mistakes, and that criticism is accurate. For example, Mr. Troy's affidavit in support of the instant motion, in seeking to describe his associate's experience, states: "As the lead-counsel and first-chair trial attorney in this case, Mr. Schweitzer obtained a unanimous jury verdict and damages for Plaintiffs in the amount of $65,394.00 before interest." Not exactly. This case resulted in a $100,000 judgment pursuant to Rule 68(a). There was no jury trial, and no $65,394 damage award. That misstatement must have been lifted from some other case. There are also numerous references to this Court as the Southern District of New York, which it is not, likely stemming from a similarly flawed drafting process.

One of the more peculiar errors in the instant motion is the statement on the first page of plaintiff's moving memorandum that "[t]here is no dispute that Defendants are jointly and severally liable for offer of judgment amount [sic] proffered." That is flat out wrong. The Rule 68(a) offer plaintiff accepted is clear on its face that although the judgment discharges plaintiffs' claims against all of the defendants, the only defendant against which judgment will be entered is Deenora Corp.

This is particularly surprising because it is the second time plaintiff's counsel has made this mistake within a short period of time. The form of judgment counsel submitted and which the Court mistakenly entered made all defendants jointly and severally liable. Defendants' counsel contacted plaintiff to try to obtain a stipulation to amend the judgment, but plaintiff's

14

counsel refused. It took another motion by defendants to amend the judgment. That all occurred only 60 days before plaintiff filed its motion for attorneys' fees, and yet Troy Law apparently forgot about it and made the same mistake of asserting joint-and-several liability again in the instant fee motion.

One would think that with defendants' opposition to this motion having vigorously attacked Troy Law's work in the case and on this motion as sloppy, Troy Law would be especially careful in submitting their reply papers. Not so. Even in plaintiff's reply memorandum on this motion, in responding to defendants' accusation that Troy Law's claimed hourly rates only occurred in the default judgment context, Troy Law asserts: "In contrast to the cherrypicked cases chosen by Littler Mendelson, P.C., courts in this district have routinely awarded Troy Law's attorneys and employees rates similar to those requested."

First, Littler Mendelson, P.C. is not the law firm representing defendants in this case. The firm representing defendants is Kaufman, Dolowich & Voluck, LLP. That doesn't even sound similar to Littler Mendelson, P.C. If, after the severe attacks that defendants have launched on plaintiff's fee application, plaintiff's law firm still can't get the basics right, then it is not performing at a level for which the top FLSA rates in this district are awarded. It substantiates defendants' claim that Troy Law's work is often the product of cutting-and-pasting from other cases with little or no review.

Second, instead of confronting defendants' point that the cases on which plaintiff relies to establish a reasonable rate were in the default judgment context, plaintiff's attorney doubles down by citing almost entirely the same cases again, avoiding the issue of the appropriate fee in litigated versus default judgment cases.

Some of defendants' criticisms are petty, but taken together, and using my own evaluation of the quality of the work of plaintiff's counsel, the top rates in this district in FLSA cases were not nearly earned. I am therefore applying a 20% reduction to the hourly rates of each timekeeper. That, in my view, results in reasonable hourly rates consistent with those awarded in this district. See, e.g., Callari v. Blackman Plumbing Supply, Inc., No. 11-cv-3655, 2020 WL 2771008, at *9 (E.D.N.Y. May 4, 2020) (noting that "[i]n the Eastern District of New York, prevailing rates range from $300 to $400 per hour for experienced attorneys, $200 to $300 per hour for senior associates, and $100 to $150 per hour for junior associates" and awarding hourly rates of $380 to a partner, $200 and $150 to two associates, and $70 to a paralegal); Jianmin Jin v. Shanghai Original, Inc., No. 16-cv-5633, 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020) (reducing hourly rate of Troy from $550 to $375, Schweitzer from $350 to $150, junior associates from $250 to $150 or $100, and paralegals from $150 to $75); Singh v. A&A Market Plaza, Inc., No. 15-cv-7396, 2019 WL 4861882, at *11 (E.D.N.Y. Sept. 30, 2019) (awarding an hourly rate of $375 to Troy, $150 to Schweitzer in a FLSA case that proceeded to trial).

7. **Amount of time expended**

The time records in support of plaintiff's counsel's bill were also carelessly prepared. For example, Mr. Troy charged .5 hours to "Review Magistrate Judge Individual Practices." There was never a Magistrate Judge assigned to this case. And it is not a typographical error because two days earlier, Mr. Troy had billed another .5 hours to "Review District Judge Individual Practices." In addition, defendants have submitted an affidavit and exhibits showing that although Mr. Schweitzer billed 8.75 hours for defending the deposition of one of the plaintiffs and 4.17 hours taking the deposition of one the defendants, he in fact took lengthy

16

breaks during both depositions to take telephone calls in other cases. Troy Law has not responded to or addressed this proof.

Defendants' opposition to the fee motion contains numerous criticisms of specific time entries. There are over 30 different charges that defendants attack, too numerous to address individually. Some of the criticisms are simply defendants' opinions of how much time particular tasks should have taken. Others reflect a demand for a level of efficiency which few law firms can attain. However, others point to clearly excessive time charges.

Together with the overcharges mentioned in the first paragraph of this subsection, there is enough validity to defendants' attack to undermine the Court's confidence in the accuracy and reasonableness of the time entries. The Court will therefore reduce the time charges by 15%. See Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010) (recognizing "the authority of district courts to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application") (quotations and citations omitted).

8. **Recovery of costs**

Defendants correctly point out that in fee applications, plaintiffs are required to submit proof of the costs that they claim to have incurred. See Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015). Plaintiff has not done that here, not even in reply once defendants pointed out the omission. Nevertheless, the costs consist almost entirely of the $400 filing fee, of which the Court can take judicial notice, and one deposition transcript for $776.20, a reasonable cost for a deposition transcript. The Court will award the costs as claimed in the amount of $1,192.36.[4]

---

[4] Defendants' have also moved to strike a late exhibit filed by plaintiff. The motion is denied as unnecessary. The Court gave no consideration to that exhibit because it is immaterial.

## CONCLUSION

With the reduction in hourly rates and time charges set forth above, plaintiff's claim for fees reduces to $36,405.50. The motion is granted to the extent that fees are awarded in that amount plus costs of $1,192.36. The Clerk is directed to enter a Second Amended Judgment consistent with this decision.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       December 2, 2021